# EXHIBIT C

Exhibit C

2019-71232

P-18



CERTIFIED MAIL

**MARILYN BURGESS**
HARRIS COUNTY DISTRICT CLERK
P.O. BOX 4651
HOUSTON, TEXAS 77210-4651

7019 0140 0000 11 0020

neopost
10/02/2019
US POSTAGE $007.60
ZIP 77002
041H11225289?

269

Unofficial Copy Office of Marilyn Burgess District Clerk

FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS
2019 DEC -6 AM11: 11

12-06-19

IDOLINA STOCKERT   12/02/19
-R-T-S-  750075078-1N
RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD
RETURN TO SENDER

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.



Unofficial Copy Office of Marilyn Burgess District Clerk

CAUSE NO.   201971232

RECEIPT NO.                              75.00        CTM
          **********                    TR # 73679616

PLAINTIFF: SHENAVARI, MOHAMMAD                      In The    269th
          vs.                                       Judicial District Court
DEFENDANT: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY   of Harris County, Texas
                                                    269TH DISTRICT COURT
                                                    Houston, TX

                        CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris


TO: STOCKERT, IDOLINA

    1824  ARUNDEL DRIVE   CARROLLTON  TX  75007 - 3012

    Attached is a copy of <u>PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES</u>


This instrument was filed on the <u>30th day of September, 2019</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
    This citation was issued on 2nd day of October, 2019, under my hand and
seal of said Court.


<u>Issued at request of:</u>                          MARILYN BURGESS, District Clerk
CHRISTOFFEL, DAVID ANDREW                           Harris County, Texas
3027  MARINA BAY DRIVE, SUITE 310                   201 Caroline, Houston, Texas 77002
LEAGUE CITY, TX  77573                              (P.O. Box 4651, Houston, Texas 77210)
Tel: (281) 429-8402
<u>Bar No.:</u>  24065044                             Generated By: HALL, JOSHUA EVERETT  GLH//11342437

─────────────────────────────────────────────────────────────────────────────
                        CLERK'S RETURN BY MAILING
Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
 PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES
to the following addressee at address:

                                          ADDRESS
_____
                                          Service was executed in accordance with Rule 106
_____           (2) TRCP, upon the Defendant as evidenced by the
(a) ADDRESSEE                                 return receipt incorporated herein and attached
                                              hereto at
_____
                                          on _____ day of _____, _____
                                          by U.S. Postal delivery to _____
                                          _____

                                          This citation was not executed for the following
                                          reason:_____
                                          _____

                                          MARILYN BURGESS, District Clerk
                                          Harris County, TEXAS

                                          By _____, Deputy


N.INT.CITM.P                        *73679616*

9/30/2019 11:48 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37232541
By: Joshua Hall
Filed: 9/30/2019 12:00 AM

**2019-71232 / Court: 269**

CAUSE NO. _____

| | | |
|---|---|---|
| MOHAMMAD SHENAVARI | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |
| AND IDOLINA STOCKERT, | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

COMES NOW **Plaintiff Mohammad Shenavari** (hereinafter referred to as "Plaintiff")

and files this his *Original Petition and Request for Disclosures*, complaining of **Defendant**

**Allstate Vehicle and Property Insurance Company** ("Allstate") and **Defendant Idolina**

**Stockert** ("Adjuster") and for such cause would show unto this Honorable Court as follows:

**I.**

## DISCOVERY CONTROL PLAN

1.      Plaintiff intends to conduct Discovery under Level 3 of the Texas Rules of Civil Procedure,

and requests that the Court enter a Level 3 Discovery Plan.

**II.**

## PARTIES AND SERVICE

2.      Plaintiff Mohammad Shenavari is an individual residing in Harris County, Texas.  Further,

Mohammad Shenavari owns the real property located at 331 Isolde Drive, Houston, Texas 77024,

which is situated in Harris County, Texas.

3.      Defendant Allstate is a foreign insurance company engaged in the business of insurance in

Texas, with its principal office located at 2775 Sanders Road, Northbrook, Illinois.  The Defendant

may be served by and through its designated agent in Texas, C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.      Upon information and belief, Defendant Idolina Stockert is an insurance claims adjuster employed by Defendant Allstate, whom resides at 1824 Arundel Drive, Carrollton, Texas 75007-3012.  Defendant Stockert will be served with legal service of process, through certified mail, return receipt requested, addressed to the location described above.

## III.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction in this cause as the damages to Plaintiff are within the jurisdictional limits of this Honorable Court.   Pursuant to Tex. R. Civ. P. 47(c)(3), Plaintiff is seeking monetary relief of over $100,000 but less than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.  Plaintiff reserves the right to amend this petition during and/or after the discovery process.

6.      The court has jurisdiction over Defendant because the Defendant is an insurance company that engages in the business of insurance in the State of Texas and the Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas.  Venue is proper in Harris County, Texas pursuant to Tex. Ins. Code §2210.552(c) as the insured property at issue in this suit is located in Harris County, Texas.

## IV.
## FACTS

7.      The claims in this lawsuit arise out of the property damage caused by Hurricane Harvey to the Plaintiff's real property, located at 331 Isolde Drive, Houston, Texas 77024 (the "Property"), on approximately August 25, 2017.

8.      On August 25, 2017, the property at issue was covered by a policy of insurance issued by the Defendant Allstate (hereinafter referred to as "the Policy"), which was numbered 000829582292.

9.      On or about August 25, 2017, a hurricane designated as "Hurricane Harvey" struck Harris County, Texas ("the Hurricane") with substantial winds and rain.   This Hurricane caused substantial damage to buildings in the area, including Plaintiff's Property.

10.     Specifically, Hurricane Harvey damaged Plaintiff's composition shingle roof, garage roof, and roofing components.  The severe wind that struck Plaintiff's composition shingle roof, caused the shingles to lift, and otherwise, break free and allow substantial amounts of water to enter Plaintiff's home and cause interior water damage to the entry/foyer, formal living room, dining room, kitchen, ;laundry room, living room, hallway, office, master bedroom, master bathroom, master closet, hallway2, bedroom, bedroom closet, bedroom2, bedroom2 closet, bathroom, closet, closet2, closet3 and HVAC unit..  Additionally, Hurricane Harvey caused extensive damage to Plaintiff's personal property located at the Property.

11.     Plaintiff submitted a claim to Allstate against the Policy for the damage to the Property sustained as a result of Hurricane Harvey.

12.     Defendant Allstate acknowledged receipt of Plaintiffs' claim and designated Plaintiffs' claim as claim number 0472496529 ("the Claim"). Plaintiff asked that Allstate cover all costs of repairs to the Property, as shown *supra*, pursuant to the Policy, and pay for the damage to the personal property.

13.     Additionally, Plaintiff provided Defendant with access to the insured property for multiple inspections and provided all information requested and necessary to pay the amount due and owing under the Policy.

3

14.     On September 21, 2017, Defendant's agent and adjuster, Idolina Stockert, inspected Plaintiff's Property and confirmed that Plaintiff had indeed sustained extensive interior water damage as a result of the Hurricane.  However, despite this acknowledgment Stockert had only recommended payment of $5,000.00.

15.     On January 14, 2018, Defendant Allstate, by and through its agent Kristen Janes(Coor), sent Plaintiff a letter partially accepting coverage of Plaintiff's claim, and partially denied portions of Plaintiff's Claim.  Therein, Defendant Allstate notified Plaintiff that it unequivocally accepted insurance coverage for the mold damage to interior of Plaintiff's home and unequivocally denied coverage composition shingle roof.  Further, the letter of January 14, 2018, contained no further reservation of rights.

16.     Despite receiving proper notice and despite every attempt by the Plaintiff to comply with the requirements of the Policy, Defendant Allstate has failed to pay Plaintiff all of the benefits owed under the terms of the Policy, even though the Policy provided coverage for losses such as those suffered by the Plaintiff.

17.     To date, Defendant Allstate has failed to perform its contractual duties to adequately compensate the Plaintiff under the terms of the Policy.  Allstate's conduct constitutes a breach of the insurance contract between Allstate and Plaintiff as more specifically set forth below.

18.     From and after the time Plaintiff' claims were presented to Defendant Allstate, the liability of Allstate to pay the full claim in accordance with the terms of the Policy at issue was reasonably clear.  However, Allstate continues to refuse to fully pay Plaintiff in full, despite there being no basis on which a reasonable insurance company would rely to deny the full payment.

19.     During the handling of the Plaintiff's claim for damages from Hurricane Harvey, Defendant Allstate committed several acts which constitute unfair settlement practices.

4

Furthermore, Defendant Allstate failed to timely acknowledge, investigate, request information, fully accept or deny, and fully pay Plaintiff's claims for damage from Hurricane Harvey.

20.     Defendant Allstate's acts and omissions in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Allstate with regard to handling of these types of claims for damage.  Defendant Allstate treats all claims for damages caused by Hurricane Harvey exactly the same; that is, each claim for damage, no matter the location of the insured property, value of the damage, or value of the insured property, is paid the same percentage of the value of the insured property as determined by Defendant Allstate. Defendant Allstate's entire process for handling claims, such as those of the Plaintiff, is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

**V.**

**CAUSES OF ACTIONS:**
**CAUSES OF ACTIONS AGAINST DEFENDANTS ALLSTATE AND IDOLINA STOCKERT**

**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES**

21.     Plaintiff realleges and restates the above-referenced paragraphs, as if fully set forth herein.

22.     Defendant Allstate hired and/or assigned Defendant Idolina Stockert as the individual claims adjuster to investigate and adjust the claim on Defendant Allstate's behalf.

23.     During her investigation, Defendant Idolina Stockert failed to properly assess Plaintiff's property damage. Specifically, during her investigation, Defendant Idolina Stockert spent an inadequate time investigating whether Plaintiff's damages were covered under the Policy.  As a result of the inadequate and substandard investigation, Defendant Idolina Stockert failed to fully account for all of the covered damage to the Property, such as the composition shingle roof, garage roof, roofing components, and HVAC.  Furthermore, even though Idolina Stockert acknowledged

the interior water damage to Plaintiff's property, she wrongfully opined that it should be covered under the "mold" provision and not the property damage provisions.   Defendant's conduct constituted multiple violations of the Texas insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.151.

24.   Defendant Idolina Stockert is individually liable for her unfair and deceptive acts, irrespective of the fact that she was acting on behalf of Defendant Allstate, because Defendant Idolina Stockert is a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any *individual*, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

25.   Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendant Stockert's misrepresentations by means of deceptive conducts include, but are not limited to, (1) failing to conduct a reasonable inspection and investigation of Plaintiff's damages; (2) stating that Plaintiff had no covered damage to his roof, when in-fact there was extensive wind damage; (3) using her own statements about the non-severity of the damages as a basis for denying properly covered damages; (4) failing to provide an adequate explanation for giving so little compensation for Plaintiff's claims; and (5) seeking out alternative means of coverage to reduce the payment of Plaintiff's claim. Defendant Stockert's unfair settlement practice, as described above and the

example given herein, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

26.     Defendants' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

27.     The unfair settlement practices of Defendants' as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

28.     Defendants did not adequately explain why damages were not being covered under the Policy, despite the extensive damage to the Property as a result of the Storm. Defendants' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constituted an unfair method of competition and an unfair and deceptive act of practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

29.     Defendants' deceptive acts and omissions of misrepresenting an insurance policy by making false and misleading statements of material fact, and making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.061(1)-(3), (5).

7

<u>**CAUSES OF ACTION AGAINST DEFENDANT ALLSTATE**</u>

30.    Defendant Allstate is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

**COUNT ONE: BREACH OF CONTRACT**

31.    Defendant Allstate's conduct constituted a breach of the insurance contract made between Defendant Allstate and Plaintiff.

32.    Defendant Allstate's failure and/or refusal, as described above, to pay adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, which constituted a breach of Defendant Allstate's insurance contract with Plaintiff.

**COUNT TWO:  NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES**

33.    Defendant Allstate's conduct constituted multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

34.    Defendant Allstate's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(1).

35.    Defendant Allstate's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability

8

under the Policy was reasonably clear, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

36.    Defendant Allstate's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of Plaintiff's claim, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

37.    Defendant Allstate's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

38.    Defendant Allstate's unfair settlement practice, as described above, of refusal to pay Plaintiff's claim without conducting a reasonable investigation, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

**COUNT THREE: NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**

**THE PROMPT PAYMENT OF CLAIMS**

39.    Defendant Allstate's conduct constituted multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made actionable by TEX. INS. CODE §542.060.

40.    Defendant Allstate's failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above,

9

constituted a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

41.     Defendant Allstate's failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constituted a non-prompt payment of the claim. TEX. INS. CODE §542.056.

42.     Defendant Allstate's delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constituted a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

### COUNT FOUR: ACTS CONSTITUTING ACTING AS AGENT

43.     As referenced and described above, and further conduct throughout this litigation and lawsuit, Defendant Idolina Stockert is and was an agent of Defendant Allstate based on Defendant Allstate's acts, ratification, negligent hiring and training, supervision and/or omissions during the handling of this claim, including but not limited to, selling insurance, inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer. TEX. INS. CODE §4001.051.

44.     Separately, and/or in the alternative, as referenced and described above, Defendant Allstate ratified the acts, negligent hiring and training, supervision and/or omissions of Defendant Idolina Stockert, including the completion of his duties under the common law and statutory law.

### DTPA VIOLATIONS

45.     Defendants' conducts constituted multiple violations of the Texas Deceptive Trade Practice Act ("DTPA"), TEX. BUS. & COM. CODE 17.41-63. Plaintiff is a consumer of goods and services provided by Defendants pursuant to the DTPA. TEX. BUS. & COM. CODE 17.50(a). In the alternative, Plaintiff is a claimant for Defendants' violations of the Texas Insurance Code pursuant to the DTPA. TEX. BUS. & COM. CODE 17.50(h). Plaintiff has met all conditions precedent to

bringing this cause of action against Defendants. Specifically, Defendants' violations of the DTPA include, but are not limited to the following:

    A. By Defendants' acts, omissions, failures and conduct that are described in the above, Defendants have violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Accordingly, Defendants' violations include, but are not limited to, (a) unreasonably delays in the investigation, adjustment, and resolution of Plaintiff's claim, (b) failure to give Plaintiff the benefit of the doubt, and (c) failure to pay for the proper repair of the Property on which liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2);

    B. Defendant Allstate represented to Plaintiff that the insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA;

    C. Defendant Allstate represented to Plaintiff that Defendant Allstate' insurance policy and adjusting services were of a particular standard, quality, or grade when they were of another in violation of section 17.46(b)(7) of the DTPA;

    D. Defendant Allstate advertised the insurance policy and adjusting services with intent not to sell them as advertised in violation of section 17.46(b)(9) of the DTPA;

    E. Defendant Allstate breached an express warranty made by Defendant Allstate that the damages caused by the wind and/or hailstorm would be covered under the Policy. This breach entitles Plaintiff to recover under sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

F.  Defendants' actions are unconscionable in that Defendants' actions took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants' unconscionable conduct give Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and,

G.  Defendants' conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

## FRAUD

46.     Defendants are each individually liable to Plaintiff for common law fraud.

47.     Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiff would not have acted as they did, and Defendants knew the representations were false or made recklessly without any knowledge of the truth as a positive assertion.

48.     Defendants made their statements intending that Plaintiff should act upon them. Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury and constituting common law fraud.

## VI.    KNOWLEDGE

49.     Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## VII.    DAMAGES

50.     Plaintiff would show that all of the aforementioned acts, taken together or singularly, constituted the producing causes of the damages sustained by Plaintiff.

51.     As previously mentioned, the damages caused by Hurricane Harvey on or about August 25, 2017, have not been properly addressed nor repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to the Plaintiff.  These damages are a direct result of all of the Defendants' mishandling of Plaintiff's claim in violation of the laws set forth herein.

52.     For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claim, together with attorney's fees.

53.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs, and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times his actual damages.  TEX. INS. CODE §541.152.

54.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of his claim, as well as eighteen (15) percent interest per annum on the amount of such claim as damages, together with attorney's fees.  TEX. INS. CODE §542.060.

55.     For violations of the DTPA, Plaintiff is entitled to actual damages, which include the loss of the benefits owed pursuant to the Policy, mental anguish, court costs and attorney's fees. For knowing and intentional conduct of the acts described above, Plaintiff asks for three times his actual damages.

56.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading.  Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation

13

and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## VIII.   REQUEST FOR DISCLOSURE

57.     Under Texas Rules of Civil Procedure 194, Plaintiff hereby requests Defendants Allstate and Idolina Stockert each disclose, within fifty (50) days of service of this request, the information or material described in Texas Rule of Civil Procedure 194.2 (a) through (l).

## IX.   CONDITIONS PRECEDENT

58.     Upon information and belief, Plaintiff has complied with all conditions set forth in his insurance policy and by applicable statute prior to the filing of this *Plaintiff's Original Petition and Requests for Disclosure*, including the submission of a *Notice* letter, pursuant to Texas Insurance Code 542A.003, on September 16, 2019.

59.     However, a full sixty days (60) Notice was impracticable, under 542A.003(d)(1), as the date the cause of action accrued on or about September 30, 2017.

## X.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, said Plaintiff have and recover such sums as would reasonably and justly compensate  him in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on his behalf expended, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which he may show himself justly entitled.

Respectfully submitted,

14

,          ,

**CHRISTOFFEL LAW GROUP, P.L.L.C.**

**By** ___*/s/ David A. Christoffel* _____
          David A. Christoffel
          christoffellawgroup@gmail.com
          State Bar of Texas Number: 24065044
          3027 Marina Bay Drive, Suite 230
          League City, Texas 77573
          Telephone: (281) 429-8402
          Facsimile: (281) 429-8403

**ATTORNEY FOR PLAINTIFF**
**MOHAMMAD SHENAVARI**

15

2019 -71232

P-3

269th

CLOSED,REMANDED

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Houston)
## CIVIL DOCKET FOR CASE #: 4:19-cv-04159
### Internal Use Only

FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS
2020 APR 13 AM 10: 53
BY_____DEPUTY

4-13-2020

Shenavari v. Allstate Vehicle and Property Insurance
Company et al DO NOT DOCKET. CASE HAS BEEN
REMANDED.
Assigned to: Judge Keith P Ellison
Case in other court: 269th District Court of Harris County,
                  Texas, 19-71232
Cause: 28:1441 Petition for Removal- Insurance Contract

Date Filed: 10/23/2019
Date Terminated: 03/23/2020
Jury Demand: Defendant
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**Mohammad Shenavari**

represented by **David Andrew Christoffel**
Christoffel Law Group, PLLC
3027 Marina Bay Drive
Suite 230
League City, TX 77573
281-429-8402
Fax: 281-429-8403
Email: christoffellawgroup@gmail.com

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Allstate Vehicle and Property**
**Insurance Company**

represented by **Kimberly Ninh Blum**
Susan L Florence and Associates
811 Louisiana Street
Ste 2400
Houston, TX 77002
713-336-2812
Fax: 877-684-4165
Email: kimberly.blum@allstate.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Idolina Stockert**

represented by **Kimberly Ninh Blum**
(See above for address)
*ATTORNEY TO BE NOTICED*

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Unofficial Copy Office of Marilyn Burgess District

| Date Filed | # | Docket Text |
|---|---|---|
| 10/24/2019 | 1 | NOTICE OF REMOVAL from 269th District Court, Harris County, case number 2019-71232 (Filing fee $ 400 receipt number 0541-23427306) filed by Allstate Vehicle and Property Insurance Company, Idolina Stockert. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Blum, Kimberly) (Entered: 10/24/2019) |
| 10/24/2019 | 2 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 1/31/2020 at 03:45 PM in Courtroom 3A Houston before Judge Keith P Ellison. (Signed by Judge Keith P Ellison) Parties notified.(ClaudiaGutierrezadi, 4) (Entered: 10/24/2019) |
| 10/25/2019 | 3 | NOTICE of Resetting. Parties notified. Initial Conference set for 2/28/2020 at 09:30 AM in Courtroom 3A Houston before Judge Keith P Ellison, filed. (LoriPurifoy, 4) (Entered: 10/25/2019) |
| 10/28/2019 | 4 | MOTION to Remand by Mohammad Shenavari, filed. Motion Docket Date 11/18/2019. (Attachments: # 1 Exhibit Exhibit 1)(Christoffel, David) (Entered: 10/28/2019) |
| 10/28/2019 | 5 | NOTICE of Appearance by David A. Christoffel on behalf of Mohammad Shenavari, filed. (Christoffel, David) (Entered: 10/28/2019) |
| 10/28/2019 | 6 | NOTICE OF INTERESTED PARTIES re: 2 Order for Initial Conference - FORM, by Mohammad Shenavari, filed. (Christoffel, David) (Entered: 10/28/2019) |
| 01/15/2020 | 7 | Opposed MOTION to Compel Appraisal by Mohammad Shenavari, filed. Motion Docket Date 2/5/2020. (Attachments: # 1 Exhibit Plaintiff's Exhibit 1, # 2 Exhibit Plaintiff's Exhibit 2, # 3 Proposed Order Proposed Order) (Christoffel, David) (Entered: 01/15/2020) |
| 01/31/2020 | 8 | NOTICE of Setting as to 7 Opposed MOTION to Compel Appraisal. Parties notified. Motion Hearing set for 2/4/2020 at 03:30 PM in Courtroom 3A Houston before Judge Keith P Ellison, filed. (arrivera, 4) (Entered: 01/31/2020) |
| 02/04/2020 | | Minute Entry for proceedings held before Judge Keith P Ellison. MOTION HEARING held on 2/4/2020. Argument heard on 4 Motion to Remand. The parties arguments are taken under advisement. Defendants to file their response no later than 2/10/2020. Appearances: Kimberly Ninh Blum, David Andrew Christoffel.(Court Reporter: H. Alcaraz)(Law Clerk: T. Lieu), filed. (arrivera, 4) (Entered: 02/06/2020) |
| 02/09/2020 | 9 | Opposed RESPONSE in Opposition to 4 MOTION to Remand, filed by Allstate Vehicle and Property Insurance Company. (Attachments: # 1 Proposed Order)(Blum, Kimberly) (Entered: 02/09/2020) |
| 02/11/2020 | 10 | REPLY in Support of 4 MOTION to Remand, filed by Mohammad Shenavari. (Christoffel, David) (Entered: 02/11/2020) |

| 02/20/2020 | 11 | Notice Regarding Initial Conference(Signed by Judge Keith P Ellison) Parties notified.(arrivera, 4) (Entered: 02/20/2020) |
| 02/21/2020 | 12 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Mohammad Shenavari, filed.(Christoffel, David) (Entered: 02/21/2020) |
| 02/26/2020 | 13 | NOTICE of Setting. Parties notified. Initial Conference reset for 3/26/2020 at 02:00 PM in Courtroom 3A Houston before Judge Keith P Ellison, filed. (arrivera, 4) (Entered: 02/26/2020) |
| 02/27/2020 | 14 | Opposed RESPONSE in Opposition to 7 Opposed MOTION to Compel Appraisal, filed by Allstate Vehicle and Property Insurance Company. (Attachments: # 1 Proposed Order, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Blum, Kimberly) (Entered: 02/27/2020) |
| 03/09/2020 | 15 | REPLY in Support of 7 Opposed MOTION to Compel Appraisal, filed by Mohammad Shenavari. (Attachments: # 1 Exhibit Plaintiff's Exhibit No. 1, # 2 Exhibit Plaintiff's Exhibit No. 2, # 3 Exhibit Plaintiff's Exhibit No. 3, # 4 Exhibit Plaintiff's Exhibit No. 4, # 5 Exhibit Plaintiff's Exhibit No. 5) (Christoffel, David) (Entered: 03/09/2020) |
| 03/20/2020 | 16 | NOTICE of Setting. Parties notified. Initial Conference reset for 4/9/2020 at 01:30 PM in by telephone before Judge Keith P Ellison, filed. (arrivera, 4) (Entered: 03/20/2020) |
| 03/23/2020 | 17 | MEMORANDUM AND ORDER granting 4 MOTION to Remand. Case terminated on 3/23/20(Signed by Judge Keith P Ellison) Parties notified. (arrivera, 4) (Entered: 03/23/2020) |

2019-71232   P-9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

2269th

MOHAMMAD SHENAVARI, §
§
            Plaintiff, §
§
VS. § CIVIL ACTION NO. 4:19-CV-41
§
§
ALLSTATE VEHICLE AND PROPERTY §
INSURANCE COMPANY, *et al*, §
§
            Defendants. §

FILED
Marilyn Burgess
District Clerk
APR 22 2020
Time: 2:33 pm
Harris County, Texas
By _____ Deputy

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Remand. (Doc. No. 4). After considering the motion, the responses thereto, the parties' oral arguments, and all applicable law, the Court determines that Plaintiff's Motion to Remand must be **GRANTED**.

## I.   BACKGROUND

Plaintiff Mohammad Shenavari is a Houston homeowner whose home (the "Property") suffered extensive damage during Hurricane Harvey in August 2017. At the time, the Property was insured by Defendant Allstate Vehicle and Property Insurance Company ("Allstate"). (Doc. No. 1-3 at 11 ¶8). Following the hurricane, Plaintiff submitted a claim to Allstate seeking coverage for the full cost of repairs to the Property as well as damage to personal property. *Id.* at 11 ¶11. Allstate acknowledged receipt of Plaintiff's claim. *Id.* at 11 ¶12.

Defendant Idolina Stockert, an insurance claims adjuster employed by Allstate, inspected the Property in September 2017 and confirmed that the Property had sustained extensive interior water damage. (Doc. No. 1-3 at 11 ¶3); *Id.* at 11 ¶14. Stockert recommended an insurance payment of $5,000. *Id.* On January 14, 2018, Allstate notified Plaintiff that it "unequivocally accepted

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

insurance coverage for the mold damage to interior of Plaintiff's home and unequivocally denied coverage [for the] composition shingle roof." *Id.* at ¶15.

On September 30, 2019, Plaintiff sued Allstate and Stockert in the 269th Judicial District Court of Harris County, Texas, alleging multiple violations of the Texas Deceptive Trade Practice Act (the "DPTA"), Tex. Bus. & Com. Code 17.41-63, fraud, breach of contract, and violations of the Texas Insurance Code. On October 22, 2019, Allstate filed an Election of Legal Responsibility for Stockert (the "Election of Responsibility") under Section 542A.006 of the Texas Insurance Code. (Doc. No. 1-3 at 6). Pursuant to this Election, Allstate "elects to accept legal responsibility for whatever liability IDOLINA STOCKERT might have to Plaintiff for IDOLINA STOCKERT's acts or omissions related to Plaintiffs' claims." (Doc. No. 1-3 at 6-7).

On October 24, 2019, Defendants removed this action to this Court on the basis of complete diversity under 28 U.S.C. § 1332(a). (Doc. No. 1). Plaintiff and Stockert are citizens of Texas, and Allstate is an Illinois corporation with its principal place of business in Illinois. (Doc. No. 1-3 at 11 ¶¶2-4). Plaintiff seeks monetary relief of at least $100,000. *Id.* at 11 ¶5. Plaintiff now moves to remand back to state court.

## II.   <u>LEGAL STANDARD</u>

A party may remove any civil state court action to a federal district court that has original jurisdiction. 28 U.S.C. § 1441(a); *see Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Thus, to remove a case, a defendant must show that the action either arises under federal law or satisfies the requirements of complete diversity. 28 U.S.C. § 1441(b). To establish complete diversity, no plaintiff may share the same citizenship as any defendant and the case must involve an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a); *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 297 (5th Cir. 2010) (internal quotation marks and citation

2

omitted). When determining whether removal is proper, the court considers the claims alleged in the state court petition as they existed at the time of removal. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

Improper joinder constitutes a narrow exception to the rule of complete diversity. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). Under this doctrine, the court may disregard the citizenship of an improperly joined, non-diverse defendant, dismiss that defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendants. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Under the latter, the defendant must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might recover against an in-state defendant." *Id.*

To determine whether a plaintiff has a reasonable basis of recovery under state law, a court may "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* Alternatively, in cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings" and conduct a summary judgment-type inquiry. *Id.*

Federal pleading standards govern the Rule 12(b)(6)-type improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016).

3

The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper. *Smallwood*, 385 F.3d at 574. The removal statute must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

III.   **ANALYSIS**

In opposing Plaintiff's motion to remand, Defendants contend that non-diverse Defendant Stockert was improperly joined because Allstate elected responsibility for her under Texas Insurance Code § 542A.006 after this lawsuit was filed but before it was removed. Defendants contend in the alternative that Stockert was improperly joined for the sole purpose of defeating diversity jurisdiction because Plaintiff's boilerplate pleadings fail to state a claim against Stockert.[1] The Court addresses each argument in turn.

**A. Election of Responsibility under Texas Insurance Code § 542A.006.**

Section 542A.006 of the Texas Insurance Code authorizes an insurer to elect to accept full legal responsibility of an adjuster's acts or omissions, and provides that if an insurer elects responsibility after a lawsuit has commenced, "the court shall dismiss the action against the agent with prejudice." Tex. Ins. Code. § 542A.006(c). Defendants contend that because Allstate elected responsibility for Stockert before removing the action to federal court, Stockert was improperly joined and this action was thus properly removed. According to Defendants, once Allstate elected responsibility, Plaintiff no longer had any possibility of recovery against Stockert, thereby rendering her joinder improper. (Doc. No. 9 at ¶19).

---

[1]The Court notes that Defendants do not raise this argument in their Response to Plaintiff's motion for remand. *See* (Doc. No. 9). However, the Court nonetheless addresses this argument as Defendants raised it in their Notice of Removal. (Doc. No. 1).

4

Whether a § 542.006 election that is made after an insured files suit in state court but before the action is removed renders a non-diverse agent an improper party has not been addressed by the Fifth Circuit. *Altom v. Allstate Vehicle & Prop. Ins. Co.*, 2020 WL 810856, at *3 (E.D. Tex. Jan. 27, 2020). Much ink has been spilt, however, by district courts that have split on the impact of such an election on the improper joinder analysis.[2]

One line of decisions concludes that a § 542.006 election made after a lawsuit commences but before removal renders the in state adjuster improperly joined because the election, which requires that the adjuster be dismissed with prejudice, precludes any recovery against the adjuster. *See, e.g., Bexar Diversified MF-1, LLC v. Gen. Star Indem. Co.*, 2019 WL 6131455, at *3 (W.D. Tex. Nov. 18, 2019); *Flores v. Allstate Vehicle & Prop. Ins. Co.*, 2018 WL 5695553, at *5 (W.D. Tex. Oct. 31, 2018) ("[E]ven when a plaintiff asserts viable claims against an insurance agent, an election of liability by the insurer for the agent's acts or omissions is sufficient to show improper joinder on the basis that there is no reasonable basis to predict that the plaintiff might be able to recover against the agent."); *Jiang v. Travelers Home & Marine Ins. Co.*, 2018 WL 6201954, at *2 (W.D. Tex. Nov. 28, 2018). The other line of decisions concludes that the touchstone of the improper joinder inquiry is whether parties were improperly joined at the time of joinder, and thus that an insurer's § 542.006 election after a lawsuit has commenced does not by itself establish improper joinder. *See, e.g., Altom*, 2020 WL 810856, at *3; *Macari v. Liberty Mut. Ins. Co.*, 2019 WL 5595304, at *1 (S.D. Tex. Oct. 30, 2019); *Yarco Trading Co., Inc. v. United Fire & Cas. Co.*, 397 F. Supp. 939, 945-50 (S.D. Tex. July 11, 2019); *River of Life Assembly of God v. Church Mut.*

---

[2]Courts agree that when an insurer makes its election *before* an insured files suit in state court, then a dismissal under § 542A.006 is tantamount to a finding of improper joinder if a plaintiff-insured attempts to add the non-diverse adjuster to an action. *See, e.g., Altom*, 2020 WL 810856, at *3 (E.D. Tex. Jan. 27, 2020); *Bexar*, 2019 WL 6131455, at *3; *Vyas v. Atain Speciality Ins. Co.*, 380 F. Supp. 3d 609 (S.D. Tex. 2019).

*Ins. Co.*, 2019 WL 1767339, at *3 (W.D. Tex. Apr. 22, 2019); *Stephens v. Safeco Ins. Co. of Ind.*, 2019 WL 109395, at *7 (E.D. Tex. Jan. 4, 2019).

The Court agrees with the reasoning set forth in the latter approach. The Fifth Circuit sitting en banc in *Smallwood v. Illinois Central Railroad Co.*, 85 F.3d 568, 573 (5th Cir. 2004) (en banc) stated that "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, *the focus of the inquiry must be on the joinder*, not on the merits of the plaintiff's case." (emphasis added).[3] It further explained that "the burden on the removing party is to prove that the joinder of the in-state parties was improper—that is, to show that sham defendants were added to defeat jurisdiction." *Id.* at 575. Applying *Smallwood* to the improper joinder analysis involving § 542.006 elections, the focal point of the analysis is on the joinder and thus an insurer's election *after* a lawsuit has commenced does not by itself establish improper joinder to defeat remand. *See Stephens*, 2019 WL 109395, at *7 ("[I]f an insurer elects to accept full responsibility of an agent/adjuster after the insured commences action in state court, the insurer must prove that the non-diverse adjuster is improperly joined for reasons independent of the election made under Section 542A.006."); *Yarco*, 397 F. Supp. 3d at 951 ("If a plaintiff's claims against a party were valid at the time of joinder, 'then it cannot be said that the joinder of that party was fraudulent.'") (quoting *Robbins Place*, 2019 WL 2183792, at *3); *River of Life*, 2019 WL 1767339, at *3 ("Church Mutual's election of responsibility therefore did not render

---

[3] In *Smallwood*, a Mississippi resident injured in a train accident brought a state-court action against Illinois Central Railroad and the Mississippi Department of Transportation. Illinois Central removed the case based on diversity jurisdiction, arguing that the Mississippi Department of Transportation had been improperly joined because the claims against it were preempted and recovery was barred by the Federal Railroad Safety Act. The Fifth Circuit rejected this argument as a misapplication of the improper-joinder doctrine, stating that "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit." *Id.* at 574. District courts interpreting *Smallwood* have observed that "if the impossibility of recovery were all that mattered, the *Smallwood* court would have reached the opposite conclusion." *Yarco Trading Co.*, 397 F. Supp. 3d at 950 (quoting *River of Life*, 2019 WL 1767339, at *3); *see also Stephens*, 2019 WL 109395, at *5.

Harris's *joinder* improper, because it did not preclude recovery against Harris until months after his joinder. If Harris is improperly joined, it must be for a reason that predated his joinder."). Here, the parties do not dispute that Allstate's election of responsibility did not occur until after Plaintiff filed the instant lawsuit. This election does not by itself establish that Stockert was improperly joined.

In arguing to the contrary, Defendants rely on *Hoyt v. Lane Construction Corp.*, 927 F.3d 287 (5th Cir. 2019) to contend that Allstate's post-lawsuit, pre-removal election in fact renders Stockert improperly joined because Plaintiff no longer has any possibility of recovery against her. This reliance, however, is misplaced. *Hoyt* involved claims against several construction companies for premises liability and gross negligence arising from a fatal automobile accident involving the defendants' construction activities. *Id.* at 291. After the state court granted the non-diverse defendant C.E.N.'s motion for summary judgment, the remaining diverse defendant removed the action to federal court and the plaintiff sought remand on the basis that removal was prohibited by the voluntary-involuntary rule because C.E.N. was dismissed against plaintiff's wishes. *Id.* at 292. The Fifth Circuit held that C.E.N. was improperly joined because the plaintiff could not establish a cause of action against C.E.M. in state court where the state court had already dismissed C.E.N. on summary judgment and there was no possibility that state court's summary judgment ruling could be reversed on appeal. *Id.* at 296-97. Thus, central to the court's denial of remand in *Hoyt* was the state court's dismissal of the non-diverse defendant on summary judgment prior to removal. That is not the case here. Unlike in *Hoyt*, the state court did not dismiss Stockert or adjudicate the merits of any claims prior to removal of this action.

Accordingly, the mere fact of Allstate's election of responsibility does not by itself establish improper joinder to defeat remand.

7

### B. Failure to State a Claim

Defendants next contend that Stockert was improperly joined because Plaintiff's boilerplate pleadings fail to state a claim for relief against her. The Court disagrees. Applying a "Rule 12(b)(6)-type analysis," the Court finds that the complaint sufficiently states a claim under either the Texas Insurance Code or the Deceptive Trade Practices Act. *Smallwood*, 385 F.3d at 573 (explaining that, generally, if a plaintiff "can survive a Rule 12(b)(6) challenge, there is no improper joinder"). The complaint articulates, for instance, specific damage to the Property that Stockert failed to include: "the composition shingle roof, garage roof, roofing components, and HVAC." (Doc. No. 1-3 at 15-16 at ¶23). It also explains *how* Stockert's adjustments were improper. The complaint alleges, for example, that "even though Idolina Stockert acknowledged the interior water damage to Plaintiff's property, she wrongfully opined that it should be covered under the "mold" provision and not the property damage provisions." *Id.* at ¶23. It further alleges that Stockert stated that Plaintiff "had no covered damage to his roof," when in fact there was extensive wind damage. *Id.* at ¶24. These allegations consist of more than mere legal conclusions plausibly state a claim against Stockert under Texas Insurance Code Unfair Settlement Practices, which provides, among others, a claim for "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code. § 541.060(a)(2)(A).

Because Allstate's § 542A.006 election does not by itself establish improper joinder, and because Plaintiff has sufficiently stated a claim under state law against Stockert, the Court concludes that the suit was not properly removable and thus must be remanded. This case is accordingly remanded to the 269th Judicial district Court of Harris County, Texas.

8

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Remand is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 23rd of March, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

9

CLERK
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
POST OFFICE BOX 61010
HOUSTON, TEXAS 77208

OFFICIAL BUSINESS

FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

2020 APR 13  AM 10: 53

Unofficial Copy Office of Marilyn Burgess District Clerk

269th Judicial District Court
of Harris County, Texas
201 Caroline, 13th Floor
Houston, TX 77002




US POSTAGE >PITNEY BOWES

ZIP 77002 $ 001.40⁰
02 1H
0001374615 APR 07 2020

Marilyn Burgess - District Clerk Harris County
Envelope No. 42678586
By: F Abdul-Bari
Filed: 5/1/2020 9:12 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI<br>    Plaintiff, | IN THE DISTRICT COURT |
| V. | |
| ALLSTATE VEHICLE AND<br>PROPERTY INSURANCE COMPANY<br>AND IDOLINA STOCKERT,<br>Defendants. | 269TH JUDICIAL DISTRICT<br><br>HARRIS COUNTY, TEXAS |

### JOINT NOTICE OF REMAND AND MOTION TO OPEN STATE COURT MATTER

The parties file this Joint Notice of Remand and Motion to Open State Court Matter, and respectfully show the Court the following:

On March 23, 2020, the Southern District of Texas ordered that this matter be remanded back to the 269th District Court, Harris County, Texas. *See* Exhibit 1, Remand Order. The parties request that this Court take notice of this remand and open the state court matter accordingly. The parties also request that the Court issue a new docket control order.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY BLUM**
TBN: 24092148

811 Louisiana St Ste 2400
Houston, TX  77002-1401
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY AND IDOLINA
STOCKERT

CHRISTOFFEL LAW GROUP, P.L.L.C.

**DAVID A. CHRISTOFFEL**
TBN:  24065044

3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served in compliance

with Rules 21 and 21a of the Texas Rules of Civil Procedure on the _____ day of April, 2020,

to:

David A. Christoffel
State Bar of Texas Number: 24065044
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

**KIMBERLY BLUM**

Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT 1

Unofficial Copy Office of Marilyn Burgess District Clerk

United States District Court
Southern District of Texas

**ENTERED**

March 23, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOHAMMAD SHENAVARI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-4159 |
| | § | |
| ALLSTATE VEHICLE AND PROPERTY | § | |
| INSURANCE COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Remand. (Doc. No. 4). After considering the motion, the responses thereto, the parties' oral arguments, and all applicable law, the Court determines that Plaintiff's Motion to Remand must be **GRANTED**.

## I.   BACKGROUND

Plaintiff Mohammad Shenavari is a Houston homeowner whose home (the "Property") suffered extensive damage during Hurricane Harvey in August 2017. At the time, the Property was insured by Defendant Allstate Vehicle and Property Insurance Company ("Allstate"). (Doc. No. 1-3 at 11 ¶8). Following the hurricane, Plaintiff submitted a claim to Allstate seeking coverage for the full cost of repairs to the Property as well as damage to personal property. *Id.* at 11 ¶11. Allstate acknowledged receipt of Plaintiff's claim. *Id.* at 11 ¶12.

Defendant Idolina Stockert, an insurance claims adjuster employed by Allstate, inspected the Property in September 2017 and confirmed that the Property had sustained extensive interior water damage. (Doc. No. 1-3 at 11 ¶3); *Id.* at 11 ¶14. Stockert recommended an insurance payment of $5,000. *Id.* On January 14, 2018, Allstate notified Plaintiff that it "unequivocally accepted

1

insurance coverage for the mold damage to interior of Plaintiff's home and unequivocally denied coverage [for the] composition shingle roof." *Id.* at ¶15.

On September 30, 2019, Plaintiff sued Allstate and Stockert in the 269th Judicial District Court of Harris County, Texas, alleging multiple violations of the Texas Deceptive Trade Practice Act (the "DPTA"), Tex. Bus. & Com. Code 17.41-63, fraud, breach of contract, and violations of the Texas Insurance Code. On October 22, 2019, Allstate filed an Election of Legal Responsibility for Stockert (the "Election of Responsibility") under Section 542A.006 of the Texas Insurance Code. (Doc. No. 1-3 at 6). Pursuant to this Election, Allstate "elects to accept legal responsibility for whatever liability IDOLINA STOCKERT might have to Plaintiff for IDOLINA STOCKERT's acts or omissions related to Plaintiffs' claims." (Doc. No. 1-3 at 6-7).

On October 24, 2019, Defendants removed this action to this Court on the basis of complete diversity under 28 U.S.C. § 1332(a). (Doc. No. 1). Plaintiff and Stockert are citizens of Texas, and Allstate is an Illinois corporation with its principal place of business in Illinois. (Doc. No. 1-3 at 11 ¶¶2-4). Plaintiff seeks monetary relief of at least $100,000. *Id.* at 11 ¶5. Plaintiff now moves to remand back to state court.

## II.  LEGAL STANDARD

A party may remove any civil state court action to a federal district court that has original jurisdiction. 28 U.S.C. § 1441(a); *see Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). Thus, to remove a case, a defendant must show that the action either arises under federal law or satisfies the requirements of complete diversity. 28 U.S.C. § 1441(b). To establish complete diversity, no plaintiff may share the same citizenship as any defendant and the case must involve an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a); *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 297 (5th Cir. 2010) (internal quotation marks and citation

omitted). When determining whether removal is proper, the court considers the claims alleged in the state court petition as they existed at the time of removal. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

Improper joinder constitutes a narrow exception to the rule of complete diversity. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). Under this doctrine, the court may disregard the citizenship of an improperly joined, non-diverse defendant, dismiss that defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendants. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Under the latter, the defendant must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might recover against an in-state defendant." *Id.*

To determine whether a plaintiff has a reasonable basis of recovery under state law, a court may "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* Alternatively, in cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings" and conduct a summary judgment-type inquiry. *Id.*

Federal pleading standards govern the Rule 12(b)(6)-type improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016).

The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper. *Smallwood*, 385 F.3d at 574. The removal statute must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

## III.   ANALYSIS

In opposing Plaintiff's motion to remand, Defendants contend that non-diverse Defendant Stockert was improperly joined because Allstate elected responsibility for her under Texas Insurance Code § 542A.006 after this lawsuit was filed but before it was removed. Defendants contend in the alternative that Stockert was improperly joined for the sole purpose of defeating diversity jurisdiction because Plaintiff's boilerplate pleadings fail to state a claim against Stockert.[1] The Court addresses each argument in turn.

### A.  Election of Responsibility under Texas Insurance Code § 542A.006.

Section 542A.006 of the Texas Insurance Code authorizes an insurer to elect to accept full legal responsibility of an adjuster's acts or omissions, and provides that if an insurer elects responsibility after a lawsuit has commenced, "the court shall dismiss the action against the agent with prejudice." Tex. Ins. Code § 542A.006(c). Defendants contend that because Allstate elected responsibility for Stockert before removing the action to federal court, Stockert was improperly joined and this action was thus properly removed. According to Defendants, once Allstate elected responsibility, Plaintiff no longer had any possibility of recovery against Stockert, thereby rendering her joinder improper. (Doc. No. 9 at ¶19).

---

[1] The Court notes that Defendants do not raise this argument in their Response to Plaintiff's motion for remand. *See* (Doc. No. 9). However, the Court nonetheless addresses this argument as Defendants raised it in their Notice of Removal. (Doc. No. 1).

4

Whether a § 542.006 election that is made after an insured files suit in state court but before the action is removed renders a non-diverse agent an improper party has not been addressed by the Fifth Circuit. *Altom v. Allstate Vehicle & Prop. Ins. Co.*, 2020 WL 810856, at *3 (E.D. Tex. Jan. 27, 2020). Much ink has been spilt, however, by district courts that have split on the impact of such an election on the improper joinder analysis.[2]

One line of decisions concludes that a § 542.006 election made after a lawsuit commences but before removal renders the in state adjuster improperly joined because the election, which requires that the adjuster be dismissed with prejudice, precludes any recovery against the adjuster. *See, e.g.*, *Bexar Diversified MF-1, LLC v. Gen. Star Indem. Co.*, 2019 WL 6131455, at *3 (W.D. Tex. Nov. 18, 2019); *Flores v. Allstate Vehicle & Prop. Ins. Co.*, 2018 WL 5695553, at *5 (W.D. Tex. Oct. 31, 2018) ("[E]ven when a plaintiff asserts viable claims against an insurance agent, an election of liability by the insurer for the agent's acts or omissions is sufficient to show improper joinder on the basis that there is no reasonable basis to predict that the plaintiff might be able to recover against the agent."); *Jiang v. Travelers Home & Marine Ins. Co.*, 2018 WL 6201954, at *2 (W.D. Tex. Nov. 28, 2018). The other line of decisions concludes that the touchstone of the improper joinder inquiry is whether parties were improperly joined at the time of joinder, and thus that an insurer's § 542.006 election after a lawsuit has commenced does not by itself establish improper joinder. *See, e.g.*, *Altom*, 2020 WL 810856, at *3; *Macari v. Liberty Mut. Ins. Co.*, 2019 WL 5595304, at *1 (S.D. Tex. Oct. 30, 2019); *Yarco Trading Co., Inc. v. United Fire & Cas. Co.*, 397 F. Supp. 939, 945-50 (S.D. Tex. July 11, 2019); *River of Life Assembly of God v. Church Mut.*

---

[2] Courts agree that when an insurer makes its election *before* an insured files suit in state court, then a dismissal under § 542A.006 is tantamount to a finding of improper joinder if a plaintiff-insured attempts to add the non-diverse adjuster to an action. *See, e.g.*, *Altom*, 2020 WL 810856, at *3 (E.D. Tex. Jan. 27, 2020); *Bexar*, 2019 WL 6131455, at *3; *Vyas v. Atain Speciality Ins. Co.*, 380 F. Supp. 3d 609 (S.D. Tex. 2019).

*Ins. Co.*, 2019 WL 1767339, at *3 (W.D. Tex. Apr. 22, 2019); *Stephens v. Safeco Ins. Co. of Ind.*, 2019 WL 109395, at *7 (E.D. Tex. Jan. 4, 2019).

The Court agrees with the reasoning set forth in the latter approach. The Fifth Circuit sitting en banc in *Smallwood v. Illinois Central Railroad Co.*, 85 F.3d 568, 573 (5th Cir. 2004) (en banc) stated that "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, *the focus of the inquiry must be on the joinder*, not on the merits of the plaintiff's case." (emphasis added).[3] It further explained that "the burden on the removing party is to prove that the joinder of the in-state parties was improper—that is, to show that sham defendants were added to defeat jurisdiction." *Id.* at 575. Applying *Smallwood* to the improper joinder analysis involving § 542.006 elections, the focal point of the analysis is on the joinder and thus an insurer's election *after* a lawsuit has commenced does not by itself establish improper joinder to defeat remand. *See Stephens*, 2019 WL 109395, at *7 ("[I]f an insurer elects to accept full responsibility of an agent/adjuster after the insured commences action in state court, the insurer must prove that the non-diverse adjuster is improperly joined for reasons independent of the election made under Section 542A.006."); *Yarco*, 397 F. Supp. 3d at 951 ("If a plaintiff's claims against a party were valid at the time of joinder, 'then it cannot be said that the joinder of that party was fraudulent.'") (quoting *Robbins Place*, 2019 WL 2183792, at *3); *River of Life*, 2019 WL 1767339 at *3 ("Church Mutual's election of responsibility therefore did not render

---

[3]In *Smallwood*, a Mississippi resident injured in a train accident brought a state-court action against Illinois Central Railroad and the Mississippi Department of Transportation. Illinois Central removed the case based on diversity jurisdiction, arguing that the Mississippi Department of Transportation had been improperly joined because the claims against it were preempted and recovery was barred by the Federal Railroad Safety Act. The Fifth Circuit rejected this argument as a misapplication of the improper-joinder doctrine, stating that "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. *Id.* at 574. District courts interpreting *Smallwood* have observed that "if the impossibility of recovery were all that mattered, the *Smallwood* court would have reached the opposite conclusion." *Yarco Trading Co.*, 397 F. Supp. 3d at 950 (quoting *River of Life*, 2019 WL 1767339, at *3); *see also Stephens*, 2019 WL 109395, at *5.

6

Harris's *joinder* improper, because it did not preclude recovery against Harris until months after his joinder. If Harris is improperly joined, it must be for a reason that predated his joinder."). Here, the parties do not dispute that Allstate's election of responsibility did not occur until after Plaintiff filed the instant lawsuit. This election does not by itself establish that Stockert was improperly joined.

In arguing to the contrary, Defendants rely on *Hoyt v. Lane Construction Corp.*, 927 F.3d 287 (5th Cir. 2019) to contend that Allstate's post-lawsuit, pre-removal election in fact renders Stockert improperly joined because Plaintiff no longer has any possibility of recovery against her. This reliance, however, is misplaced. *Hoyt* involved claims against several construction companies for premises liability and gross negligence arising from a fatal automobile accident involving the defendants' construction activities. *Id.* at 291. After the state court granted the non-diverse defendant C.E.N.'s motion for summary judgment, the remaining diverse defendant removed the action to federal court and the plaintiff sought remand on the basis that removal was prohibited by the voluntary-involuntary rule because C.E.N. was dismissed against plaintiff's wishes. *Id.* at 292. The Fifth Circuit held that C.E.N. was improperly joined because the plaintiff could not establish a cause of action against C.E.N. in state court where the state court had already dismissed C.E.N. on summary judgment and there was no possibility that state court's summary judgment ruling could be reversed on appeal. *Id.* at 296-97. Thus, central to the court's denial of remand in *Hoyt* was the state court's dismissal of the non-diverse defendant on summary judgment prior to removal. That is not the case here. Unlike in *Hoyt*, the state court did not dismiss Stockert or adjudicate the merits of any claims prior to removal of this action.

Accordingly, the mere fact of Allstate's election of responsibility does not by itself establish improper joinder to defeat remand.

### B. Failure to State a Claim

Defendants next contend that Stockert was improperly joined because Plaintiff's boilerplate pleadings fail to state a claim for relief against her. The Court disagrees. Applying a "Rule 12(b)(6)-type analysis," the Court finds that the complaint sufficiently states a claim under either the Texas Insurance Code or the Deceptive Trade Practices Act. *Smallwood*, 385 F.3d at 573 (explaining that, generally, if a plaintiff "can survive a Rule 12(b)(6) challenge, there is no improper joinder"). The complaint articulates, for instance, specific damage to the Property that Stockert failed to include: "the composition shingle roof, garage roof, roofing components, and HVAC." (Doc. No. 1-3 at 15-16 at ¶23). It also explains *how* Stockert's adjustments were improper. The complaint alleges, for example, that "even though Idolina Stockert acknowledged the interior water damage to Plaintiff's property, she wrongfully opined that it should be covered under the "mold" provision and not the property damage provisions." *Id.* at ¶23. It further alleges that Stockert stated that Plaintiff "had no covered damage to his roof," when in fact there was extensive wind damage. *Id.* at ¶24. These allegations consist of more than mere legal conclusions plausibly state a claim against Stockert under Texas Insurance Code Unfair Settlement Practices, which provides, among others, a claim for "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code. § 541.060(a)(2)(A).

Because Allstate's § 542A.006 election does not by itself establish improper joinder, and because Plaintiff has sufficiently stated a claim under state law against Stockert, the Court concludes that the suit was not properly removable and thus must be remanded. This case is accordingly remanded to the 269th Judicial district Court of Harris County, Texas.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Remand is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 23rd of March, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

5/1/2020 9:12:45 AM
Marilyn Burgess District Clerk
Harris County
Envelope No: 42678586
By: ABDUL-BARI, FATIMAH
Filed: 5/1/2020 9:12:45 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI<br>    Plaintiff, | IN THE DISTRICT COURT |
| V. | |
| ALLSTATE VEHICLE AND<br>PROPERTY INSURANCE COMPANY<br>AND IDOLINA STOCKERT,<br>Defendants. | 269TH JUDICIAL DISTRICT<br><br>HARRIS COUNTY, TEXAS |

## <u>PROPOSED ORDER ON THE PARTIES'</u>
## <u>JOINT MOTION TO OPEN STATE COURT MATTER</u>

Be it remembered that on this day the parties' **JOINT MOTION TO OPEN STATE**

**COURT MATTER** was considered.  Upon consideration of the motion, the Court will open the

state court matter and issue a new docket control order to the parties.


Signed the _____ day of _____, 2020.


_____

**JUDGE PRESIDING**

5/5/2020 10:00 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42744410
By: PAM ROBICHEAUX
Filed: 5/5/2020 10:00 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
| Plaintiff, | |
| V. | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY AND IDOLINA STOCKERT, | HARRIS COUNTY, TEXAS |
| Defendants. | |

**NOTICE OF HEARING BY SUBMISSION ON DEFENDANT'S NOTICE OF ELECTION OF LEGAL RESPONSIBILITY FOR IDOLINA STOCKERT**

Please take notice that Defendants' NOTICE OF ELECTION OF LEGAL RESPONSIBILITY FOR IDOLINA STOCKERT is set for a hearing by **SUBMISSION** on **Monday, May 18, 2020 at 8:00am**.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY N. BLUM**
TBN: 24092148
Southern District Bar No. 2601470
811 Louisiana, Suite 2400
Houston, TX 77002
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served in compliance

with Rules 21 and 21a of the Texas Rules of Civil Procedure on this day of May 5, 2020.

David A. Christoffel
State Bar of Texas Number: 24065044
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

**KIMBERLY BLUM**

5/6/2020 11:17 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42779008
By: F Abdul-Bari
Filed: 5/6/2020 11:17 AM

**CAUSE NO. 2019-71232**

| | | |
|---|---|---|
| MOHAMMAD SHENAVARI | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| V. | § | 269TH JUDICIAL DISTRICT |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |
| AND IDOLINA STOCKERT, | § | |
| *Defendants*. | § | HARRIS COUNTY, TEXAS |

---

**PLAINTIFF'S OPPOSED MOTION TO COMPEL APPRAISAL**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Mohammad Shenavari, by and through his counsel of record, and files this PLAINTIFF'S OPPOSED MOTION TO COMPEL APPRAISAL, and in support thereof, would show this Honorable Court as follows:

## I.    FACTUAL BACKGROUND

1.    This case involves a dispute over the cost necessary to repair covered damages sustained to Plaintiff's property resulting from Hurricane Harvey, on or about August 27, 2017. Defendant Allstate Vehicle and Property Insurance Company ("Allstate") issued Plaintiff's Homeowner Policy No. 000829582292. The policy insured the Plaintiff's residential property located at 331 Isolde Drive, Houston, Texas 77024 ("the Property"). Plaintiff disagreed with Allstate's assessment of the cost of repairs to the Property, and has filed this instant lawsuit therefrom. Because the parties have failed to agree to the amount of loss, this claim is appropriate for appraisal under the terms of the policy.

2.    Plaintiff submitted a claim to Allstate for the damages sustained by the Property; Allstate assigned claim no. 0472496529 to Plaintiff's claim.  Allstate assigned an adjuster, Idolina Stockert,

to investigate the loss. On or about September 21, 2017, adjuster Idolina Stockert visited Plaintiff's Property and removing the roof tarpaulin, confirmed wind damaged shingles on the north slope and south slope of Plaintiff's roof.

3.      After multiple inspections, Allstate eventually estimated Plaintiff's claim damages as $20,542.18.

4.      Plaintiff had the Property inspected by an independent estimator who concluded that the damages to the Property, totaled $131,695.31.

5.      Plaintiff informed Allstate of the independent estimator's findings and provided Allstate with the estimate and photographs. Thereafter, Allstate fully and completely ignored Plaintiff's independent property damage estimate, photographs and *Notice* letter, dated September 16, 2019.

6.      To reconcile the disagreement, Plaintiff requested appraisal under the policy via first-class mail on December 16, 2019 and designated his appraiser.  A copy of such electronic mail is attached hereto as Plaintiff's Exhibit 1.  Allstate failed to acknowledged receipt of Plaintiff's request for appraisal within the twenty (20) days set forth in the policy.  On January 13, 2020, Plaintiff's counsel followed up with Defendant's counsel to ascertain whether Defendant was amenable to the appraisal process.  On January 14, 2020, Defendant's counsel indicated that the Allstate claims representative would not authorize appraisal, in violation of the appraisal provision and insurance policy.

7.      As Allstate is required to participate in the appraisal process, and has refused to do so, Plaintiff respectfully requests that the Court compel Allstate to engage in the appraisal process as required by the terms of the Policy.

## II.      ARGUMENTS & AUTHORITIES

### A.  PLAINTIFF PROPERLY INVOKED THE POLICY'S APPRAISAL PROVISION

8.      It is undisputed that Allstate policy no. 829 582 292, ("the Policy") applies to Plaintiff's

claim.  An insurance policy is a contract, generally governed by the same rules of construction as

all other contracts. *USAA Texas Lloyds Co. v. Menchaca,* 545 S.W.3d 479, 488 (Tex. 2018).

Contract interpretation determines the parties' intent by using the plain meaning of the language

in the contract. *Great Am. Ins, Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). The Policy contains

the following appraisal clause:

### SECTION I - CONDITIONS

8.      **Appraisal. If you** and **we** fail to agree on the amount of loss, either
party may make written demand for appraisal. Upon such demand,
each party must select a competent and impartial appraiser and
notify the other of the appraiser's identity within 20 days after the
demand is received, the appraisers will select a competent and
impartial umpire. If the appraisers are unable to agree upon an
umpire within 15 days, you or we can ask a judge of a court of record
in the state where the residence premises is located to select an
umpire."

*See* Plaintiff's Exhibit 1 - Policy No. 829582292, p. 41 ("19 of 28"), Section "8. Appraisal."

9.      The clause provides that if the parties disagree as to the amount of loss, as is the case here,

either party may demand appraisal in writing. Once appraisal is demanded, both parties ***shall*** select

an appraiser and proceed with the stated appraisal process.

10.     On December 16, 2019, Plaintiff invoked appraisal and notified Allstate of Plaintiff's

selected appraiser in a letter sent to Allstate Texas's counsel, complying with the terms of the

Policy.  *See* Plaintiff's Exhibits 2.

11.     In violation of the requirements of the Policy, Allstate failed to respond to Plaintiff's

invocation of the appraisal process and refused to participate in appraisal. Under the terms of the

Policy, Allstate should have responded to Plaintiff's appraisal demand, within twenty days, by selecting an appraiser and continuing with the appraisal process. Allstate's refusal to undertake appraisal is a further violation of the insurance contract.

### B. TEXAS LAW STRONGLY FAVORS ENFORCING APPRAISAL PROVISIONS

12.      The Supreme Court strongly favors enforcing appraisal provisions in insurance contracts. *See Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 891-95 (Tex. 2009) (stating that like any other contractual provision, appraisal clauses should be enforced). The purpose of appraisal is to determine the amount of loss and possibly resolve the case. *Johnson* at 894-895 (Tex. 2009).

13.      Plaintiff has properly invoked appraisal in writing. The disputed issue in this case is the amount of loss, which the appraisal process was created to resolve.  Accordingly, consistent with the law strongly favoring the enforcement of appraisal clauses in insurance contracts, this Court should grant this Motion and allow the appraisal process to proceed.

### i.   The Policy Requires Appraisal Despite Allstate's Objection

14.      Allstate's objection to Plaintiff's demand for appraisal has no effect on the requirements of the Policy. The appraisal clause in the Policy does not put forth a required timeframe for demanding appraisal, nor does it put any restriction on invoking appraisal after a suit has been filed.  Plaintiff has an absolute right under the Policy to invoke appraisal, and having done so, Allstate is required to comply with the terms of the Policy by cooperating with the appraisal process.

15.      Parties frequently invoke appraisal after litigation has commenced, and courts enforce the appraisal clauses in those situations. *See* e.g., *Marchbanks v. Liberty Ins. Corp.*, No. 14-17-00004-

CV, 2018 Tex. App. LEXIS 6692, *2 (Tex. App.—Houston [14th Dist] August 23, 2018, pet. filed) (appraisal invoked five months after suit filed); *In re Guideone Nat'l Ins. Co.*, No. 07-15-00281-CV, 2015 Tex. App. LEXIS 10138 *2-3 (Tex. App.—Amarillo September 29, 2015, orig. proceeding) (mem. op.) (appraisal invoked eight months after suit filed); *In re Century Sur. Co.*, No. 07-15-00386-CV, 2015 Tex. App. LEXIS 11272 *1-5 (Tex. App.—Amarillo November 2, 2015, orig. proceeding) (mem. op.) (appraisal invoked 15 months after suit filed); *Natl' Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 842 (Tex. App.—Houston [14th Dist.], pet. filed) (appraisal invoked forty-one months after suit filed).

C.  ATTORNEY'S FEES

16.    Plaintiff has incurred attorney's fees for the preparation of this motion, and therefore requests an award of the same, under Tex. Civ. Prac. & Rem. Code § 38.001.

### III.    CONCLUSION

17.    The Policy in this case contains an appraisal provision which Plaintiff properly invoked. Allstate has refused to cooperate in the appraisal process despite the contractual requirement that it do so. Therefore, Plaintiff respectfully requests that this Court order Allstate to comply with the Policy and proceed with the appraisal process.

### IV.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Mohammad Shenavari respectfully prays that this Court grant PLAINTIFF'S MOTION TO COMPEL APPRAISAL, award Plaintiff attorney's fees incurred for this motion, and order all further relief, either at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted this 5th day of May 2020.

Respectfully submitted,

**CHRISTOFFEL LAW GROUP, PLLC**
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281) 429-8402
Facsimile: (281) 429-8403

By: */s/ David A. Christoffel*
    David A. Christoffel
    SBN: 24065044
    ChristoffelLawGroup@gmail.com

*COUNSEL FOR PLAINTIFF*
*MOHAMMAD SHENAVARI*

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 13th day of January 2020, I conferenced with Mr. Michael C. Maus, Esq., temporary counsel for Defendant Allstate, via electronic mail, to ascertain whether or not he opposed this Motion to Remand. On the 14th day of January 2020, Mr. Michael C. Maus indicated that he is opposed to this Motion.

    */s/ David A. Christoffel*
    David A. Christoffel

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the below counsel of record, via the e-filing system, on this 5th day of May 2020, and in accordance with the Texas Rules of Civil Procedure.

SUSAN L. FLORENCE & ASSOCIATES
Attn.: Ms. Kimberly Blum, Esq.
811 Louisiana Street, Suite 2400
Houston, Texas 77002-1401

**ATTORNEY FOR DEFENDANT**
**ALLSTATE VEHICLE AND PROPERTY**
**INSURANCE COMPANY**

    */s/ David A. Christoffel*
    David A. Christoffel

# PLAINTIFF'S EXHIBIT NO. 1

Unofficial Copy Office of Marilyn Burgess District Clerk



Claim# __0472496529__

To Whom It May Concern:

I, _____Olivia Leach_____, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of __08/27/2017_____. The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this ____3rd____ day of _____April_____2019, before me personally

appeared _____Olivia Leach_____ to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

```
PATRICIA TORRES
Notary Public, State of Texas
Comm. Expires 10-31-2021
Notary ID 129611687
```

_____
Notary Public



*Jason Lee Agency*
*15102 Highway 6*
*Rosharon TX 77583-3267*

Information as of January 19, 2018

Policyholder(s)                    Page **1** of 2
**Mohammad Shenavari and Mandana Samizadeh**

Policy number
**829 582 292**

Your Allstate agency is
**Jason Lee Agency**
(281) 710-9102
JASONLEE1@ALLSTATE.COM

MOHAMMAD SHENAVARI
AND MANDANA SAMIZADEH
515 TALLOWOOD RD UNIT 7
HOUSTON TX 77024-4966

# Here's a Copy of Your Current Declarations Page

We've enclosed your Allstate Vehicle and Property Insurance Company House & Home Declarations Page—which lists your coverages, coverage limits, premiums and any discounts you're receiving.

Please give your Allstate Agent a call at (281) 710-9102 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

Steven P. Sorenson
President, Allstate Vehicle and Property Insurance Company

NP206



Policy number: **829 582 292**

Policy effective date: April 11, 2017

# Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. *Next steps:* review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. *Next steps:* please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

# A guide to your renewal package







**Policy Declarations\***
The Policy Declarations lists policy details, such as your property details and coverages.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features:
www.allstate.com/madesimple
Espanol.allstate.com/facildeentender

**\* To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.**

Policy number: **829 582 292**
Policy effective date: April 11, 2017

Page **1** of 1



# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Allstate's toll-free telephone number for information or to make a complaint at:

**1-800-ALLSTATE® (1-800-255-7828)**

You may also write to Allstate at:

Allstate Insurance Company
PO Box 660598
Dallas, TX 75266-0598

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights, or complaints at:

**1–800–252–3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714–9104
FAX: (512) 490–1007

Web: www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

## INSURANCE WEBSITE NOTICE

To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/Office of Public Insurance Counsel website:

**www.helpinsure.com**

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim, you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de Allstate para obtener información o para presentar una queja al:

**1-800-ALLSTATE® (1-800-255-7828)**

Usted también puede escribir a Allstate:

Allstate Insurance Company
PO Box 660598
Dallas, TX 75266-0598

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al:

**1–800–252–3439**

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714–9104
FAX: (512) 490–1007

Sitio web: www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

## AVISO DEL SITIO WEB DE SEGUROS

Para obtener formas para la comparación de precios y pólizas y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com**

## DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:

Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente o la compañía primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas.

## ADJUNTE  ESTE AVISO A SU PÓLIZA:

Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

**X67186-4**

Unofficial Copy – Office of Marilyn Burgess District Clerk



Unofficial Copy Office of Marilyn Burgess District Clerk

# Renewal House & Home Policy Declarations

Your policy effective date is April 11, 2017


**Allstate.**
You're in good hands.

## Total Premium for the Policy Period

| | |
|---|---|
| Premium for property insured | $1,697.60 |
| Recoupment Fee Volunteer Rural Fire Department Assistance Program | 1.26 |
| **If you pay in installments*** | **$1,698.86** |
| **If you pay in full** | **$1,601.20** |

*Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | **$27.31** | Multiple Policy | **$313.45** |
| Claim Free | **$151.45** | Loyalty | **$108.67** |
| Smoke-Free | **$103.65** | | |
| **Total discount savings*** | | | **$704.94** |

*Any discounts of $5 or less are not listed above but are included in the total discount savings number.

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182) for additional coverage information. Contact us if you have any changes.

**Location of property insured:** 331 Isolde Dr, Houston, TX 77024-4722

**Dwelling Style:**
Built in 1962; 1 family; 2538 sq. ft.; 1 story

**Foundation:**
Slab at grade, 100%

**Detached structure:**
One 2-car detached garage

**Interior details:**
One builders grade kitchen          One single fireplace
Two builders grade full baths

**Exterior wall type:**
100% brick on frame

**Interior wall partition:**
100% drywall

Information as of January 19, 2018

## Summary

Named Insured(s)
**Mohammad Shenavari and Mandana Samizadeh**

Mailing address
**515 Tallowood Road Bldg 7
Houston TX 77024-4966**

Policy number
**829 582 292**

Your policy provided by
**Allstate Vehicle and Property Insurance Company**

Policy period
Beginning **April 11, 2017** through **April 11, 2018** at 12:01 a.m. standard time

Your Allstate agency is
**Jason Lee Agency**
15102 Highway 6
Rosharon TX 77583-3267
(281) 710-9102
JASONLEE1@ALLSTATE.COM

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

*(continued)*

Unofficial Copy Office of Marilyn Burgess District Clerk

TX070RBD



Renewal House & Home Policy Declarations

Page **2** of 4

Policy number: **829 582 292**

Policy effective date: April 11, 2017

---

**Insured property details\* (continued)**

**Heating and cooling:**
Average cost heat & central air
conditioning, 100%

**Additional details:**
Interior wall height - 8 ft, 100%

**Fire protection details:**
Fire department subscription - no      1 mile to fire department

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

**Roof details:**
Predominant roof type: Composition      Age of roof - 4 years
Roof geometry - Gable

**Mortgagee**
DITECH FINANCIAL LLC ITS AFFILIATES AND/OR ASSIGNS
P O Box 979282, Miami, FL 33197-9282
Loan number: 820239226

**Additional Interested Party - None**

*This is a partial list of property details. If the interior of your property includes custom
construction, finishes, buildup, specialties or systems, please contact your Allstate
representative for a complete description of additional property details.*

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $223,811 | • $11,190 Tropical Cyclone<br>• $11,191 Windstorm and Hail<br>• $11,191 All other perils |
| Other Structures Protection | $22,382 | • $11,190 Tropical Cyclone<br>• $11,191 Windstorm and Hail<br>• $11,191 All other perils |
| Personal Property Protection | $134,287 | • $11,190 Tropical Cyclone<br>• $11,191 Windstorm and Hail<br>• $11,191 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $22,382 | |
| Family Liability Protection | $100,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Foundation Water Damage | $5,000 | |
| Building Codes | **Not purchased\*** | |
| Building Structure Reimbursement Extended Limits | **Not purchased\*** | |
| Roof Surfaces Extended Coverage | Included | |

Unofficial Copy Office of Marilyn Burgess District Clerk

Renewal House & Home Policy Declarations
Policy number: **829 582 292**
Policy effective date: April 11, 2017

Page **3** of 4



| Water Back-Up | $5,000 | • $500 Water Back-Up |
| Residence Glass | Included | |

▶ *Other Coverages Not Purchased:*

- Additional Fire Department Charges*
- Building Materials Theft*
- Country Endorsement*
- Dwelling in the Course of Construction*
- Electronic Data Recovery*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*

- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fair Rental Income*
- Golf Cart*
- Green Improvement*
- Home Day Care*

- Identity Theft Expenses*
- Increased Coverage on Business Property*
- Increased Coverage on Theft of Silverware*
- Loss Assessments*
- Secondary Residence*
- Yard and Garden*

*\* This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your House & Home policy consists of the Policy Declarations, any Policy Declarations Addendum, and the following documents. Please keep them together.

- AVPIC House & Home Policy  – AVP91
- Windstorm and Hail Deductible Endorsement – AVP82
- Water Back–Up Endorsement – AVP98-1
- Roof Surfaces Extended Coverage Endorsement – AVP144-1

- Tropical Cyclone Deductible Endorsement – APC548
- Residence Glass Coverage – AVP99
- Texas Amendatory Endorsement – AVP348
- Texas Amendatory Endorsement – AVP345

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ The Property Insurance Adjustment condition applies.

▶ Please note: This is not a request for payment.

   If you have any outstanding or unpaid bills, please pay at least the minimum amount due to assure your policy continues in force. If you have any questions, please contact your agent.

▶ If, however, you would like to make a payment by credit card (Visa/MasterCard/Discover) or Check-By-Phone, please call 1-800-357-5092.

TX070RBD



Renewal House & Home Policy Declarations                                                                Page **4** of 4
Policy number:          | 829 582 292 |
Policy effective date:          April 11, 2017

---

**Allstate Vehicle and Property Insurance Company's**  Secretary and President have signed this policy with legal authority at
Northbrook, Illinois.

Steven P. Sorenson                                          Susan L. Lees
President                                                   Secretary

## Important notices

Policy number: **829 582 292**
Policy effective date:   April 11, 2017

Page **1** of 8



# Your Estimated Home Replacement Cost

Allstate has determined that the estimated cost to replace your home is: <u>$222,242.</u>

We based your estimated cost on information provided by you and selected data that was available to us, which is described in the "Insured property details" section of your Declarations Page. Please review all the information in this section to ensure the accuracy of the information used to determine the estimated replacement cost of your home.

The enclosed Declarations Page shows the limit of liability applicable to Dwelling Protection–Coverage A of your homeowners insurance policy. The estimated replacement cost of your home is the minimum amount for which we will insure your home.

The decision regarding the limit applicable to your Dwelling Protection–Coverage A is your decision to make, as long as, at a minimum, your limit equals the estimated replacement cost as determined by Allstate and does not exceed maximum coverage limitations established by Allstate.

It is important to keep in mind that your Coverage A limits reflect a replacement cost that is only an estimate based on data that was available to us when we made this estimate (this information is described in the "Insured property details" section of your Declarations Page). The actual amount it will cost to replace your home cannot be known until after a covered total loss has occurred. Please keep in mind that we do not guarantee the adequacy of the estimate to cover any future loss(es).

## How Is the Replacement Cost Estimated?

Many factors can affect the cost to replace your home, including its age, size, and type of construction. For example, the replacement cost uses construction data, such as labor and materials, that are available to us when we made this estimate. This estimate is also based on characteristics of the home, which include information that you provided to us. You might have chosen to insure your home for a higher amount than the estimated replacement cost shown above.

## Note to Customers Renewing Their Policy

The estimated replacement cost for your home may have changed since the last time we communicated this information to you. This is because, at renewal, Allstate uses the home characteristics that you have provided to us to recalculate and update the estimated replacement cost. Using updated labor and material rates for your zip code, Allstate takes the home characteristics you have provided and determines the updated estimated replacement cost. The information about your home's characteristics is provided in the "Insured property details" section of your Declarations Page.

If the information about your home shown in your Declarations Page requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative, or call us at 1-800-ALLSTATE.

X73182

# Please Check Your Policy Coverage Limits

When we first issued your Allstate policy, you selected specific coverages and coverage limits to protect your property. However, your property's value may have changed since that time. We'd like to remind you that it is your responsibility to carefully review your coverages and coverage limits at each policy renewal and make sure they provide you with adequate coverage.

Please take a few minutes to review your policy. If you have any questions about your insurance coverage, or if you wish to change your policy limits, please contact your Allstate representative.

X73175

# Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

- No deductibles to meet
- Coverage for lost or damaged items
- Coverage for valuables kept in a storage location outside your home

**Items That May Need the Extra Protection**



Important notices
Policy number:          829 582 292
Policy effective date:   April 11, 2017

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

**X73169**

# What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the

insurance protection for your property and help protect your financial well-being.

## You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

### Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

**X73168**

# Consumer Bill Of Rights Homeowners, Dwelling & Renters Insurance

AVISO: Este documento es un resumen de sus derechos como asegurado. Usted tiene el derecho a llamar a su compañía y pedir una copia de estos derechos en español.

### What is the Bill of Rights?

This Bill of Rights is a summary of your rights and does not become a part of your policy. The Texas Department of Insurance (TDI) adopted the Bill of Rights and requires

Important notices
Policy number: **829 582 292**
Policy effective date: April 11, 2017

Page **3** of 8



insurance companies to provide you a copy when they issue your policy.

Texas law gives you certain rights regarding your homeowners, dwelling and renters insurance. This Bill of Rights identifies your rights specified by rule or by state statute, but it does not include all your rights. Also, some exceptions to the rights are not listed here. Legislative or regulatory changes to statutes or rules may affect your rights as an insured. If your agent, company, or adjuster tells you that one of these rights does not apply to you, contact TDI's Consumer Protection Program at 1-800-252-3439 (252-3439 in Austin), by mail at Mail Code 111-1A, P.O. Box 149091, Austin, TX 78714-9091, or by email at *ConsumerProtection@tdi.texas.gov.* For a list of the specific law(s) and/or rule(s) summarized in each item of this Bill of Rights, or if you have questions or comments contact the Office of Public Insurance Counsel (OPIC) toll free at 1-877-611-6742, by mail at 333 Guadalupe, Suite 3-120, Austin, TX 78701, or visit the OPIC website at *www.opic.texas.gov.*

This Bill of Rights does not address your responsibilities. Your responsibilities concerning your insurance can be found in your policy. Failure to meet your obligations may affect your rights.

**Getting information from the Department of Insurance and your insurance company**

1. ***INFORMATION FROM TDI.*** You have the right to call TDI free of charge at 1-800-252-3439 to learn more about:

   - your rights as an insurance consumer;
   - the license status of an insurance company or agent;
   - the financial condition of an insurance company;
   - the complaint ratio and type of consumer complaints filed against an insurance company;
   - use of credit information by insurance companies, including which insurance companies use it and access to each company's credit scoring model;
   - an insurance company's rates filed with the state;
   - an insurance company's underwriting guidelines (subject to exemptions in the Public Information Act, also known as the Open Records Act);
   - the Texas FAIR Plan, designed to help consumers who have been denied coverage by at least two insurance companies; and
   - other consumer concerns.

   You can also find some of this information on the TDI website at *www.tdi.texas.gov.*

   At *www.helpinsure.com,* Texans can find more detailed information on their current and prospective insurers. TDI,

in conjunction with OPIC, maintains this website to help Texans shop for residential property insurance and personal automobile insurance. For companies writing in Texas that are in the top 25 company groups nationally, the site also includes:

   - a list of insurers by county and/or ZIP code;
   - detailed contact information for each insurer;
   - sample rates and a brief history of increases and/or decreases in the rates;
   - policy form comparisons;
   - a list of policy forms, exclusions, endorsements, and discounts offered by each insurer; and
   - non-confidential disciplinary actions against each insurer.

2. ***INFORMATION FROM YOUR INSURANCE COMPANY.*** You have the right to a toll-free number to call your insurance company free of charge with questions or complaints. You can find this number on a notice accompanying your policy. This requirement does not apply to small insurance companies.

## What you should know before you buy insurance

3. ***PROHIBITED STATEMENTS.*** Your insurance company or agent is prohibited from making false, misleading, or deceptive statements to you relating to insurance.

4. ***LENDER-REQUIRED INSURANCE.*** A lender cannot require you to purchase insurance on your property in an amount that exceeds the replacement cost of the dwelling and its contents as a condition of financing a residential mortgage or providing other financing arrangements for the property, regardless of the amount of the mortgage or other financing arrangements. In determining the replacement cost of the dwelling, a lender cannot include the fair market value of the land on which a dwelling is located.

5. ***CREDIT INFORMATION.*** An insurance company cannot deny you insurance solely on the basis of credit information. Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to offer coverage. (For additional information see the section of this Bill of Rights titled *What you should know about insurance companies' use of credit information.*)

6. ***APPLIANCE-RELATED WATER DAMAGE CLAIMS.*** An insurance company cannot deny you insurance or increase



Important notices
Policy number: 829 582 292
Policy effective date: April 11, 2017

your premium based on a prior appliance-related water damage claim if:

- the damage has been properly repaired or remediated; and

- the repair or remediation was inspected and certified.

NOTE: A company can use an appliance-related water damage claim if you file three or more such claims in a three-year period and the company has paid the claims. A claim includes a claim filed by you or a claim filed on your property.

**7.   WATER CLAIMS/MOLD DAMAGE OR CLAIMS.** An insurance company cannot deny you insurance based solely on a single prior water damage claim. An insurance company also cannot deny you insurance because of prior mold damage or a prior mold claim if:

- the damage or claim was properly repaired or remediated; and

- the repair or remediation was inspected and certified.

NOTE: A claim includes a claim filed by you or a claim filed on your property.

**8.   PROPERTY CONDITION.** Voluntary Inspection Program: You have the right to have an independent inspection of your property by any person authorized by the Commissioner of Insurance to perform inspections. Once the inspector determines that your property meets certain minimum requirements and issues you an inspection certificate, no insurer may deny coverage based on property conditions without reinspecting your property. If an insurer then denies coverage, the insurer must identify, in writing, the specific problem(s) that makes your property uninsurable. You can find a list of available inspectors on the TDI website at *www.tdi.texas.gov/company/vipagnt.html* or you can contact TDI for the list directly at 1-800-252-3439.

**9.   SAFETY NET.** You have the right to buy basic homeowners insurance through the Texas Fair Access to Insurance Requirements Plan, also known as the Texas FAIR Plan, if you have been denied coverage by two insurance companies. Your property must meet certain requirements, and eligibility for FAIR Plan coverage must be re-established every two years. You can access a list of insurance agents who are authorized to sell this coverage on the Texas FAIR Plan Association website at *www.texasfairplan.org* or by calling 1-800-979-6440 (505-2200 in Austin).

**10.   WINDSTORM COVERAGE.** For property located in areas designated by the Commissioner in certain counties on or near the coast, you may have the right to buy windstorm and hail coverage from the Texas Windstorm Insurance Association (TWIA), if you have been denied windstorm coverage by one insurance company in the standard market currently providing windstorm coverage. Your property must meet certain requirements, and eligibility for TWIA coverage must be re-established every 3 years. You may have to re-establish eligibility sooner than every 3 years if you have made any repairs or alterations to your home. Windstorm coverage through TWIA is limited to a maximum amount set each year by the Commissioner of Insurance. This right applies whether or not you buy other insurance for your house. In all other counties your homeowners or dwelling policy includes windstorm and hail coverage unless you request that this coverage be removed from your policy.

NOTE: If you live in a certain flood zone (Zone V, Zone VE and Zone V1-130) and your dwelling was constructed, altered, remodeled, or enlarged after September 1, 2009, you must purchase flood insurance through the National Flood Insurance Program (NFIP) in order to be eligible to purchase windstorm coverage through TWIA. However, if NFIP does not provide flood insurance in your area, you are not required to purchase it.

**11.   ELECTRONIC PAYMENTS.** If you authorize your insurer to withdraw your premium payments directly from your financial institution, including your escrow account, your insurer cannot increase the amount withdrawn unless:

- the insurer notifies you by U.S. mail of the increase in premium at least 30 days prior to its effective date; and

- you do not notify the insurer that you object to the increase in the amount to be withdrawn at least 5 days prior to the increase.

The notice provided by the insurer must include a toll-free number, a mailing address and an email address (if applicable), through which you can contact the insurer to object to the increase.

NOTE: This does not apply to premium increases specifically scheduled in the original policy, to increases based on policy changes you request, or to an increase that is less than $10 or 10% of the previous month's payment.

**12.   NOTICE OF REDUCED COVERAGE.** If an insurer uses an endorsement to reduce the amount of coverage provided by your policy, the insurer must give you a written

Important notices
Policy number: **829 582 292**
Policy effective date: April 11, 2017

Page **5** of 8



explanation of the change made by the endorsement. The insurer must provide the explanation not later than the 30th day before the effective date of the new or renewal policy. An insurance company cannot reduce coverage during the policy period unless you request the change. If you request the change, the company is not required to provide notice.

13. ***NOTICE OF PREMIUM INCREASE.*** If your insurer intends to increase your premium by 10% or more upon renewal, the insurer must send you notice of the rate increase at least 30 days before your renewal date.

14. ***EXPLANATION OF DENIAL.*** Upon request, you have the right to be told in writing why you have been denied coverage. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

NOTE: The obligation to provide a written explanation applies to insurance companies directly. An independent agent does not have a specific duty to quote the lowest possible rate to a consumer or to provide a written statement explaining why the agent did not offer the consumer the lowest possible rate.

15. ***CUSTOMER INQUIRY.*** An insurance company cannot use a customer inquiry as a basis for denying you coverage or determining your premium.

NOTE: A customer inquiry includes:

- general questions about your policy;
- questions concerning the company's claims filing process; and
- questions about whether the policy will cover a loss unless the question concerns specific damage that has occurred and that results in an investigation or claim.

16. ***RATE DIFFERENTIAL WITHIN A COUNTY.*** If an insurer subdivides a county for the purposes of charging different rates for each subdivision, the difference between the lowest and the highest rate cannot exceed 15% unless actuarially justified.

17. ***RIGHT TO PRIVACY.*** You have the right to prevent an insurance company, agent, adjuster or financial institution from disclosing your personal financial information to companies that are not affiliated with the insurance company or financial institution. Some examples are income, social security number, credit history and premium payment history.

If you apply for a policy, the insurance company or financial institution must notify you if it intends to share financial information about you and give you at least 30 days to refuse. This refusal is called "opting out." If you buy a policy, the insurance company or financial institution must tell you what information it collects about you and whether it intends to share any of the information, and give you at least 30 days to opt out. Agents and adjusters who intend to share your information with anyone other than the insurance company or financial institution must give you similar notices.

You can opt out at any time. Your decision to opt out remains in effect unless you revoke it.

These protections do not apply to information:

- publicly available elsewhere;
- insurance companies or financial institutions are required by law to disclose; or
- insurance companies or financial institutions must share in order to conduct ordinary business activities.

## What you should know about cancellation and nonrenewal

Cancellation means that **before the end** of the policy period the insurance company:

- terminates the policy;
- reduces or restricts coverage under the policy; or
- refuses to provide additional coverage to which you are entitled under the policy.

Refusal to renew and nonrenewal mean the policy terminates **at the end** of the policy period. The policy period is shown on the declarations page at the front of your policy.

18. ***LIMITATION ON CANCELLATION FOR HOMEOWNERS AND RENTERS POLICIES.*** After your initial homeowners or renters policy with your company has been in effect for 60 days or more, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;
- you file a fraudulent claim;
- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or
- TDI determines continuation of the policy would result in violation of insurance laws. If your policy has been in



Important notices
Policy number: 829 582 292
Policy effective date: April 11, 2017

effect for less than 60 days, your insurance company cannot cancel your policy unless:

- one of the reasons listed above applies;

- the insurance company identifies a condition that:

  - creates an increase in hazard;

  - was not disclosed on your application; and

  - is not the subject of a prior claim; or

  - the insurance company rejects a required inspection report within 10 days after receiving the report. The report must be completed by a licensed or authorized inspector and cannot be more than 90 days old.

19. *LIMITATION ON CANCELLATION FOR DWELLING POLICIES.* After your initial dwelling policy with your company has been in effect for 90 days, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;

- you file a fraudulent claim;

- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or

- TDI determines continuation of the policy would result in violation of insurance laws.

20. *NOTICE OF CANCELLATION.* To cancel your policy, your insurance company must mail notice at least 10 days prior to the effective date of the cancellation. Your policy may provide for even greater notice.

21. *POLICYHOLDER'S RIGHT TO CANCEL.* You have the right to cancel your policy at any time and receive a refund of the remaining premium.

22. *CHANGE IN MARITAL STATUS.* If your marital status changes, you have the right to continue your insurance coverage. You have a right to a new policy in your name that has coverages which most nearly approximate the coverages of your prior policy, including the same expiration date. The insurance company cannot date the new policy so that a gap in coverage occurs.

23. *USE OF CLAIMS HISTORY TO NONRENEW OR DETERMINE RENEWAL PREMIUM.* Your insurance company cannot use claims you filed as a basis to non-renew your policy unless:

- you file three or more claims in any 3-year period; and

- your insurer notified you in writing after the second claim that filing a third claim could result in nonrenewal of your policy.

Your insurance company cannot use the following types of claims to determine the number of claims you have filed or to determine the premium if your policy is renewed:

- claims for damage from natural causes, including weather-related damage;

- appliance-related water damage claims where the repairs have been inspected and certified; or

- claims filed but not paid or payable under the policy.

NOTE: An insurance company can count appliance-related claims if 3 or more such claims are filed and paid within a 3-year period.

24. *USE OF CREDIT INFORMATION TO NONRENEW.* An insurance company cannot refuse to renew your policy solely on the basis of credit information. Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to renew coverage. (For additional information see the section of this Bill of Rights entitled *What you should know about insurance companies' use of credit information.*)

25. *NOTICE OF CHANGE IN POLICY FORM.* Your insurer must notify you in writing of any difference between your current policy and each policy offered to you when the policy renews. In certain instances your insurance company must provide a comparison between the policy offered and the policies adopted by the Commissioner of Insurance.

26. *NOTICE OF NONRENEWAL.* If the insurance company does not mail you notice of nonrenewal at least 30 days before your policy expires, you have the right to require the insurance company to renew your policy.

27. *EXPLANATION OF CANCELLATION OR NONRENEWAL.* Upon request, you have the right to a written explanation of an insurance company's decision to cancel or nonrenew your policy. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

## What you should know when you file a claim

28. *FAIR TREATMENT.* You have the right to be treated fairly and honestly when you make a claim. If you believe an insurance company has treated you unfairly, call the TDI at

Uncertified copy Office of Maryland Insurance Commissioner

Important notices
Policy number: **829 582 292**
Policy effective date: April 11, 2017

Page **7** of 8


Allstate.
You're in good hands.

1-800-252-3439 or download a complaint form from the TDI website at *www.tdi.texas.gov*. You can complete a complaint form on-line via the Internet or fax a completed form to TDI at 512-490-1007.

**29. SETTLEMENT OFFER.** You have the right to reject any settlement amount, including any unfair valuation, offered by the insurance company. You have the right to have your home repaired by the repair person of your choice.

**30. EXPLANATION OF CLAIM DENIAL.** Your insurance company must tell you in writing why your claim or part of your claim was denied.

**31. TIMEFRAMES FOR CLAIM PROCESSING AND PAYMENT.** When you file a claim on your own policy, you have the right to have your claim processed and paid promptly. If the insurance company fails to meet required claims processing and payment deadlines, you have the right to collect 18% annual interest and attorney's fees in addition to your claim amount.

Generally, within **15 calendar days**, your insurance company must acknowledge receipt of your claim and request any additional information reasonably related to your claim. Within **15 business days** (30 days if the company reasonably suspects arson) after receipt of all requested information, the company must approve or deny your claim in writing. The law allows the insurance company to extend this deadline up to **45 days** if it notifies you that more time is needed and tells you why.

After notifying you that your claim is approved, your insurance company must pay the claim within **5 business days**.

If your claim results from a weather-related catastrophe or other major natural disaster as defined by TDI, these claims handling deadlines are extended for an additional 15 days.

**32. RELEASE OF CLAIM FUNDS.** Often an insurance company will make a claim check payable to you and your mortgage company or other lender and will send it to the lender. In that case, the lender must notify you within 10 days of receipt of the check and tell you what you must do to get the funds released to you.

Once you request the funds from the lender, within 10 days the lender must:

- release the money to you; or
- tell you in specific detail what you must do to get the money released.

If the lender does not provide the notices mentioned above or pay the money to you after all requirements have been met, the lender must pay you interest on the money at 10% per year from the time the payment or the notices were due.

**33. NOTICE OF LIABILITY CLAIM SETTLEMENT.** Your insurance company must notify you if it intends to pay a liability claim against your policy. The company must notify you in writing of an initial offer to compromise or settle a claim against you no later than the 10th day after the date the offer is made. The company must notify you in writing of any settlement of a claim against you no later than the 30th day after the date of the settlement.

**34. INFORMATION NOT REQUIRED FOR CLAIM PROCESSING.** You have the right to refuse to provide your insurance company with information that does not relate to your claim. In addition, you may refuse to provide your federal income tax records unless your insurer gets a court order or your claim involves lost income or a fire loss.

## What you should know about prohibited discrimination

**35. PROTECTED CLASSES.** An insurance company cannot discriminate against you by refusing to insure you; limiting the amount, extent or kind of coverage available to you; charging you a different rate for the same coverage; or refusing to renew your policy:

- because of race, color, religion, gender, marital status, disability or partial disability, or national origin; or
- unless justified by actual or anticipated loss experience, because of age or geographic location.

**36. AGE OF HOUSE.** An insurance company cannot refuse to insure your property based on the age of your house. However, an insurance company may refuse to sell you insurance coverage based on the condition of your property, including the condition of your plumbing, heating, air conditioning, wiring and roof.

**37. VALUE OF PROPERTY.** An insurance company cannot refuse to insure your property because the value is too low or because the company has established minimum coverage amounts.

**38. UNDERWRITING GUIDELINES.** Underwriting guidelines may not be unfairly discriminatory and must be based on sound actuarial principles.

**39. EQUAL TREATMENT.** Unless based on sound actuarial principles, an insurance company may not treat you



Important notices
Policy number: 829 582 292
Policy effective date: April 11, 2017

differently from other individuals of the same class and essentially the same hazard. If you sustain economic damages as a result of such unfair discrimination, you have the right to sue that insurance company in Travis County District Court.

If your suit prevails, you may recover economic damages, court costs and attorney and necessary expert witness fees. If the court finds the insurance company knowingly violated your rights, it may award up to an additional $25,000 per claimant.

You must bring the suit on or before the second anniversary of the date you were denied insurance or the unfair act occurred or the date you reasonably should have discovered the occurrence of the unfair act. If the court determines your suit was groundless and you brought the lawsuit in bad faith, or brought it for the purposes of harassment, you will be required to pay the insurance company's court costs and attorney fees.

## What you should know about insurance companies' use of credit information

**40. REQUIRED DISCLOSURE.** If an insurance company uses credit information to make underwriting or rating decisions, the company must provide you a disclosure statement within 10 days after receiving your completed application for insurance.

The disclosure indicates whether the insurer will obtain and use your credit information and lists your specific legal rights, including:

- credit information insurance companies cannot use against you;

- how you can get reasonable exceptions that your insurer is required to make to its use of credit information if certain life events, such as divorce, death of a close family member, or identity theft, hurt your credit;

- the notice* an insurer must send you when making a credit-based decision that harms your ability to get or keep insurance or requires you to pay a higher premium; and

- how you can dispute credit information and require an insurer to re-rate your policy if the rate was increased because of inaccurate or unverifiable credit information.

* The notice must include a description of up to four primary factors that influenced the action taken by the insurer.

Insurers must use the disclosure form (CD-1) adopted by the Commissioner or an equivalent disclosure form filed prior to use with TDI. The CD-1 is available at *www.tdi.texas.gov/forms/pcpersonal/pc328crdtds.pdf* or by calling 1-800-252-3439. Additional information regarding insurers' use of credit information is available at *www.tdi.texas.gov/credit/credit.html*.

## What you should know about enforcing your rights

**41. FILING COMPLAINTS.** You have the right to complain to TDI about any insurance company and/or insurance matter and to receive a prompt investigation and response to your complaint. To do so, you should:

- call TDI's *Consumer Help Line* at 1-800-252-3439, for service in both English and Spanish;

- write to the Texas Department of Insurance, Consumer Protection, Mail Code 111-1A, P.O. Box 149091, Austin, Texas 78714-9091;

- e-mail TDI at *ConsumerProtection@tdi.texas.gov*;

- fax your complaint to 512-490-1007;

- download or complete a complaint form on line from the TDI website at *www.tdi.texas.gov*; or

- call the TDI Publications/Complaint Form order line at 1-800-599-SHOP (7467), (512-252-3439 in Austin). The order line is available 24 hours a day, 7 days a week.

NOTE: TDI offers interpreter services and publications in alternate formats. Persons needing more information in alternate layouts or languages can call the TDI *Consumer Help Line* listed above.

**42. RIGHT TO SUE.** If an insurance company violates your rights, you may be able to sue that company in court, including small claims court, with or without an attorney.

**43. BURDEN OF PROOF.** If you sue to recover under your insurance policy, the insurance company has the burden of proof as to any application of an exclusion in the policy and any exception to or other avoidance of coverage claimed by the insurer.

**44. REQUESTING NEW RULES.** You have the right to ask in writing that TDI make or change rules on any residential property insurance issue that concerns you. Send your written request to: Texas Department of Insurance, Attn: Commissioner (113-2A), P.O. Box 149104, Austin, TX 78714-9104.

**X4927-4**

Unofficial Copy Office of Marilyn Burgess, District Clerk

# Privacy Statement

Policy number: **829 582 292**
Policy effective date: April 11, 2017

Page **1** of 2



Thank you for choosing Allstate. We value you, respect your privacy and work hard to protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

## Our Privacy Assurance

- We do <u>not</u> sell your personal or medical information to anyone.
- We do <u>not</u> share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We <u>require</u> persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We <u>require</u> our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claim. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

## What Personal Information Do We Have and Where Do We Get It

We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, Social Security Number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources including, but not limited to, insurance support organizations that assemble or collect information about individuals for the purpose of providing to insurance companies. This information may include, but is not limited to,

your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit allstate.com, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use allstate.com.

## How We Use and Share Your Personal Information

In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:

- Fulfill a transaction you requested or service your policy
- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:

- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

## The Internet and Your Information Security



Privacy Statement                                                                                    Page **2** of 2
Policy number:        | 829 582 292 |
Policy effective date:   April 11, 2017

We use cookies, analytics and other technologies to help us provide users with better service and a more customized web experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the website. This includes, for example, information regarding:

1) How we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) Who should use our website;
3) The security of information over the Internet; and
4) Links and co-branded sites.

### How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:
Allstate Insurance Company Customer Privacy Inquiries
PO Box 660598
Dallas, TX 75266-0598

### Your Preference for Sharing Personal Information

We would like to share your personal information with one or more Allstate affiliates in order to make you aware of different products, services and offers they can provide. However, you can request that Allstate and its affiliate companies not share your personal information with our affiliates for marketing products and services.

To request that we not allow other Allstate affiliates to use your personal information to market their products and services, you can contact us by calling 1-800-856-2518 twenty-four hours a day, seven days a week. Please keep in mind that it may take up to four weeks to process your request.

If you previously contacted us and asked us not to allow other Allstate affiliates to use your personal information, your previous choice still applies and you do not need to contact us again. If you would like to change your previous choice please call the number above at any time.

### We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-ALLSTATE.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

Allstate entities on whose behalf this notice is provided and amongst which information may be shared:

The Allstate family of companies, LSA Securities, Deerbrook General Agency, Inc., Deerbrook Insurance Company, North Light Specialty Insurance Company, Northbrook Indemnity Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

(ed. 10/2015)

**X73180v6**

Unofficial Copy of Marsha Gaye Erinna's Work

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

### Tropical Cyclone Deductible Endorsement —APC548

It is agreed that **your** policy is amended as follows:

I.   Under **Definitions Used In This Policy**, the following definitions are added:

**Hurricane**—means a weather system declared by the **National Weather Service** to be a hurricane.

**National Weather Service**—means the National Weather Service or, if the National Weather Service ceases to exist, ceases to perform the function of declaring weather systems to be hurricanes or tropical storms, or ceases to perform the function of issuing hurricane watches or hurricane warnings, such other entity as determined by **us**.

**Tropical Cyclone**—means a **hurricane**, a **tropical storm**, or any wind, hail, rain, snow, or sleet accompanying a **hurricane** or a **tropical storm**.

**Tropical Storm**—means a weather system declared by the **National Weather Service** to be a tropical storm, provided such weather system:
a.   was a **hurricane** or, at any time in the 24 hours immediately following **your** covered loss, becomes a **hurricane**; and
b.   was the subject of a hurricane watch or hurricane warning issued by the **National Weather Service** for:
   i. any part of the state in which **your residence premises** is located; or
   ii. any state(s) which borders the state in which **your residence premises** is located.

II.   Under **Section I Conditions**, Condition 1. **Deductible**, the following is added:

Tropical Cyclone Deductible
The tropical cyclone deductible applies in the event of covered loss caused by **tropical cyclone** or by any object(s) driven by **tropical cyclone**.

The tropical cyclone deductible amount will appear on **your** Policy Declarations. **We** will pay only when a covered loss to which this deductible applies exceeds the tropical cyclone deductible amount. **We** will then pay only the excess amount.

If another deductible applicable to the loss exceeds the tropical cyclone deductible, the greater deductible will be applied to the loss.

All other provisions of the policy apply.



# Policy Endorsement



*T    following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Windstorm And Hail Deductible Endorsement – AVP82

Under **Section I Conditions**, Condition 1, **"Deductible,"** the
following is added:

**Windstorm** And Hail Deductible
The **windstorm** and hail deductible applies in the event of
covered loss caused by **windstorm** or hail.

The **windstorm** and hail deductible amount will appear on
**your** Policy Declarations. **We** will pay only when a covered
loss to which this deductible applies exceeds the
**windstorm** and hail deductible amount. **We** will then pay
only the excess amount.

If another deductible applicable to the loss exceeds the
**windstorm** and hail deductible, the greater deductible will
be applied to the loss.

All other policy terms and conditions apply.

Unofficial Copy Office of Marilyn Burgess District Clerk



**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**

# House & Home Policy

**TEXAS**                                                                 AVP91

Policy number                                      Policy Effective

Policy Holders

Unofficial Copy Office of Marilyn Burgess District Clerk

**Allstate Vehicle and Property Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062



House & Home Policy
Policy number

# Table of Contents

Agreements We Make With You ........................................4

**General** ....................................................................4
Definitions Used In This Policy ........................................4
Insuring Agreement .......................................................5
Conformity To State Statutes ..........................................5
Coverage Changes .........................................................5
Policy Transfer ..............................................................6
Continued Coverage After Your Death ..............................6
Dividend Provision .........................................................6
Cancellation .................................................................6
Refusal To Renew ..........................................................6
Charge For Insufficient Funds .........................................7
Misrepresentation, Fraud Or Concealment .......................7
What Law Will Apply .......................................................7
Where Lawsuits May Be Brought ......................................7
Action Against Us ..........................................................7
Arbitration ...................................................................8
Residential Community Property Clause ...........................8
Loss Reduction And Other Items ......................................8

**Section I—Your Property** .........................................8

**Dwelling Protection–Coverage A** ..............................8
Property We Cover Under Coverage A ...............................8
Property We Do Not Cover Under Coverage A .....................8

**Other Structures Protection–Coverage B** .................8
Property We Cover Under Coverage B ...............................8
Property We Do Not Cover Under Coverage B .....................8

**Personal Property Protection–Coverage C** ................9
Property We Cover Under Coverage C ...............................9
Limitations On Certain Personal Property .........................9
Property We Do Not Cover Under Coverage C .....................9

Losses We Cover Under Coverages A, B and C ..................10
Losses We Do Not Cover Under Coverages A, B and C.........11

**Section I Additional Protection** ..............................14
Additional Living Expense...............................................14
Civil, Governmental And Military Authorities......................14
Debris Removal .............................................................14
Emergency Removal Of Property .....................................14
Fire Department Charges ................................................14
Temporary Repairs After A Loss.......................................15
Trees, Shrubs, Plants And Lawns ....................................15
Power Interruption ........................................................15
Arson Reward ...............................................................15
Collapse ......................................................................15

Lock Replacement .........................................................16
Foundation Water Damage ..............................................16

**Section I Conditions** ...............................................16
Deductible ...................................................................16
Insurable Interest And Our Liability .................................16
What You Must Do After A Loss ........................................16
Our Duties After Loss ....................................................17
Our Settlement Options ..................................................17
How We Pay For A Loss ...................................................17
Our Settlement Of Loss ..................................................19
Appraisal .....................................................................19
Abandoned Property ......................................................19
Permission Granted To You .............................................19
Our Rights To Recover Payment .......................................19
Our Rights To Obtain Salvage .........................................19
Action Against Us ..........................................................20
Loss To A Pair Or Set .....................................................20
Glass Replacement ........................................................20
No Benefit To Bailee ......................................................20
Other Insurance ...........................................................20
Property Insurance Adjustment .......................................20
Mortgagee ...................................................................20
Catastrophe Claims .......................................................21
Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes
    Remediation As A Direct Result Of A Covered
    Water Loss ..............................................................21

**Section II—Family Liability And Guest
        Medical Protection** .......................................21

**Family Liability Protection–Coverage X** ..................21
Losses We Cover Under Coverage X ..................................21
Losses We Do Not Cover Under Coverage X .......................21

**Guest Medical Protection–Coverage Y** .....................23
Losses We Cover Under Coverage Y ..................................23
Losses We Do Not Cover Under Coverage Y .......................23

**Section II Additional Protection** .............................25
Claim Expenses ............................................................25
Emergency First Aid ......................................................25
Damage To Property Of Others ........................................25

**Section II Conditions** ..............................................25
What You Must Do After A Loss ........................................25
What An Injured Person Must Do—Guest Medical
    Protection–Coverage Y .............................................26
Our Payment Of Loss—Guest Medical Protection–
    Coverage Y ..............................................................26

House & Home Policy
Policy number:



Our Limits Of Liability ......................................................26
Bankruptcy.......................................................................26
Our Rights To Recover Payment—Family Liability
    Protection–Coverage X ...........................................26
Action Against Us ...........................................................26
Other Insurance—Family Liability Protection–
    Coverage X...............................................................26
Notice Of Settlement Of Liability Claim ....................26

**Section III—Optional Protection** ...........................27

**Optional Coverages**...................................................27
Building Codes–Coverage BC........................................27
Increased Coverage On Business Property–Coverage BP .....27
Fire Department Charges–Coverage F..........................27
Loss Assessments–Coverage G ....................................27
Extended Coverage On Jewelry, Watches And Furs–
    Coverage J................................................................27
Increased Coverage On Theft Of Silverware–
    Coverage ST.............................................................28

Unofficial Copy Office of Marilyn Burgess District Clerk



House & Home Policy                                                Page **4** of 28
Policy number:

## Agreements We Make With You

**We** make the following agreements with **you**:

# General

## Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include diseases transmitted through sexual contact including:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**;

   unless such symptom, effect, condition, disease or illness results from:
   a) heat, smoke or fumes from a fire which becomes uncontrollable or escapes from its intended location; or
   b) the **sudden and accidental** discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises**.

2. **Building structure**—means a structure with walls and a roof.

3. **Business**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured**

**person** or relative of an **insured person** for economic gain is also a **business**.

   However, the mutual exchange of home day care services is not considered a **business**;
   b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time; or
      3) a portion is rented as a private garage.

4. **Business day**—means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

5. **Dwelling**—means the single-family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

6. **Insured person(s)**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any person under the age of 21 in **your** care.

   Under **Family Liability Protection–Coverage X** and **Guest Medical Protection–Coverage Y**, **"insured person"** also means:
   a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

7. **Insured premises**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;

House & Home Policy
Policy number:



2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
3) cemetery plots or burial vaults owned by an **insured person**;
4) land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;
5) any premises used by an **insured person** in connection with the **residence premises**; and
6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

8. **Occurrence**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

9. **Property damage**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

10. **Residence employee**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

11. **Residence premises**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

12. **Roof surface**—means the roof surface material type (slate, composition, wood, tile, metal, all other roof surface material types) of a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B** and all other roofing components, including, but not limited to:
    a) flashing, caps, vents, drip edges, and ice shields;
    b) sheeting, felt and membranes;
    c) modified bitumen, bitumen, rubber, built-up and sprayed polyurethane foam roofing;
    d) foam inserts and elastomeric coating;
    e) finials, eave and gable trim and snow guards;
    f) battens, counter battens, bird stops, gravel stops; and

g) coatings, adhesives, adherents and other finishing materials for roof surface materials and all other roofing components.

13. **Sudden and accidental**—means damage which occurs abruptly and is unexpected and/or unintended from the standpoint of **you**.

14. **We**, **us**, or **our**—means the company named on the Policy Declarations.

15. **Windstorm**—means wind with or without precipitation.

16. **You** or **your**—means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.



The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy period will be used to calculate any change in **your** premium.

## Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the current policy period for:

1.  **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2.  an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Dividend Provision

To the extent and upon the conditions fixed and determined from time to time by **our** Board of Directors in accordance with the provisions of the Texas Insurance Code of 1951, as amended, **you** shall be entitled to participate in a distribution of **our** surplus.

## Cancellation

1.  **You** may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send **you** any refund due when the policy is returned to **us**.

2.  If this policy has been in effect for less than 60 days and is not a renewal **we** may cancel this policy if:
    a) **we** identify a condition that:
       1) creates an increased risk of hazard;
       2) was not disclosed in the application for insurance coverage; and
       3) is not the subject of a prior claim; or
    b) before the effective date of the policy, **we** have not accepted a copy of a required inspection report that:

       1) was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
       2) is dated not earlier than the 90th day before the effective date of the policy.

    An inspection report is deemed accepted, unless **we** reject it before the 11th day after the date the inspection report is received by **us**.

3.  **We** may cancel this policy at any time for the following reasons:
    a) **you** do not pay the premium or any portion of the premium when due.
    b) the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
    c) **you** submit a fraudulent claim.
    d) there is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium rate of this policy.

4.  The effective date of cancellation cannot be before the 10th day after **we** mail the notice if **we** cancel for any of the reasons in item 3 above or the 30th day after **we** mail the notice if **we** cancel for any other reason. **Our** notice of cancellation must state the reason for cancellation.

5.  If **we** cancel, **our** notice to **you** will state that if the refund is not included with the notice, it will be provided on demand.

6.  **We** may not cancel this policy solely because **you** are an elected official

## Refusal To Renew

1.  **We** may not refuse to renew this policy because of claims for losses resulting from natural causes.

2.  **We** may not refuse to renew this policy solely because **you** are an elected officer.

3.  **We** may refuse to renew this policy if **you** have filed three or more claims under the policy in any three year period that do not result from natural causes.

    If **you** have filed two claims in a period of less than three years, **we** may notify **you** in writing, that if **you** file a third

House & Home Policy
Policy number:



claim during the three year period, **we** may refuse to renew this policy by providing **you** proper notice of **our** refusal to renew as provided in 4 below. If **we** do not notify **you** after the second claim, **we** may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under this policy.

4.    If **we** refuse to renew this policy, **we** must deliver to **you**, or mail to **your** mailing address shown on the Policy Declarations and any mortgagee named on the Policy Declarations, written notice of **our** refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If **we** fail to give **you** proper notice of **our** decision not to renew, **you** may require **us** to renew the policy.

## Charge For Insufficient Funds
If at any time, **your** payment of any premium amount due is made by check, electronic transaction or other remittance which is not honored because of insufficient funds or closed account, **you** will be charged a fee.

## Misrepresentation, Fraud Or Concealment
**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## What Law Will Apply
This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or other covered **occurrence**, may be governed by the laws of the jurisdiction in which that covered loss to property or other

covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or other covered **occurrence**, may also be brought in the judicial district where that covered loss to property or other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

## Action Against Us
No one may bring an action against **us** unless there has been full compliance with all policy terms.

Any action against **us** to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within two years and one day of the date the cause of action first accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

## Arbitration
After a loss or occurrence, any coverage claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by



arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:

1. no arbitrator shall have the authority to award punitive damages or attorney's fees;

2. neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

3. no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

## Residential Community Property Clause

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

## Loss Reduction And Other Items

From time to time and in **our** sole discretion, **we** may provide **you**, or allow others to provide **you**, with:

1. items, memberships, special offers, merchandise, points, services, classes, seminars or other things of value designed to help **you** or other persons insured under this policy manage the risks **you** or they face, including, but not limited to, loss reduction or safety-related items; or

2. items, memberships, special offers, merchandise, points, services, classes, seminars or things of any other type that **we** think may be of value to **you** or someone else insured under this policy.

   These items, memberships, special offers, merchandise, points, services, classes, seminars or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

# Section I—Your Property

## Dwelling Protection–Coverage A

### Property We Cover Under Coverage A:

1. **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1. Any structure, including fences, or other property covered under **Other Structures Protection–Coverage B**.

2. Land.

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## Other Structures Protection–Coverage B

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures at the address shown on the Policy Declarations connected to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to **building structures**, other than **your dwelling**, at the address shown on the Policy Declarations.

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Dwelling Protection–Coverage A**.

House & Home Policy
Policy number:



3.  Land.

4.  Construction materials and supplies at the **residence premises** for use in connection with the **dwelling**.

5.  Satellite dish antennas and their systems, whether or not attached to **building structures**.

## Personal Property Protection–Coverage C

### Property We Cover Under Coverage C:

1.  Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

2.  At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection–Coverage C**. The total amount of coverage for each group in any one loss is as follows:

1.  $   200  —  Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

2.  $   500  —  Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing equipment or in a **business**. Recording or storage media includes, but is not limited to:
    a)  tapes;
    b)  CDs, DVDs and other discs;
    c)  records;
    d)  disks;
    e)  reels;
    f)  cassettes;
    g)  cartridges; or
    h)  programs.

3.  $ 1,000  —  Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4.  $ 1,000  —  Trading cards, subject to a maximum amount of $250 per card.

5.  $ 1,000  —  Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

6.  $ 1,000  —  Trailers not used with watercraft.

7.  $ 1,500  —  Motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

8.  $ 2,000  —  Theft of firearms, their related equipment, and accessories.

9.  $ 2,500  —  Theft of goldware, silverware, pewterware and platinumware.

10. $ 5,000  —  Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware, and furs, including any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item.

11. $10,000  —  Theft of tools and their accessories.

12. $10,000  —  Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

### Property We Do Not Cover Under Coverage C:

1.  Personal property specifically described and insured by this or any other insurance.

2.  Animals.



3.   Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled, or used solely for the service of the **insured premises**, and not licensed for use on public roads.

4.   Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5.   Property of roomers, boarders or tenants not related to **you**.

6.   Property located away from the **residence premises** and rented or held for rental to others.

7.   Satellite dish antennas and their systems.

8.   Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards, and smart cards.

9.   Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

10.  Manuscripts, including documents stored on electronic media.

## Losses We Cover Under Coverages A, B and C:

**We** will cover **sudden and accidental** direct physical loss to the property described in **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B or Personal Property Protection–Coverage C** caused by the following, except as limited or excluded in this policy:

1.   Fire or lightning.

2.   **Windstorm** or hail.

     **We** do not cover:
     a)   loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
     b)   loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3.   Explosion.

4.   Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5.   Aircraft, including self-propelled missiles and spacecraft.

6.   Vehicles.

7.   Smoke.

8.   Vandalism and malicious mischief.

     **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9.   Falling objects.

     **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10.  Weight of ice, snow or sleet which causes damage to:
     a)   a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**; or
     b)   property covered under **Personal Property Protection–Coverage C** in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11.  Artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12.  Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

13.  Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system, or from a household appliance due to accidental discharge or overflow. However, **we** do not cover loss, including ensuing loss or the cost of tearing out and replacing any part of **your dwelling**, caused by the discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system

House & Home Policy
Policy number:



where the source of the discharge or overflow is either below the surface of the ground or within or below the slab or foundation of the **dwelling** except as specifically provided in **Section I**, **Additional Protection**, under item 12, **Foundation Water Damage**.

**We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system or a household appliance.

**We** do not cover loss at the **residence premises** under items 12, 13, and 14, immediately above, which is caused by freezing while the **building structure** is vacant, unoccupied or under construction, or when freezing results from a lack of utility services at the **residence premises** to which item A.10 in **Losses We Do Not Cover Under Coverages A, B and C** applies, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

**We** do not cover:
a) theft or attempted theft committed by an **insured person**;
b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**; or

e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

**Losses We Do Not Cover Under Coverages A, B and C:**

A. Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

**We** do cover **sudden and accidental** direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole,



erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

**We** do cover **sudden and accidental** direct physical loss caused by fire or explosion resulting from earth movement.

6. Actions taken by civil, governmental or military authorities:
   a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or
   b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

   However, **we** will cover **sudden and accidental** direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7. Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8. a) War, whether declared or undeclared;
   b) warlike acts;
   c) invasion;
   d) insurrection;
   e) rebellion;
   f) revolution;
   g) civil war;
   h) usurped power;
   i) destruction for a military purpose; or
   j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

9. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic

solids, waste materials, or other irritants, contaminants or pollutants.

However, **we** will not apply this exclusion to **sudden and accidental** direct physical loss which consists of, is caused by, or would not have occurred but for:
a) a fire or an explosion at **your residence premises**;
b) smoke or soot resulting from food preparation at **your residence premises**;
c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;
d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:
   1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and
   2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;
e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;
f) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or
g) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

10. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access

House & Home Policy
Policy number:



to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a **sudden and accidental** direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

When the lack of utility services results in freezing of:
a) plumbing, automatic fire protective sprinkler system, heating or air conditioning systems; or
b) household appliances;

or when the lack of utility services results in discharge, leakage or overflow from within a) or b) above caused by freezing, **we** do cover **sudden and accidental** direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

11. Inability of an **insured person** to use, access or retain personal property **we** cover under **Personal Property Protection–Coverage C** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises** or any other location where the property is located, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:
a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or
b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

12. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses**

**We Do Not Cover Under Coverages A, B and C** to produce a loss.

B. Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or other microbes. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or other microbes arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverages A, B and C**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
1. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
a) may be reasonably expected to result from such acts; or
b) is the intended result of such acts.

This exclusion will not apply to an innocent spouse or **insured person** who did not contribute to such



loss or to the interest of an innocent spouse or **insured person** in the damaged property.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

3. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or
   d) maintenance;

   of property whether on or off the **residence premises** by any person or organization.

## Section I Additional Protection

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

   Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
   a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c) 12 months.

   These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Civil, Governmental And Military Authorities**
   **We** will pay the reasonable and necessary increase in living expenses up to $150 per day, for up to two weeks should civil, governmental or military authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by an event, peril or condition **we** insure against under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

   The two-week period of time referenced above is not limited by the termination of this policy.

   No deductible applies to this protection.

3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for **sudden and accidental** direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**.

House & Home Policy
Policy number:



No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   **We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
   **We** will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Dwelling Protection–Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to **sudden and accidental** direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft, or collapse of a **building structure** or any part of a **building structure**.

   **We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for **sudden and accidental** direct physical loss caused by **windstorm**, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

   **We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

   This coverage does not increase the **Dwelling Protection–Coverage A** limit of liability.

8. **Power Interruption**
   **We** will pay up to $500 for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

   This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
   **We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

10. **Collapse**
    **We** will cover at the **residence premises**:
    a)  the entire collapse of a covered **building structure**;
    b)  the entire collapse of part of a covered **building structure**; and
    c)  direct physical loss to covered property caused by a) or b) above.

    For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a **sudden and accidental** direct physical loss caused by one or more of the following:
    a)  a loss **we** cover under **Section I, Losses We Cover Under Coverages A, B and C**;
    b)  weight of persons, animals, equipment or contents;
    c)  weight of rain, snow or ice which collects on a roof;
    d)  defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

    Collapse, as referenced herein, means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

    Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a **sudden and accidental** direct physical loss caused by one or more of the following:
    a)  a loss **we** cover under **Section I, Losses We Cover Under Coverages A, B and C**;
    b)  weight of persons, animals, equipment or contents;
    c)  weight of rain, snow or ice which collects on a roof; or



d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

11. **Lock Replacement**
When a key to a lock is stolen as part of a covered theft loss, **we** will pay, under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, as applicable, up to $500 for the reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality.

This coverage does not increase the limit of liability that applies to the covered property.

12. **Foundation Water Damage**
In the event of the **sudden and accidental** discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is located within or below the slab or foundation of the **dwelling** **we** will pay up to the amount shown on the Policy Declarations for:
a) tearing out and replacing any part of the **dwelling** necessary to access, repair or replace that part of such system, and
b) loss to property covered under **Dwelling Protection– Coverage A** and **Personal Property Protection– Coverage C** that results from the **sudden and accidental** escape of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system located within the slab or foundation of the **dwelling**.

This coverage does not include damage to the system from which the water or steam escaped.

# Section I Conditions

1. **Deductible**
**We** will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest And Our Liability**
In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

**Section 862.053 Policy A Liquidated Demand.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

3. **What You Must Do After A Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:
a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.
b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
f) as often as **we** reasonably require:
   1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.
   2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
   3) produce representatives, employees, members of the **insured person's** household or others to

House & Home Policy
Policy number:



the extent it is within the **insured person's** power to do so; and

g) within 91 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;
2) the interest **insured persons** and others have in the property, including any encumbrances;
3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
4) any other insurance that may cover the loss;
5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period; and
6) at **our** request, the specifications of any damaged **building structure** or other structure.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

4. **Our Duties After Loss**

a) Within 15 days after **we** receive **your** written notice of claim, **we** must:

1) acknowledge receipt of the claim. If **our** acknowledgement of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgment;
2) begin any investigation of the claim; and
3) specify the information **you** must provide in accordance with **Section I**, **Conditions** item 3 "What You Must Do After A Loss."

We may request more information, if during the investigation of the claim such additional information is necessary.

b) After **we** receive the information **we** request, **we** must notify **you** in writing whether the claim will be paid or has been denied or whether more information is needed:

1) within 15 **business days**; or
2) within 30 days if **we** have reason to believe the loss resulted from arson.

c) If **we** do not approve payment of **your** claim or require more time for processing **your** claim, **we** must:

1) give the reasons for denying **your** claim; or

2) give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within 45 days after requesting more time.

5. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5, "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

6. **How We Pay For A Loss**

Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or
2) the whole amount of loss for property covered under **Personal Property Protection–Coverage C**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the



damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.

c)  Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.

This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I— Your Property**, under **Losses We Do Not Cover Under Coverages A, B, And C**, paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)  the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2)  the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3)  the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B**, regardless of the number of **building structures**

and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1)  property covered under **Personal Property Protection–Coverage C**;
2)  property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3)  wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**;
4)  **roof surface(s)** when the loss is caused by **windstorm** or hail; or
5)  land.

Payment under a), b) or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or other structures.

d)  Personal Property Reimbursement. Under **Personal Property Protection–Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 365 days of the loss.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

House & Home Policy
Policy number:



1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the Limit Of Liability shown on the Policy Declarations for **Personal Property Protection– Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Dwelling Protection– Coverage A** and **Other Structures Protection– Coverage B**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

7. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 5 **business days** after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within 5 **business days** after **we** notify **you**. If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within 5 **business days** after the date **you** perform the act.

8. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

9. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

10. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy. A **building structure** under construction is not considered vacant.
b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

11. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

12. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon



replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and
b) the action is commenced within two years and one day from the date the cause of action first accrues.

14. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit To Bailee**
This insurance will not benefit any person or organization that may be caring for or handling **your** property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**
At each policy renewal, **we** may increase the Limit Of Liability shown on the Policy Declarations for **Dwelling Protection–Coverage A** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy period under **Dwelling Protection–Coverage A** for **your** dwelling and other property **we** cover under **Dwelling Protection–Coverage A**.

Any adjustment in the limit of liability for **Dwelling Protection–Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the Limit Of Liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the Limits Of Liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the Limits Of Liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

19. **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 91 days after notice of the loss if an **insured person** fails to do so;

House & Home Policy
Policy number:



b)  pay upon demand any premium due if an **insured person** fails to do so;
c)  notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d)  give **us** the mortgagee's right of recovery against any party liable for loss; and
e)  after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

If property covered under **Dwelling Protection-Coverage A** is foreclosed upon under a deed of trust, the mortgagee of that property may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send the refund, if any, to the mortgagee.

The mortgagee must credit the refund against any deficiency owed by **you** and return any amount not so credited to **you**.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

20. **Catastrophe Claims**
If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **What You Must Do After A Loss, Our Duties After Loss** and **Our Settlement Of Loss** conditions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:
a)  is declared a disaster under the Texas Disaster Act of 1975; or
b)  is determined to be a catastrophe by the Texas Department of Insurance.

21. **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**
In the event of a covered water loss under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C, we** will pay up to $5,000 for mold, fungus, wet rot or dry rot or other microbes **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection-**

**Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C**.

# Section II—Family Liability And Guest Medical Protection

## Family Liability Protection-Coverage X

### Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Losses We Do Not Cover Under Coverage X:
1. **We** do not cover **bodily injury** or **property damage** which is caused intentionally by or at the direction of an **insured person**.

   **We** will not apply this exclusion to an innocent spouse or **insured person** who did not cooperate in, or contribute to, such **bodily injury** or **property damage**.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or



voluntarily provided, by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

    **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
    a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;
    b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
    c)  a motorized wheelchair;
    d)  a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
    e)  a golf cart owned by an **insured person** when used for golfing purposes;
    f)  a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
    g)  lawn or garden implements under 40 horsepower; or
    h)  **bodily injury** to a **residence employee**.

6.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a)  has inboard or inboard-outboard motor power of more than 50 horsepower;
    b)  is a sailing vessel 26 feet or more in length;
    c)  is powered by one or more outboard motors with more than 25 total horsepower;
    d)  is designated as an airboat, air cushion, or similar type of watercraft; or
    e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7.  **We** do not cover **bodily injury** or **property damage** arising out of:
    a)  the negligent supervision by any **insured person** of any person; or
    b)  any liability statutorily imposed on any **insured person**;

    arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.  **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

    **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is **sudden and accidental**.

9.  **We** do not cover any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

10. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    **We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or part-

Unofficial Copy Office of Marilyn Burgess District Clerk

House & Home Policy
Policy number:



time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. **We** will not apply this exclusion if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by:
    a) war, whether declared or undeclared;
    b) warlike acts;
    c) invasion;
    d) insurrection;
    e) rebellion;
    f) revolution;
    g) civil war;
    h) usurped power;
    i) destruction for a military purpose; or
    j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

17. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

18. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

19. **We** do not cover any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

20. **We** do not cover **bodily injury** or **property damage** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** or **property damage** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

21. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

# Guest Medical Protection–Coverage Y

## Losses We Cover Under Coverage Y:

**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

## Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover **bodily injury** which is caused intentionally by or at the direction of an **insured person**.

   **We** will not apply this exclusion to an innocent spouse or **insured person** who did not cooperate in, or contribute to, such **bodily injury**.

unofficial copy of Marilyn Burgess, District Clerk



House & Home Policy

Policy number: [                    ]

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. **We** will not apply this exclusion to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheelchair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower; or
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be

operated by a person or persons sitting, standing or kneeling on the craft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is **sudden and accidental**.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

    **We** will not apply this exclusion to **bodily injury** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

13. **We** do not cover **bodily injury** caused by:

House & Home Policy
Policy number:



a) war, whether declared or undeclared;
b) warlike acts;
c) invasion;
d) insurrection;
e) rebellion;
f) revolution;
g) civil war;
h) usurped power;
i) destruction for a military purpose; or
j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

14. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

15. **We** do not cover **bodily injury** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke

16. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Section II Additional Protection
**We** will pay, in addition to the limits of liability:
1. **Claim Expenses**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   **We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present **business** activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

## Section II Conditions
1. **What You Must Do After A Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.



d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 91 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do—Guest Medical Protection–Coverage Y**
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
b) Give **us** written authorization to obtain copies of all medical records and reports.
c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss—Guest Medical Protection– Coverage Y**
**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection–Coverage X** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

**Our** total liability under **Guest Medical Protection– Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

5. **Bankruptcy**
**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment—Family Liability Protection–Coverage X**
When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**
a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Family Liability Protection–Coverage X**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within two years and one day from the date the cause of action first accrues.
c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Guest Medical Protection–Coverage Y**, unless such action is commenced within two years and one day from the date the cause of action first accrues.
d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II Additional Protection**, unless such action is commenced within two years and one day from the date the cause of action first accrues .
e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

8. **Other Insurance—Family Liability Protection– Coverage X**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

9. **Notice Of Settlement Of Liability Claim**
a) **We** will notify the **insured person** in writing of any initial offer to compromise or settle a claim against the **insured person** under the liability section of this

House & Home Policy
Policy number:



policy. We will give the **insured person** notice within 10 days after the date the offer is made.
b) **We** will notify the **insured person** in writing of any settlement of a claim against the **insured person** under the liability section of this policy. **We** will give the **insured person** notice within 30 days after the date of the settlement.

# Section III—Optional Protection

## Optional Coverages

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Building Codes–Coverage BC**
   **We** will pay up to the Limit Of Liability shown on the Policy Declarations for Building Codes coverage to comply with local building codes after covered loss to the **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of the **dwelling**.

2. **Increased Coverage On Business Property–Coverage BP**
   The limitation on **business** property located on the **residence premises**, under **Personal Property Protection–Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

3. **Fire Department Charges–Coverage F**
   The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Loss Assessments–Coverage G**
   If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a

private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:
a) **sudden and accidental** direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $500 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Extended Coverage On Jewelry, Watches And Furs–Coverage J**
   **Personal Property Protection–Coverage C** is extended to pay for **sudden and accidental** direct physical loss to the following property, subject to the provisions in this coverage:
   a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
   b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection–Coverage C**. However, in no event



will coverage be less than would have applied in the absence of **Coverage J**.

The following exclusions contained in **Losses We Do Not Cover Under Coverages A, B and C** apply to the coverage afforded under this **Coverage J**: items A.7, A.8, D.1 and D.3. In addition, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

a)   wear and tear;
b)   gradual deterioration;
c)   inherent vice; or
d)   insects or vermin.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection–Coverage C**, also applies to a loss under this coverage.

6.   **Increased Coverage On Theft Of Silverware–Coverage ST**
     The $2,500 limitation on theft of goldware, silverware, pewterware and platinumware under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.

Unofficial Copy Office of Marilyn Burgess District Clerk

**Policy Endorsement**



*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Water Back-Up Endorsement – AVP98-1

For an additional premium and when **your** Policy Declarations indicates that **Water Back-Up** applies, the following coverage is added:

**Water Back-Up–Coverage WB**
**We** will cover **sudden and accidental** direct physical loss to property **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C** caused by water or any other substances within **your dwelling** or other **building structures** on the **residence premises** which:
a)   backs up through sewers or drains located within the **residence premises**; or
b)   overflows from a sump pump, sump pump well or other system located within the **residence premises** designed for the removal of subsurface water which is drained from a foundation area of a structure.

The limit of liability for **Water Back-Up–Coverage WB** is shown on **your** Policy Declarations. This is the total amount for any one loss available under **Water Back-Up–Coverage WB** including amounts paid or payable under **Water Back-Up–Coverage WB Additional Protection**. Once this limit of liability for **Water Back-Up–Coverage WB** is exhausted, no further amounts will be available.

The insurance provided by **Water Back-Up–Coverage WB** shall be excess over any other insurance that also applies to a loss covered under this coverage.

This coverage does not apply if the loss occurs or is in progress within the first ten days that the Water Back-Up Endorsement is initially bound except if the Water Back-Up Endorsement is bound at the original inception of **your** policy.

If **you** increase the limit and/or lower the deductible for **your** existing Water Back-Up Endorsement, **your** coverage will be limited to the prior limit and/or deductible for the first ten days after the new limit and/or deductible is bound to **your** policy.

The deductible for **Water Back-Up–Coverage WB** will be shown on **your** Policy Declarations. The deductible for **Water Back-Up–Coverage WB** will apply to a loss covered under **Water Back-Up–Coverage WB**.

For the purposes of this endorsement only, **Section I Additional Protection** is replaced with the following:

- **Water Back-Up–Coverage WB Additional Protection**
The coverage afforded under **Water Back-Up–Coverage WB Additional Protection** does not increase the limit of **Water Back-Up–Coverage WB**.

- **Additional Living Expense**
**We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss covered under **Water Back-Up–Coverage WB** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up–Coverage WB**.

   Payment for additional living expense as a result of a direct physical loss covered under **Water Back-Up–Coverage WB** will be limited to the least of the following:
   a)   the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b)   if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c)   12 months.

   These periods of time are not limited by the termination of this policy.

   **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

- **Debris Removal**
**We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover under **Water Back-Up–Coverage WB**.

- **Temporary Repairs After A Loss**
**We** will reimburse **you** for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover under **Water Back-Up–Coverage WB**. This coverage does not increase the limit of liability applying to the property being repaired.



In **Section I Conditions**, under item 19, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**, the following provision is added:

> **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up-Coverage WB**
> In the event of a water loss covered under **Water Back-Up-Coverage WB**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.
>
> **Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** damaged by a water loss covered under **Water Back-Up-Coverage WB**, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.
>
> Payments under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up-Coverage WB** will not reduce amounts paid or payable under **Water Back-Up-Coverage WB**.

All other policy terms and conditions apply.

# Policy Endorsement

Policy number:
Policy effective date:
Your Allstate agency is



*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

## Residence Glass Coverage – AVP99

**We** will pay for **sudden and accidental** direct physical loss to residence glass caused by breakage of or by chemicals applied to such glass if permanently attached to the **dwelling** or other **building structures** located at the **residence premises**. **We** will also pay for storm windows and doors located at the **residence premises** which are not permanently attached. **Our** payment will include the cost of making temporary repairs, damage to encasing frames and removing or replacing obstructions because of a covered loss to glass.

### Limit Of Liability For Residence Glass Coverage
**We** will pay up to $100 resulting from any one loss for the items listed in a) through i) below:
a) multiple plate insulating units;
b) radiant heating panels;
c) conservatory or greenhouse glass;
d) chandeliers or light fixtures;
e) jalousies, louvers or shutter;
f) Venetian type doors or windows;
g) stained or leaded glass; or
h) glass bricks, shingles or other structural glass; or
i) any pane or plate of glass not described in a) through h) above.

Under **Residence Glass Coverage**, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

- Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

- a) War, whether declared or undeclared;
  b) warlike acts;
  c) invasion;
  d) insurrection;
  e) rebellion;
  f) revolution;
  g) civil war;
  h) usurped power;
  i) destruction for a military purpose; or
  j) action taken by civil, government or military authority to hinder or defend against an actual or impending enemy act.

### Applicable Policy Provisions
In addition to the provisions specific to this coverage form, the following policy parts apply:
1. Under the **General** section:
   a) **Definitions Used In This Policy**
   b) **Coverage Changes**
   c) **Cancellation**
   d) **Action Against Us**
   e) **Arbitration**

2. Under **Section I Conditions**:
   a) **What You Must Do After A Loss**
   b) **Our Rights To Recover Payment**
   c) **Action Against Us**

No deductible applies to this protection.

Unofficial copy from Office of Marilyn Burgess District Clerk



*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

## Roof Surfaces Extended Coverage Endorsement – AVP144-1

In **Section I Conditions**, item 6, **How We Pay For A Loss**, provision c) (titled "Building Structure Reimbursement.") the sixth paragraph is replaced by the following:

Building Structure Reimbursement will not apply to:
1) property covered under **Personal Property Protection–Coverage C**;
2) property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**; or
4) land.

All other policy terms and conditions apply.

Unofficial Copy Office of Marilyn Burgess District Clerk

**Policy Endorsement**



*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AVP345

In **Section I Conditions**, the following changes are made:

A.  Item 3, **What You Must Do After A Loss**, is replaced by the following:

3.  **What You Must Do After A Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:
a)  promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.
b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
c)  separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
d)  give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
e)  produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
f)  as often as **we** reasonably require:
1)  show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.
2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

3)  produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and
g)  Upon **our** request, send to us your signed sworn proof of loss within 91 days of the date of **our** request. This statement must include the following information:
1)  the date, time, location and cause of loss;
2)  the interest **insured persons** and others have in the property, including any encumbrances;
3)  any other insurance that may cover the loss;
4)  any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
5)  at **our** request, the specifications of any damaged **building structure** or other structure;
6)  the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;
7)  the amount **you** have actually spent to repair or replace the property stolen or damaged by the loss; and
8)  in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that you want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

B.  Item 8, **Appraisal**, is replaced by the following:

8.  **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party shall select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire then an umpire will be appointed in the following manner:



a) **You** or **we** will request the American Arbitration Association (AAA) to select an umpire at:

American Arbitration Association
Case Filing Services
Attn: Allstate Texas Appraisal
1101 Laurel Oak Road Ste 100
Voorhees, New Jersey 08043
Email: casefiling@adr.org
(with subject matter as "Allstate Texas Appraisal")

b) Only if AAA advises **you** and **us** in writing that it cannot appoint an umpire may **we** then jointly request a judge of a district court in the judicial district where the **residence premises** is located to select an umpire. A judge of a district court does not include a commissioner or a judge of a county court at law, or a justice court, a municipal court, a probate court, or of a commissioner's court.

The appraisers shall then determine the amount of the loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and **us**, the amount agreed upon shall be the amount of the loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of the loss. Each party will pay the appraiser it chooses, and equally bear expense for the umpire and all other appraisal expenses.

If the appraisal process is initiated, the appraisal award shall be binding on **you** and **us** concerning the amount of the loss. **We** reserve the right to deny the appraisal award in part or in its entirety based upon the lack of coverage under the policy or failure to satisfy policy terms.

C.   Item 13, **Action Against Us**, is replaced by the following:

13.   **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and

b) the action is commenced within two years and one day from the date the cause of action first accrues; and

c) in the event that **you** and **we** fail to agree on the amount of loss claimed by **you**, unless **you** have previously provided to **us** a signed sworn proof of loss, it is a condition under this **Action Against Us** provision that no later than 91 days prior to commencing any action against **us** that **we** receive from **you** a signed sworn proof of loss, which contains, to the best of **your** knowledge and belief, the following information:
1) the date, time, location and cause of loss;
2) the interest **insured persons** and others have in the property, including any encumbrances;
3) any other insurance that may cover the loss;
4) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
5) at **our** request, the specifications of any damaged **building structure** or other structure;
6) the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;
7) the amount you have actually spent to repair or replace the property stolen or damaged by the loss; and
8) in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that **you** want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.

d) If after **we** receive **your** proof of loss as described in paragraph c) above, **you** and **we** are still not able to agree on the amount of loss, then either party may make a written demand for an appraisal, as described in **Section I Conditions, Appraisal**. If this demand for appraisal is made before an action is filed against us in a court of competent jurisdiction, then the appraisal must occur before a suit can be filed against **us**. If the demand for appraisal is made after an action has been filed against us in a court of competent jurisdiction, then the parties agree to ask the court to abate the further proceeding of that action until the appraisal is completed and a

Policy endorsement



determination of the amount of loss is made as described in **Section I Conditions, Appraisal**.

To initiate the appraisal process either party must provide written notice of the dispute to the other party and make a written demand for appraisal of the amount of loss.

The time limit stated in item 13. b) shall be suspended from the date of the first written demand for appraisal until the date of the appraisal award.

D.  Item 19, **Mortgagee**, is replaced by the following:

19. **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a)  protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b)  give the mortgagee at least 10 days notice if **we** cancel the policy.

The mortgagee will:
a)  furnish proof of loss, upon our request, within 91 days after notice of the loss, if an **insured person** fails to do so;
b)  pay upon demand any premium due if an **insured person** fails to do so;
c)  notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d)  give **us** the mortgagees right of recovery against any party liable for loss; and
e)  after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

If property covered under **Dwelling Protection– Coverage A** is foreclosed upon under a deed of trust, the mortgagee of that property may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send the refund, if any, to the mortgagee.

The mortgagee must credit the refund against any deficiency owed by **you** and return any amount not credited to **you**.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

All other policy terms and conditions apply.

Official Copy of Marilyn Burgess District Clerk



# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AVP348

I.  In **Section I—Your Property**, under **Property We Cover Under Coverage C**, item 1 is replaced by the following:

1.  Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

    This limitation does not apply to personal property:
    a)  in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there; or
    b)  in use at a temporary residence when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

II.  In **Section I—Additional Protection**, **Additional Living Expense** is replaced by the following:

1.  **Additional Living Expense**
    **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

    Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
    a)  the time period required to repair or replace the property **we** cover, using due diligence and dispatch;

    b)  if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
    c)  24 months.

    These periods of time are not limited by the termination of this policy.

    In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

    **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

    No deductible applies to this protection.

All other policy terms and conditions apply.

# PLAINTIFF'S EXHIBIT NO. 2

Unofficial Copy Office of Marilyn Burgess District Clerk

**C**hristoffel Law Group

*3027 Marina Bay Drive, Suite 230, League City, Texas 77573*

*Ph: (281) 429-8402; Fax.: (281) 429-8403*

December 16, 2019

*VIA FIRST-CLASS MAIL*
SUSAN L. FLORENCE & ASSOCIATES
Attn.: Ms. Kimberly N. Blum, Esq.
811 Louisiana, Suite 2400
Houston, Texas 77002

Re: *Mohammad Shenavari v. Allstate Vehicle and Property Insurance Company and Idolina Stockert;* Cause No. 4:19-cv-04159; In the United States District Court for the Southern District of Texas, Houston Division.

Dear Counsel:

As you may recall, this law firm was retained to assist Mr. Mohammad Shenavari with his property damage claim arising out of Hurricane Harvey, for the insured location of 331 Isolde Drive, Houston, Texas 77024. Due to the continued disagreement between the insured and the insurance carrier regarding the above-referenced claim, Mr. Mohammad Shenavari hereby demands appraisal and designates Mr. Eric Ramirez as his appraiser for the above-referenced matter. Mr. Ramirez can be reached at:

Mr. Eric Ramirez
c/o L.A. Public Insurance Adjusters
1110 Nasa Parkway, Suite 510
Houston, Texas 77058
P: (713) 592-2482

We respectfully request that the insurer designate its appraiser within twenty (20) days of receipt of this letter. Please feel free to contact me should you have any questions or concerns.

Respectfully,

David A. Christoffel
Attorney-at-Law

Dc/

CC: *VIA FIRST-CLASS MAIL*
Mr. Mohammad Shenavari
515 Tallowood Road, Suite 7
Houston, Texas 77024

*C*hristoffel Law Group

*3027 Marina Bay Drive, Suite 230, League City, Texas 77573*

*Ph: (281) 429-8402; Fax.: (281) 429-8403*

*VIA FIRST-CLASS MAIL*
L.A. Public Insurance Adjusters
Attn.: Mr. Eric Ramirez
1110 Nasa Parkway, Suite 510
Houston, Texas 77058

5/6/2020 11:17:44 AM
Marilyn Burgess District Clerk
Harris County
Envelope No: 42779008
By: ABDUL-BARI, FATIMAH
Filed: 5/6/2020 11:17:44 AM

CAUSE NO. 2019-71232

| | | |
|---|---|---|
| MOHAMMAD SHENAVARI | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| V. | § | 269TH JUDICIAL DISTRICT |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |
| AND IDOLINA STOCKERT, | § | |
| *Defendants*. | § | HARRIS COUNTY, TEXAS |

**[PROPOSED] ORDER**

CAME FORTH on this the ____ day of _____ 2020 was Plaintiff Mohammad Shenavari's Motion to Compel Appraisal ("Motion") for hearing.  After consideration of Plaintiff's Motion, Defendant's response (if any), and upon review of the pleadings and evidence presented, this court finds good cause exists and hereby GRANTS Plaintiff's Motion.

Further, this court GRANTS Plaintiff's request for attorneys fees and costs associated with this opposed motion.

IT IS HEREBY ORDERED that Defendant shall designate its appraiser within seven (7) days of this ORDER.

IT IS FURTHER ORDERED that Defendant shall tender the sum of $1,200 to Plaintiff's counsel of record within fourteen (14) days for reimbursement of Plaintiff's attorney's fees and costs associated with the Motion.

DATED THIS _____

_____
DISTRICT COURT JUDGE

5/6/2020 2:56 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42790364
By: F Abdul-Bari
Filed: 5/6/2020 2:56 PM

## CAUSE NO.  2019-71232

| | | |
|---|---|---|
| **MOHAMMAD SHENAVARI** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **269TH JUDICIAL DISTRICT** |
| | § | |
| **ALLSTATE VEHICLE AND** | § | |
| **PROPERTY INSURANCE COMPANY** | § | |
| **AND IDOLINA STOCKERT,** | § | |
| *Defendants*. | § | **HARRIS COUNTY, TEXAS** |

<u>NOTICE OF HEARING</u>

Please take notice that Plaintiff's counsel of record filed a *Plaintiff's Motion to Compel Appraisal* on May 6, 2020, which has been presented to the 269th Judicial District Court of Harris County for consideration.

Further, please take notice that the *Plaintiff's Motion to Compel Appraisal* has been set for hearing by **SUBMISSION** of **Monday, May 18, 2020, at 8:00 a.m.**

Respectfully submitted,

**CHRISTOFFEL LAW GROUP, PLLC**

**By:**    /s/ David A. Christoffel
          David Christoffel
          State Bar No.: 24065044
          3027 Marina Bay Drive, Suite 230
          League City, Texas 77573
          (409) 429-8402 Telephone
          (409) 429-8403 Facsimile
          ChristoffelLawGroup@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Notice of Hearing was sent to Defendants' counsel of record, in accordance with the TEXAS RULES OF CIVIL PROCEDURE on this 6th day of May 2020, as follows:

SUSAN L. FLORENCE & ASSOCIATES
Attn.: Ms. Kimberly N. Blum
811 Louisiana, Suite 2400
Houston, Texas 77002

*Counsel for Defendants*

/s/ David A. Christoffel
David A. Christoffel

5/6/2020 4:41 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42797394
By: F Abdul-Bari
Filed: 5/6/2020 4:41 PM

## CAUSE NO.  2019-71232

| | | |
|---|---|---|
| **MOHAMMAD SHENAVARI** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **269TH JUDICIAL DISTRICT** |
| | § | |
| **ALLSTATE VEHICLE AND** | § | |
| **PROPERTY INSURANCE COMPANY** | § | |
| **AND IDOLINA STOCKERT,** | § | |
| *Defendants*. | § | **HARRIS COUNTY, TEXAS** |

### NOTICE OF SUBMISSION

Please take notice that Plaintiff's counsel of record filed a *Plaintiff's Motion to Compel Appraisal* on May 6, 2020, which has been presented to the 269th Judicial District Court of Harris County for consideration.

Further, please take notice that the *Plaintiff's Motion to Compel Appraisal* has been set for hearing by **SUBMISSION** of **Monday, May 18, 2020, at 8:00 a.m.**

Respectfully submitted,

**CHRISTOFFEL LAW GROUP, PLLC**

**By:**   /s/ David A. Christoffel
         David Christoffel
         State Bar No.: 24065044
         3027 Marina Bay Drive, Suite 230
         League City, Texas 77573
         (409) 429-8402 Telephone
         (409) 429-8403 Facsimile
         ChristoffelLawGroup@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Notice of Hearing was sent to Defendants' counsel of record, in accordance with the TEXAS RULES OF CIVIL PROCEDURE on this 6th day of May 2020, as follows:

SUSAN L. FLORENCE & ASSOCIATES
Attn.: Ms. Kimberly N. Blum
811 Louisiana, Suite 2400
Houston, Texas 77002

*Counsel for Defendants*

/s/ David A. Christoffel
David A. Christoffel

5/14/2020 5:06 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42996106
By: F Abdul-Bari
Filed: 5/14/2020 5:06 PM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
| Plaintiff, | |
| V. | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY AND IDOLINA STOCKERT, | |
| | HARRIS COUNTY, TEXAS |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL APPRAISAL, OR IN THE ALTERNATIVE, MOTION TO LIMIT THE SCOPE OF APPRAISAL**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DEFENDANTS and file this response asking the Court to deny Plaintiff's Motion to Compel Appraisal, or in the alternative, to limit the scope of appraisal for the following reasons:

**INTRODUCTION AND FACTUAL HISTORY**

1.      Plaintiff Mohammad Shenavari is the owner of real property located at 331 Isolde Drive, Houston, Texas 77024.  In Plaintiff's Original Petition, he claims that his home sustained catastrophic windstorm losses from Hurricane Harvey:

> The severe wind that struck Plaintiff's composition shingle roof, caused the shingles to lift, and otherwise, break free and allow substantial amounts of water to enter Plaintiff's home and cause interior water damage to the entry/foyer, formal living room, dining room, kitchen, laundry room, living room, hallway, office, master bedroom, master bathroom, master closet, hallway 2, bedroom, bedroom closet, bedroom 2, bedroom 2 closet, bathroom, closet, closet 2, closet 3, and HVAC unit.  Additionally, Hurricane Harvey caused extensive damage to Plaintiff's personal property located at the Property.  Plaintiff's Original Petition ¶ 10

2.      Allegedly, according to Plaintiff, the wind driven rain entering through the roof of his home solely caused damage in the amount of $131,695.31.  Nowhere in Plaintiff's Original Petition does

Shenavari vs. Allstate, et al.
Response to Motion  to Compel Appraisal
0472496529.1

PAGE 1

he ever mention that he also sustained catastrophic losses due to ground flooding.

3.     In fact, once Harris County opened the flood dams near Plaintiff's home, ground waters rose all the way to the eaves of Plaintiff's roof line.  The flooding was so severe that Plaintiff was forced to stash his valuables in the only place ground water could not reach—the attic.  Plaintiff even reported to neighbors that due to the severity of the flooding, he had to swim out of his attic to escape his home.

4.     Two days after the alleged date of loss, Plaintiff reported to Allstate that his home had flooded, even though Plaintiff's policy of insurance specifically excluded flood coverage. Thereafter, for reasons that can only be inferred, Plaintiff amended his notice of loss to state that he, by the way, also had wind and hail damage to his roof, which unlike flood, happened to be a covered peril under his policy.

5.     By the time the Defendant adjuster, Idolina Stockert, inspected the property, the home was fully gutted.  There was no flooring, sheetrock, fixtures, or contents to examine.  Despite a mere shell of a house to inspect, Stockert maxed out Plaintiff's lump sump water backup coverage, and issued payment to Plaintiff in the amount of $5,000.00, the maximum amount of money afforded under the policy.  Coverage for windstorm and hailstorm damage to the roof and interior was subsequently denied.  *See* Exhibit A, Denial Letter.

6.     See select photographs below Adjuster Stockert took depicting the condition of Plaintiff's home during her inspection.

Shenavari vs. Allstate, et al.                                                                                                    PAGE 2
Response to Motion  to Compel Appraisal
0472496529.1



5-992265_1895A
Date Taken: 9/21/2017
Taken By: Idolina Stockert
living room



6-992318_1E734
Date Taken: 9/21/2017
Taken By: Idolina Stockert
kitchen

7.      On January 1, 2018, the Property was re-inspected by a second Allstate adjuster, Darrel

Johnson.  Mr. Johnson did not make any changes to Stockert's prior estimate, and the claim was

denied accordingly.

Shenavari vs. Allstate, et al.                                                                    PAGE 3
Response to Motion to Compel Appraisal
0472496529.1

8.     In the aftermath of this flooding event, Plaintiff filed a theft claim with Allstate alleging that all of the valuables stored in his attic, including very expensive Persian rugs and antiques, had fallen prey to looters.  Giving its customer the benefit of the doubt, even though there were no contents to examine, Allstate assessed Plaintiff's personal property theft claim at $73,479.95. After application of deprecation, the deductible, and policy limits for theft, Allstate paid Plaintiff $46,609.67 in cash for these stolen contents.  *See* Exhibit B, Theft Estimate.

9.      In addition, Plaintiff also applied for a Small Business Administration Loan.  During the application process for this loan, Plaintiff was required assign his insurance proceeds over to the Small Business Administration.  According to the paperwork Plaintiff filled out and reported to the SBA, he had received some $237,000 for property damage and $25,000 in other damage as of October 2018.  *See* Exhibit C, SBA Information.  As these payments did not come from Allstate, it can only be assumed that Plaintiff had coverage through another carrier and received payment accordingly for the flood damage.  However, despite multiple requests made to Plaintiff during the claims handling process, he was unable to locate any of the information on his flood claim to hand over to Allstate.

10.     Plaintiff has since filed a Motion to Compel Appraisal with this Court.  But, this is not just a mere dispute over the amount of a loss.  Appraisal of this home is highly problematic. Notwithstanding there is barely a home left to appraise, there are also multiple causes of loss and coverage issues that preclude appraisal as an appropriate avenue in this matter.  At no point after the reinspection in early January 2018 did Plaintiff inquire about the appraisal process.  Appraisal was mentioned for the first time almost two years later on December 16, 2019 when counsel for Plaintiff invoked the appraisal clause.  For the reasons elicited below, Defendants ask the Court to deny this request in full.

Shenavari vs. Allstate, et al.                                                                                          PAGE 4
Response to Motion  to Compel Appraisal
0472496529.1

## SUMMARY OF THE ARGUMENT

11.     The appraisal clause in a policy is meant to resolve disagreements regarding the actual cash value, amount of loss, or cost of repair or replacement. It is not a means of resolving disputes regarding coverage. *Scottish Union & Nat'l Ins. Co. v. Clancy*, 83 Tex. 113, 18 S.W. 439, 441 (Tex. 1892); *see also State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 889 (Tex. 2009).

12.     As mentioned above, Allstate disputes that Plaintiff's claim for wind and hail damage to the Property or to contents is covered under the Policy. The claimed loss at Plaintiff's Property was not storm-related, and most, if not all of Plaintiff's claims for real and personal property were previously addressed in his contents claim for theft, as well as through his flood insurance carrier where he was paid near limits.

13.     Allstate hereby objects to appraisal for the following reasons:

      a.   Plaintiff's claims for wind/hail and flood are indivisible, making it impossible for appraisers to segregate wind/hail from flood damage;

      b.   Plaintiff has waived his right to appraisal through both unreasonably delays and through conduct inconsistent with the appraisal process.

      c.   This loss is subject to a coverage dispute, making appraisal an inappropriate remedy.

14.     Alternatively, should this Court grant Plaintiff's motion to compel appraisal, Defendant asks that the scope of the appraisal be limited, and only include what has not already been paid for through Plaintiff's flood insurance carrier and through Plaintiff's concurrent theft claim for personal property.

Shenavari vs. Allstate, et al.                                                                                   PAGE 5
Response to Motion to Compel Appraisal
0472496529.1

## ARGUMENT AND AUTHORITIES

A.    **It is impossible to segregate flood damage from wind/hail damage.  According to the Texas Supreme Court, it is fatal to Plaintiff's case that he is unable to segregate these damages.**

15.    *Johnson* is the leading case on when an adjuster can determine causation in an appraisal. *State Farm Lloyds v. Johnson,* 290 S.W.3d at 892 (Tex. 2009).  This case has been muddied through the years since it was first published over a decade ago.  However, the Texas Supreme Court makes it clear in this decision, which has never been overturned, that appraisers cannot determine issues of causation in blanket fashion.  "When different causes are alleged for a single injury to property, causation is a liability question for the court." *Id.*  An example the Supreme Court gave of this scenario is from *Wells v. Am. States Preferred Ins. Co*. "when appraisers assessed foundation damage due to plumbing leaks (a covered peril) as "0" but damage due to settling (an excluded peril) as $22,875.94." *Id.* (citing *Wells v. Am. States Preferred Ins. Co*., 919 S.W. 2d 679, 685-86 (Tex. App.—Dallas 1996, writ denied)).  In *Wells*, the Dallas Court of Appeals held that "appraisers could decide the amount of damage but not what caused it. Appraisers can decide the cost of repairs in this context, but if they can also decide causation there would be no liability questions left for the courts."  *Id.*  "By contrast, when **different types of damage** occur to **different items of property**, appraisers may have to decide the damage caused by each before the courts can decide liability."  *Id.* (emphasis added).  This reasoning was very recently followed by the Northern District of Texas in *Salas Realty LLC v. Transp. Ins. Co*., which held that in line with the well-established holdings in *Johnson*, "appraisers cannot decide causation when the injury is indivisible." *Salas Realty LLC v. Transp. Ins. Co*., Civ. A. No. 3:19-CV-1572-N, 2019 U.S. Dist. LEXIS 207533 at *6 (N.D. Tex. 2019); see also *Johnson,* 290 S.W.3d at 892 (Tex. 2009).

16.    An overarching issue to the inability to segregate damages is the doctrine of concurrent

Shenavari vs. Allstate, et al.
Response to Motion to Compel Appraisal
0472496529.1

PAGE 6

causation. The doctrine of concurrent causation provides that when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s). *Travelers Indem. Co. v. McKillip,* 469 S.W.2d 160, 163 (Tex. 1971). To this end, the insured must present some evidence upon which the jury can allocate the damage attributable to the covered peril. *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 601 (Tex. 1993) (citing *Paulson v. Fire Ins. Exch.,* 393 S.W.2d 316, 319 (Tex. 1965)).

17.     In other words, plaintiffs have the burden to provide evidence capable of enabling a trier of fact to segregate their covered damages from non-covered damages. *Hamilton Properties v. Am. Ins. Comp.*, 2014 WL 3055801 (N.D. Tex. 2014) (citing *Feiss v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004)).

18.     As a practical matter, it has been over two and a half years since the claimed date of loss. The property was abandoned after Hurricane Harvey, and the structure itself is barely intact. In the time that this property was initially damaged, it has been subject to additional weather forces, as well as to intentional looting and destruction. Since much of this home no longer exists, coupled with the other casualties it has undergone, it is likely impossible to determine, particularly with respect to the interior, what was damaged by flooding versus what was damaged by water intrusion from wind and hail.

19.     Plaintiff has not presented any evidence as to the appropriate segregation of damages and would be hard pressed to find an engineer who could even make such a distinction. Plaintiff cannot meet his burden to segregate damage attributable to a covered peril from damage attributable to a non-covered peril. Consequently, even though this is in the context of an appraisal, plaintiff's inability to segregate this damage is fatal, and the Court should deny Plaintiff's request to undergo the appraisal process.

20.     To date, Plaintiff Shenavari has received $237,000 in property damage and $25,000 in

Shenavari vs. Allstate, et al.                                                                                          PAGE 7
Response to Motion to Compel Appraisal
0472496529.1

other damage from his flood insurance carrier, and another $73,479.95 through Plaintiff's theft claim with Allstate.  For the applicable 2017 policy period covering Hurricane Harvey, Allstate assessed the replacement cost value of Plaintiff's home at $222,242.00.  Plaintiff has essentially recovered more than the full replacement cost value of his home from his flood insurance carrier alone.

21.     Furthermore, during the claims process, Plaintiff submitted a sworn proof of loss to Allstate indicating that the entirety of the stolen contents he was claiming amounted to $69,000.00, which Plaintiff has already received.  *See* Exhibit D, Contents Proof of Loss.  Any additional money awarded through the appraisal process would be a windfall for Plaintiff, particularly if Allstate was forced to appraise any portion of the inside of the home, which has presumably been paid for in full through his flood insurance carrier.  Plaintiff should therefore be barred from utilizing appraisal, and the Court should not place the parties in a situation where the Plaintiff is able to "double dip."

**B.     Plaintiff has waived his right to appraisal through conduct inconsistent with appraisal, and by waiting an unreasonable amount of time before invoking the appraisal clause.**

22.     By invoking appraisal almost two and a half years after the claimed date of loss, and well into the litigation process, Plaintiff has waived his right to appraisal through both unreasonable delays in time as well as through intentional conduct inconsistent with the right to assert appraisal for losses due to wind and hail damage.

23.     "Silence or inaction for so long a period as to show an intention to yield the known right is sufficient to prove waiver." *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*., Civ. A. No. H-09-1736, 2019 U.S. Dist. LEXIS 6295 at *10 (S.D. Tex. 2010) (citing *Tenneco Inc. v. Enterprise Prods. Co*., 925 S.W. 2d 640, 643 (Tex. 1996)) (where the Southern District of Texas held that a 10-month delay was unreasonable).  "While an unreasonable delay is a factor in finding waiver,

Shenavari vs. Allstate, et al.                                                                        PAGE 8
Response to Motion  to Compel Appraisal
0472496529.1

reasonableness must be measured from the point of impasse . . . ."  *In re Universal Underwriters of Tex. Ins. Co*., 345, S.W. 3d 404, 408 (Tex. 2011).  The party arguing waiver must also show prejudice.  *See id*. at 411.

24.     Here, Plaintiff made no mention of appraisal until December 16, 2019.  At the very least, an impasse was reached on January 1, 2018, the date Allstate performed a reinspection of the property and stood by its prior coverage decision.  No subsequent inspections were completed after this.  Plaintiff did not request another inspection, and the parties should have reasonably understood at this point that Allstate would not be changing its coverage determination.  If January 1, 2018 is the point of impasse, the Court should consider 23 months as the delay in time before appraisal was invoked.

25.     The Texas Supreme Court has also held that waiver can also be established through the intentional conduct of a party inconsistent with claiming a known right.  *See In re GE Capital Corp*., 203 S.W. 3d 314, 316 (Tex. 2006).  Plaintiff should be barred from being able to use the appraisal process to assess his home for wind and hail damage.  His actions are completely inconsistent with him claiming that his home was damaged by a wind and hailstorm.

26.     As previously mentioned, Plaintiff has already recovered near limits from his flood insurance carrier.  Furthermore, Plaintiff filed a class action lawsuit against the Harris County Flood Control District wherein he claimed that he suffered damages to his real and personal property due to the county appropriating his home as a flooding easement.  *See* Exhibit E, Harris County Lawsuit.  Plaintiff thus cannot claim that a wind and hail event caused over $100,000 in damage to his home if he is also separately contending that his home was destroyed by a flood.

27.     Defendant Allstate is prejudiced a number of ways by Plaintiff's appraisal invocation, and that prejudice stems from both the unreasonable delay in time as well as the conduct inconsistent with the appraisal process.  To start, Plaintiff has completely failed to preserve the property,

Shenavari vs. Allstate, et al.                                                                                    PAGE 9
Response to Motion  to Compel Appraisal
0472496529.1

making it impossible to properly and accurately appraise it.  Plaintiff also failed to document the pre-loss and post-loss condition prior to engaging in the partial demolition of his home.  In certain circumstances, if there are photographs depicting a loss, or even if there are repair receipts, an appraisal can be completed without having to assess the actual property itself.

28.     However, in this case, no such evidence or documentation exists.  The home has never been repaired, and neither party has any photographs that appraisers can look at to determine and segregate damages.  Regardless, any appraisal award rendered for the interior of the home would constitute a windfall for the insured.  Even though Plaintiff cannot recover for the same loss twice, Allstate has been prejudiced by having to spend money to defend itself against Plaintiff's quest to double dip that it would not otherwise have to spend.  And again, through the delay in time, combined with the barrage of elements and intentional destruction of the property from looters and thefts, Allstate would be forced to assist Plaintiff in the segregation of his damages through the appraisal process, which is not a burden Allstate carries as a matter of law.  By waiting so long to invoke appraisal, some of the onus to segregate damages has inadvertently been placed on Allstate, which runs afoul of the Texas Supreme Court principle that this is solely Plaintiff's job.

**C.     Allstate Disputes Coverage and the Appraisal Clause does not Apply.**

29.     Allstate disputes that Plaintiff's claim is covered under the Policy as a result of the flood damage.  *See* Exhibit A, Denial Letter.  The appraisal clause in the Policy is meant to resolve disagreements regarding the actual cash value, amount of loss, or cost of repair or replacement. It is not a means of resolving disputes regarding coverage.  *Scottish Union & Nat'l Ins. Co. v. Clancy*, 83 Tex. 113, 18 S.W. 439, 441 (Tex. 1892); see also *State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 889 (Tex. 2009).

30.     Allstate does not waive its right to liability or coverage defenses by participating in appraisal if ordered by the Court and asks that the Court require Plaintiff to otherwise prove their

Shenavari vs. Allstate, et al.                                                                                          PAGE 10
Response to Motion  to Compel Appraisal
0472496529.1

case against Defendant as required by law.

### D. Alternatively, Defendant asks the Court to limit the scope of appraisal.

31.     If the Court decides to grant Plaintiff's request for appraisal, Defendants ask the Court to limit the scope of appraisal to prevent Plaintiff from receiving a windfall.  Defendant proposes that Plaintiff turn over all of his flood insurance records for any Hurricane Harvey claim to the Court and to the parties' respective appraisers.

32.     The Court would then instruct the appraisers to only consider the items not previously paid for by Plaintiff's flood insurance carrier.  Defendants believe this would limit the appraisal to just Plaintiff's roof and roofing components, and would likely exclude all damage on the inside of Plaintiff's home.  To date, the roof appears to be the only structure still intact.  A preemptive order from the Court would also aid the parties' appraisers and allow for the facilitation of a more expeditious and streamlined appraisal.

### E. There is no legal basis for the recovery of attorney's fees.

33.     Plaintiff's proposed order also includes an award of attorney's fees. There is no legal basis for the recovery of attorney's fees at this point in litigation, even if the Court chooses to grant Plaintiff's motion to compel.  Plaintiff provided no support to his motion for the award of such fees.

### CONCLUSION AND PRAYER

34.     The request for appraisal should be denied in full.  Plaintiff has waived this right through both delays in time and through intentional conduct inconsistent with claiming such a right. Furthermore, due to the state of Plaintiff's home, it is impossible to segregate damages, making appraisal an inappropriate remedy.  And if the case was forced into appraisal, this would subject Allstate to having to pay for a loss that was already compensated for by Plaintiff's flood insurance policy and through a concurrent contents claim.

Shenavari vs. Allstate, et al.                                                                                        PAGE 11
Response to Motion  to Compel Appraisal
0472496529.1

35.     WHEREFORE, PREMISES CONSIDERED, for the reasons above, Defendant respectfully requests that the Court deny Plaintiff's Motion to Compel Appraisal, or at least, at the very minimum, limit the scope.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY BLUM**
TBN:  24092148

811 Louisiana St Ste 2400
Houston, TX  77002-1401
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY AND IDOLINA
STOCKERT

Shenavari vs. Allstate, et al.                                                                    PAGE 12
Response to Motion  to Compel Appraisal
0472496529.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served in compliance

with Rules 21 and 21a of the Texas Rules of Civil Procedure on this day of May 14, 2020.

David A. Christoffel
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

_____
**KIMBERLY BLUM**

Unofficial Copy Office of Marilyn Burgess District Clerk

Shenavari vs. Allstate, et al.                                                                                    PAGE 13
Response to Motion  to Compel Appraisal
0472496529.1

5/14/2020 5:06:39 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 42996106
By: ABDUL-BARI, FATIMAH
Filed: 5/14/2020 5:06:39 PM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
| Plaintiff, | |
| V. | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY AND IDOLINA STOCKERT, | HARRIS COUNTY, TEXAS |
| Defendants. | |

## DEFENDANTS' PROPOSED ORDER ON PLAINTIFF'S MOTION TO COMPEL APPRAISAL

Pending before the Court is Plaintiff's Motion to Compel Appraisal. After considering the motion and responses thereto, the Court is of the opinion that Plaintiff's Motion to Compel Appraisal should be DENIED. SO ORDERED.

SIGNED on this _____ day of _____, 2020.

_____
**DISTRICT JUDGE PRESIDING**

# EXHIBIT C

Unofficial Copy Office of Marilyn Burgess District Clerk

Exhibit C



**U.S. SMALL BUSINESS ADMINISTRATION**
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, TX 76155-2243

(817) 868-2300
(800) 366-6303
TDD (817) 267-4688

(Fax) 817-868-2332

October 17, 2018

Allstate Insurance Company
P.O. Box 660598
Dallas, TX 75266-0598

Re:    Application Number: 1000751642
       Borrower's Name:    Shenavari, Mohammad Ali / Samizadeh, Mandana
       Policy Number:      000829582292 HAZARD
       Property Address:   331 ISOLDE DR, HOUSTON, TX 77024

Dear Sir or Madam:

The U.S. Small Business Administration (SBA) has approved a loan to repair/replace your insured's damaged real estate and/or personal property.

SBA is prohibited from loaning funds for losses that are compensated by insurance or other recoveries; an Assignment of Future Insurance Proceeds is required.

Enclosed is a copy of the **Full Assignment or Partial Assignment of Insurance Proceeds** executed by your insured in favor of SBA. In compliance with the assignment, future payments on this claim (except payments for additional living expenses) are to name the U. S. Small Business Administration as a co-payee. This form includes the name of the insured, policy number, damaged property address, date of the disaster and type of disaster.

Should you have any questions or require additional information, please contact the Accounts Department at 1-800-366-6303.

Sincerely,

Nikia Cato
Case Manager
Accounts Department

Enclosures
Assignment of Insurance Proceeds



**U. S. SMALL BUSINESS ADMINISTRATION**
Processing And Disbursement Center
14925 Kingsport Road,
Fort Worth, TX 76155-2243

800-659-2955
800-877-8339
Hearing Impaired
800-676-3777
Fax 817-868-2332

\00075\642

## INSTRUCTIONS FOR ASSIGNMENT OF INSURANCE PROCEEDS

I.    The assignment must be signed.

II.   Answer questions A and B below and return this instruction sheet and the assignment to SBA.

    A. Have you received any funds to date?  (YES)   .NO

    B. If yes, how much have you received? Real Estate (including any manufactured housing) $ 237000
    Contents      $ 0
    Other (specify)      $ 25000

Please enclose copies of all letters and loss work sheets you have received from your insurance company for this claim.

SBA WILL NOT BE ABLE TO DISBURSE ANY LOAN FUNDS UNTIL YOU RETURN THE ASSIGNMENT, THIS INSTRUCTION SHEET, AND THE REQUESTED INFORMATION.

Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT A

Unofficial Copy Office of Marilyn Burgess District Clerk

**Allstate**
You're in good hands.®

*NCT Mobile Inside*
*1020 DOWNTOWNER BLVD*
*MOBILE AL 36609*

MOHAMMAD SHENAVARI AND MANDANA SAMIZADEH
331 ISOLDE DR
HOUSTON TX 770244722

January 14, 2018

INSURED:  MOHAMMAD SHENAVARI                    PHONE NUMBER: 800-326-0950
DATE OF LOSS:  August 27, 2017                  FAX NUMBER:  877-292-9527
CLAIM NUMBER:  0472496529                       OFFICE HOURS:

Dear MOHAMMAD SHENAVARI AND MANDANA SAMIZADEH,

I am writing to you in regards to the claim you have submitted under your Allstate Vehicle and Property Insurance Company House and Home Policy.  We have considered the facts and information and have reviewed the terms of your policy.  Based on this information, we must respectfully deny coverage for a portion of the damages you are claiming.

Based on our adjuster's inspection on January 1, 2018, the water damage and mold growth throughout the home is the result of mechanical damages to the roof and flood.  Per the policy provisions below, this is not covered.

Please refer to Section 1—Your Property, paragraph ⌐12 of your Allstate House and Home policy.  It states: Losses We Do Not Cover Under Coverages A and B:

A. Under Dwelling Protection–Coverage A and Other Structures Protection–Coverage B of this policy, we do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.
2. Water or any other substance that backs up through sewers or drains. 3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure. 4. Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises. We do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above. 5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

B. Under Dwelling Protection–Coverage A and Other Structures Protection–Coverage B of this policy, we do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or other microbes. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or other microbes arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in Section I Conditions, Mold,

Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss. C. When loss is not excluded under paragraph A or paragraph B of Losses We Do Not Cover Under Coverages A, B and C, and there are two or more causes of loss to the covered property, we do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

Under Dwelling Protection–Coverage A, Other Structures Protection–Coverage B or Personal Property Protection–Coverage C of this policy, we do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
1. The failure by any insured person to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover. 2. Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs: a) may be reasonably expected to result from such acts; or
b) is the intended result of such acts. This exclusion will not apply to an innocent spouse or insured person who did not contribute to such loss or to the interest of an innocent spouse or insured person in the damaged property. This exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime. 3. Planning, Construction or Maintenance, meaning faulty, inadequate or defective: a.) planning zoning, development, surveying, siting; b.) design, specifications, workmanship, repair, construction, renovations, remodeling, grading, compaction; c.) materials used in repair, construction, renovation or remodeling; or d.) maintenance; of property whether on or off the residence premises by any person or organization.

Our adjuster's investigation of your loss did indicate the presence of mold on or near the damaged property.   We need to advise you that mold may cause damage to both structural and personal property and under certain conditions may create health risks.  It is recommended that action be taken immediately to remove the mold from your home and to prevent further mold and damage from occurring.  The underlying cause of the mold must be remedied to prevent further problems.

Your policy states, in part,

What You Must Do After A Loss:

In the event of a loss to any property that may be covered by this policy, you must: a) immediately give us or our agent notice. Report any theft to the police as soon as possible. b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses. c) separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed. d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies. e) produce receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records supporting any claim for loss of rental income. f) as often as we reasonably require: 1) show us the damaged property. We have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of you or others, including, but not limited to, civil, governmental or military authorities, that prevent us from viewing and inspecting the loss. We may require you to accompany us when we conduct these activities. 2) at our request, submit to examinations under oath, separately and apart from any other person defined as you or insured person and sign a transcript of the same. 3) produce representatives, employees, members of the insured person's household or others to the extent it is within the insured person's power to do so; g) within 60 days after the loss, give us a signed, sworn proof of the loss.

Under the above provision, it is your responsibility to take immediate and affirmative actions to prevent the further growth or accumulation of mold on your property.  Should you fail to comply with your policy contract provisions, you could subject your home to additional damages. Additionally, as noted above, failure to comply with your policy contract provisions could affect your insurance coverage for any future claims for liability or damage to property.

Sincerely,

*Kristen Janes(Coor)*

Kristen Janes(Coor)
800-326-0950 Ext. 1210798
Allstate Vehicle and Property Insurance Company

# EXHIBIT B

Unofficial Copy Office of Marilyn Burgess District Clerk



**Allstate.**
You're in good hands.

**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH  44236
Phone: (866) 857-2560
Fax: (866) 447-4293

| | | | |
|---|---|---|---|
| Insured: | MOHAMMAD SHENAVARI | Cell: | (713) 820-3305 |
| Property: | 331 isonde drive | E-mail: | MSHENAVARI@YAHOO.COM |
| | houston, TX 77024 | | |
| Home: | 331 ISOLDE DR | | |
| | HOUSTON, TX 77024-4722 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Savannah Denes | Business: | (330) 528-4151 |
| Business: | 75 Executive Parkway | Fax: | (866) 447-4293 |
| | Hudson,, OH 44237 | E-mail: | Savannah.Denes@allstate.com |

| | | | |
|---|---|---|---|
| Estimator: | Savannah Denes | Business: | (330) 528-4151 |
| Business: | 75 Executive Parkway | E-mail: | Savannah.Denes@allstate.com |
| | Hudson,, OH 44237 | | |

**Claim Number:** 0475843488       **Policy Number:** 000829582292       **Type of Loss:** Theft-off premises

| | | | |
|---|---|---|---|
| Date Contacted: | 6/4/2018 | | |
| Date of Loss: | 9/20/2017 5:00 PM | Date Received: | 9/21/2017 11:03 AM |
| Date Inspected: | | Date Entered: | 6/4/2018 3:07 PM |
| Date Est. Completed: | 6/6/2018 3:00 PM | | |

| | |
|---|---|
| Price List: | TXHO8X_JUN18 |
| | Restoration/Service/Remodel |
| Estimate: | MOHAMMAD_SHENAVARI |

Unofficial Copy Office of Marilyn Burgess District Clerk



**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH  44236
Phone: (866) 857-2560
Fax: (866) 447-4293

Allstate is dedicated to providing you with outstanding service throughout the claim-handling process.

Subject to applicable laws and regulations, the values in this estimate may derive from multiple sources, including businesses that sell primarily or exclusively through retail stores with physical locations, businesses that sell exclusively online through the internet, and businesses that sell both through physical stores and online. However, prices can change without notice.  If you have any questions regarding this estimate or if you find that the cost of the repairs or replacement is more than reflected in this estimate, based on shipping and handling costs or other reasons, then please contact your claim adjuster at the number listed above.

 If you have any questions regarding this estimate, or if there are differences with the estimate provided by your repair person of choice, or if additional damage is found during the repair process, please contact us at (330) 528-4151.

Thank you,
Savannah Denes



**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH  44236
Phone: (866) 857-2560
Fax: (866) 447-4293

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **MOHAMMAD_SHENAVARI** | | | | | | | | | | | |
| <u>CC-UNSCHEDULED PERSONAL PROPERTY</u> | | | | | | | | | | | |
| 1.  Persian Rug - Wool/silk - excellent condition, 7ft x 10 ft | | 26 y / Above Avg. / 100 y | 16% | 1 | $29,500.00 | $29,500.00 | $2,433.75 | $31,933.75 | $4,981.67 | $26,952.08 | |
| ERS Valuation Services 214 E. SCRANTON AVE. LAKE BLUFF, IL 60044 800-634-4135 | | | | | | | | | | | |
| 2.  Persian Rug - wool/silk - excellent condition - 5ft2in x 6ft31in | | 25 y / Above Avg. / 100 y | 15% | 1 | $18,000.00 | $18,000.00 | $1,485.00 | $19,485.00 | $2,922.75 | $16,562.25 | |
| ERS Valuation Services 214 E. SCRANTON AVE. LAKE BLUFF, IL 60044 800-634-4135 | | | | | | | | | | | |
| 5.  Shoes - Ladies' - Boots - High grade | | 4 y / Avg. / 3 y | 90%[^] | 1 | $160.00 | $160.00 | $13.20 | $173.20 | $155.88 | $17.32 | |
| Orig. Desc. - Christian Loubatin Boots Customer to include on police report. | | | | | | | | | | | |
| 6.  Shoes - Ladies' - Boots - High grade | | 4 y / Avg. / 3 y | 90%[^] | 1 | $160.00 | $160.00 | $13.20 | $173.20 | $155.88 | $17.32 | |
| Orig. Desc. - Gucci Boots Customer to include on police report. | | | | | | | | | | | |
| 7.  Cash | | 0 y / Avg. / NA | 0% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Denied per policy provisions | | | | | | | | | | | |
| <u>CJ-JEWELRY, WATCHES, AND FURS</u> - *Items below are subject to a $1,000.00 single item limit and a $5,000.00 aggregate limit. Values shown may be reduced due to overage.* | | | | | | | | | | | |
| 3.  14k Yellow Gold 10mm Miami Cuban Chain Necklace 28 Inches | | 3 y / Avg. / NA | 0% | 1 | $11,120.00 | $11,120.00 | $917.40 | $12,037.40 | $0.00 | $12,037.40 | [AGG] |
| ERS Valuation Services 214 E. SCRANTON AVE. LAKE BLUFF, IL 60044 800-634-4135 | | | | | | | | | | | |
| Orig. Desc. - 14K Solid Miami Cuban Chain 184.25 gram | | | | | | | | | | | |
| 4.  14K Yellow Gold 20mm Miami Cuban Bracelet 7 Inches | | 3 y / Avg. / NA | 0% | 1 | $7,960.00 | $7,960.00 | $656.70 | $8,616.70 | $0.00 | $8,616.70 | [AGG] |

Unofficial Copy Office of Marilyn Burgess District Clerk



**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH 44236
Phone: (866) 857-2560
Fax: (866) 447-4293

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **MOHAMMAD_SHENAVARI (CONTINUED)** | | | | | | | | | | | |

CJ-JEWELRY, WATCHES, AND FURS (Continued) - *Items below are subject to a $1,000.00 single item limit and a $5,000.00 aggregate limit. Values shown may be reduced due to overage.*

ERS Valuation Services
214 E. SCRANTON AVE.
LAKE BLUFF, IL 60044
800-634-4135
Orig. Desc. - 14k Solid Cuban ID Bracelet 131.95 gram

CS-SILVERWARE/GOLDWARE/PEWTERWARE - *Items below are subject to a $2,500.00 aggregate limit. Values shown may be reduced due to overage.*

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8. Sterling Oval Vegetable Bowl Prelude - plain | | 10 y / Avg. / NA | 0% | 1 | $359.95 | $359.95 | $29.70 | $389.65 | $0.00 | $389.65 | |
| https://www.replacements.com/p/international-silver-prelude-plain-sterling-hollowware-sterling-oval-vegetable-bowl/insprep/19500231 | | | | | | | | | | | |
| Orig. Desc. - Sterling Silver dish | | | | | | | | | | | |
| 9. Water Goblet Prelude-Plain by International Silver | | 10 y / Avg. / NA | 0% | 1 | $319.95 | $319.95 | $26.40 | $346.35 | $0.00 | $346.35 | |
| https://www.replacements.com/p/international-silver-prelude-plain-sterling-hollowware-water-goblet/insprep/107645251 | | | | | | | | | | | |
| Orig. Desc. - Sterling Silver cup holder | | | | | | | | | | | |
| 10. Tray for Sterling Creamer and Sugar Set Prelud-Plain by International silver | | 0 y / Avg. / NA | 0% | 1 | $299.95 | $299.95 | $24.75 | $324.70 | $0.00 | $324.70 | |
| https://www.replacements.com/p/international-silver-prelude-plain-sterling-hollowware-tray-for-sterling-creamer-and-sugar-set/insprep/103328261 | | | | | | | | | | | |
| Orig. Desc. - Sterling Silver Tea Tray | | | | | | | | | | | |
| **Subtotals** | | | | | | **$67,879.85** | **$5,600.10** | **$73,479.95** | **$8,216.18** | **$65,263.77** | |
| **Totals** | | | | | | **$67,879.85** | **$5600.10** | **$73,479.95** | **8,216.18** | **$65,263.77** | |

[^] - Depreciation limited due to maximum allowable depreciation percentage
[%] - Item depreciated by percent
[$] - Item depreciated by specified amount
[AGG] - Item contributes to aggregate overage, see Sublimit Recap



**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH  44236
Phone: (866) 857-2560
Fax: (866) 447-4293

### Summary for CC-Unscheduled Personal Property

| | |
|---|---:|
| Line Item Total | 67,879.85 |
| Material Sales Tax (8.25%) | 5,600.10 |
| **Replacement Cost Value** | **$73,479.95** |
| Less Depreciation | (8,216.18) |
| **Actual Cash Value** | **$65,263.77** |
| Less Deductible | (11,190.00) |
| Less Amount Over Limit(s) | (7,464.10) |
| **Net Claim** | **$46,609.67** |
| Total Recoverable Depreciation | 8,216.18 |
| **Net Claim if Depreciation is Recovered** | **$54,825.85** |

### Sublimit Recap

| Description | Single Item Limit | Aggregate Limit | ACV | RCV | Overage |
|---|---:|---:|---:|---:|---:|
| CJ-JEWELRY, WATCHES, AND FURS | $1,000.00 | $5,000.00 | $20,654.10 | $20,654.10 | $18,654.10 |
| CS-SILVERWARE/GOLDWARE/PEWTER WARE | $0.00 | $2,500.00 | $1,060.70 | $1,060.70 | $0.00 |
| | | | $21,714.80 | $21,714.80 | $18,654.10 |

Unofficial Copy Office of Marilyn Burgess District Clerk



**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH 44236
Phone: (866) 857-2560
Fax: (866) 447-4293

_____
Savannah Denes



**Hudson Central Specialty Office**

P.O. Box 493
Hudson, OH  44236
Phone: (866) 857-2560
Fax: (866) 447-4293

## Recap by Category with Depreciation

| Items | RCV | Deprec. | ACV |
|---|---:|---:|---:|
| **CLOTHING & ACCESSORIES** | **320.00** | **288.00** | **32.00** |
| **HOUSEWARES - DINING & FLATWARE** | **979.85** | | **979.85** |
| **JEWELRY & WATCHES** | **19,080.00** | | **19,080.00** |
| **LINENS & SOFTGOODS** | **47,500.00** | **7,302.00** | **40,198.00** |
| **Subtotal** | **67,879.85** | **7,590.00** | **60,289.85** |
| **Material Sales Tax** | **5,600.10** | **626.18** | **4,973.92** |
| **Total** | **73,479.95** | **8,216.18** | **65,263.77** |

MOHAMMAD_SHENAVARI

# EXHIBIT D

Unofficial Copy Office of Marilyn Burgess District Clerk

## SWORN STATEMENT IN PROOF OF LOSS

Allstate Vehicle and Property Insurance Company     Claim Number: 0475843488
Policy Number: 000829582292     Insured: MOHAMMAD SHENAVARI

The Undersigned declares: Allstate Vehicle and Property Insurance Company issued to MOHAMMAD SHENAVARI at 331 ISOLDE DR, HOUSTON, TX, 770244722 Its policy number 000829582292, insuring against loss by: Theft as specifically provided in its policy, the following described property:

331 isonde drive, houston, TX, 77024-4722.

1. That a loss by Theft occurred around the hour of _____ AM./ PM, on September 20, 20 17.
   Please describe how the loss occurred:
   _The Property Been in Long Contain U.S. Perdage Hight Tools of Clean air addict_

2. This building and/or property described was occupied by: _____ for the purpose of

   ✓    Personal residence
   ___   Rental Property
   ___   Commercial or other business property

3. At the time of the loss, the party or parties who hold a financial interest or title to the property is / are
   _mohammad Ali Shenavari_ and no other parties hold an interest or encumbrance upon the property involved except for
   _____

4. Since this insurance policy went into effect, there has been no assignment or change of interest, use, occupancy, possession, location, or exposure of the property described except:
   _None_

5. At the time of the loss, total dollar amount of insurance for this property was $ ~~PRIVATE~~ and there are no other policies or other contracts of insurance.

6. At the time of the loss the amount of this property's Actual Cash Value(to include dwelling and personal contents) is: $ _____

7. The total amount of damages to the property for this loss is: $ _____

8. The Amount Claimed for Additional Living Expenses (if applicable) is: $ _____

9. The Amount Claimed for all damages to this property under this policy is: $ 69000

I confirm the cause of this loss was not perpetrated through any action, design, or procurement by the insured or by this affiant, nothing has been submitted without the knowledge of the insured or this affiant to violate the conditions of the policy or cause the policy to become void; this Proof of Loss represents the whole claim and no property has been saved or has in any manner been concealed, and no attempt to deceive Allstate Vehicle and Property Insurance Company as to the extent of this loss has in any way been made. Any other information that may be required will be furnished and considered a part of this proof.

*By providing me with this Proof of Loss, I acknowledge Allstate Vehicle and Property Insurance Company does not waive any of the policy terms, conditions, exclusions or limitations it may have under the provisions of the policy.*

Uncertified Copy Office of Marilyn Burgess District Clerk

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

Executed in the
State of: _____Tx_____          _____, Insured Signature

County of: _____HARRIS_____          _____, Insured Signature

Subscribed and sworn before me this ___26___ day of ____Oct____, 20 _17_.

_____ Notary Public

```
    NOTARY PUBLIC        DERHL PRATT JR
  ★                      Notary ID # 129161057
    STATE OF TEXAS       My Commission Expires
                         January 9, 2021
```

Unofficial Copy Office of Marilyn Burgess District Clerk



# EXHIBIT E

10/25/2017 1:34 PM
Chris Daniel - District Clerk Harris County
Envelope No. 20296834
By: Lakeita Dotson
Filed: 10/25/2017 1:34 PM

**CAUSE NO. _____**

| | |
|---|---|
| BRENSON ABBOTT, FLORENCE ABBOTT, § | IN THE DISTRICT COURT OF |
| ADAM AB ASSETS LLC, LINDA AHN, § | |
| SAM AHN, ERIN AMMERMAN, RENDA § | |
| AYCOCK, NEIL BADLANI, § | |
| VAIDHYANATHAN BALASUBRAMANIAN, § | |
| SCOTT BIEHZ, LAWRENCE BIESTEK, § | |
| SALLY BIESTEK, WILLIAM BLACKMON, § | HARRIS COUNTY, TEXAS |
| CYNTHIA BOASE, JACOBUS H. BOTHA, § | |
| A. BOTHA, BOWERS DESIGN GROUP § | |
| PLLC, MARIA NESS BRADSHAW, § | |
| ANTHONY J. BRAJENOVICH, WILLIAM § | |
| BRENAN, RAYMOND BRINDLEY, § | _____ JUDICIAL DISTRICT |
| JIMMY D. BROUSSARD, PAUL L. § | |
| BROUSSARD, JULIA A. BROWN, § | |
| CONCEPCION BRYAN, SINSA BUDMIR, § | |
| DAVID BUZA, MICHAEL CAGLE, JOE D. § | |
| CARRABBA, GEOFFREY A.CASTRO, § | |
| ALISSA CASTRO, SUSAN G.CERVENKA, § | |
| HAN K CHOI, CHRISTOPHER DEWITT § | |
| SIM O/B/O GEORGE EDGAR SIMS, AMBER § | |
| CHU,ARLENE COFFMAN, CONVERGENCE § | |
| ADVISORS INTERNATIONAL INC., § | |
| ALBERT BARUD,VERONICA § | |
| CORELLA-BARUD, MICHAEL G. COWLEY, § | |
| KRISTOPHER CULPEPPER,TAMMY § | |
| CULPEPPER, MARVIN CULPEPPER, § | |
| CHARLENE CULPEPPER,ROBERT M. § | |
| CUMMINGS, RAJDEEP DASGUPTA , § | |
| SUSHMITA DASGUPTA,ROSS DAVIDSON, § | |
| HELENA DEFERRO, EDWARD DOFTER, § | |
| SILJEGOVIC DRAGAN, HANNAH DREW, § | |
| ROBERT DREW, DOUGLAS DRIES, § | |
| RICHARD DUNN, ROBERT K. DUSSAIR, § | |
| JOHN ECKERMAN, ANDREA ECKERMAN, § | |
| CHRISTY R. ETHEREDGE, JOANNE M. § | |
| EVANS, EXPRO AUTO SALES & RENTAL § | |
| LLC, SONYA FELKER, JOSEPH FICKLIN, § | |
| BLEE FICKLIN, PAULA FIESER, CHARLES § | |
| FIESER, JOHN FILLA, TONYA FILLA, § | |
| ROBERT FINKELSTEIN, DAVID § | |
| FINKLEAAND, HARRY FLEMING, DEANE § | |
| FRASER, MICHELLE L. FRENCH, § | |
| RICHARD FRIEDMAN, NICHOLAS FRYER, § | |
| CHRISTINE FRYER, KARIM GARABAGHI, § | |
| HECTOR GARCIA, LORANI GARCIA, § | |

SCOTT W. GEROW, GITI GHAFFARI,　§
GARRICK GLASCOCK, PAMELA　§
GLATMAN , RAFAIL GLATMAN, LESLIE　§
GOLDEN, CYNTHIA GORHAM, MARY　§
KATHLEEN GRANT, ALYSON GRIFFIN,　§
GARRY GUILLOUD , NANCY GUILLOUD,　§
KYLE F. HAINES, SEYED KAMAL,　§
NASRIN HAKIM, BRIAN HALEY,　§
MELISSA HALEY, FRANK HAMTAK,　§
CINDY HAMTAK, EUGENE HALACHER,　§
DONALD HARTGROVE , SAUNDRA　§
HARTGROVE, MARK HARTMAN,　§
PHYLLIS HARTMAN, ANN E. HARVEY,　§
PETER DAVID HEALEY, TODD M.　§
HENDRICK, JOSE HERNANDEZ,　§
ALAN HEWIT, JOE H. HICMAND , NANCY　§
A. HICKMAN, CRISTINA HIMES , MONICA　§
HIMES, TRAN HOANG , LIN FRANK,　§
EUGENE HOLDA, GRETCHEN P.　§
HOLTSINGER, LAURENT HOUY,　§
MAURINE HOWARD, SHUO HUANG,　§
MARY ANN HUGHES, JEFFERY HUNTER ,　§
DIANA HUNTER, BRIAN IVERSEN, JAMES　§
JACKSON, SHAFIQ JADALLAH, KENNETH　§
KAINER, OSCAR KARASH , RENA　§
KARASH, STEPHEN G. KASTENSMIDT,　§
MICHELLE BOWERS, HOLLY KENDALL,　§
BRETT KENNEDY, SONIA YI,　§
MOHAMMAD KHANSA, JAMES M.　§
KILLOUGH , GABRIELLE KILLOUGH,　§
GENE KIM, BARBARA JOAN KING,　§
DAVY KONG, SOONHYEOK KOOK,　§
JAN KRAMER, JANICE O KRUSE,　§
MARCIA MINK , ANDRE LANDON, JOHN　§
LATROBE, JEFF LAWLEY, SUE LAWLEY,　§
DON LE, CINDY LE, JONATHAN　§
JOOHGUN LEE, JEONGKWAN LEE,　§
A. ROSS LEFEVRE, EVAN B. LEUNG,　§
REW LEVINE, CORINNA LEVINEJIAMEI　§
LI, WEI LI, FRANK LIN , HOANG LIN,　§
GENARO LOPEZ, PAULA LOWE,　§
LAWRENCE MADIGAN, ELAINA　§
MARCHANI, LORENZO MARQUEZ,　§
SELMA J. MATHIS, BRIAN MCCULLEY,　§
JAMES MCLEAN, JEANNE MCLEAN,　§
MICHAEL MCMANUS, PAT MCSPADDEN,　§
MICHELLE MECHLING, MELANIE　§

MECHURA, ROGER MECHURA, KATIE          §
MEHNERT , MARK MEHNERT,                 §
MEMORIAL GROUP LLC, MICHAEL             §
MERAJI, ANITA MILLER, CHERYL            §
MILLER, ANNE MONTY, ANJANELLE           §
MOORE, NADER MOUSSA, PATRICIA           §
MOUSSA, BRIDGETT NABORS, MARK           §
NARRO, CHRIS NEVLING, JESSICA           §
NEVLING, DOROTHY NG, STEVE              §
NGUYEN , CHI NGUYEN, ROSS               §
NICHOLSON, MARGRET NORTON,              §
BLANCA ORTEGA, KAREN                    §
PALFREYMAN, THIERRY PAREJA,             §
CHRISTOPHER SCOTT PARKER, JOHN D.       §
PATTON, SUM PHAM, PHUONG PHAM,          §
JOHN F. PHILLIPS , CELESTE PHILLIPS,    §
GEORGE K. PONNATTU, THOMAS POPE,        §
RAHUL PRAKASH, LI QIANG, JULIE A.       §
RAUSCH, THOMAS RICHARDSON, IAN          §
ROBERTS , CRISTINA ROBERTS,             §
KENNETH ROBERTSON, JOSE A.              §
RODRIGUEZ, RYAN RUSH, ROBERT RYAN,      §
DANIEL SACK, SHIRLEY SANDERS,           §
STEVE SCHARES, JANET C. SCHMIDT,        §
ROBERT SCHMITT, NANCY SCHMITT,          §
MARIAN SCHREIBER, COLLEEN SCOTT,        §
BAL SHARMA, KAMNA SHARMA,               §
MOHAMMAD ALI SHENAVARI, YU SHI,         §
YAN JUN SHIU, SIBERIA HOUSTON LNA       §
LLC, ANN SINCLAIR, ELIZABETH M.         §
SKIRVING, JAMES SKRAPKA, ANDREA         §
SKRAPKA, KATHLEEN STEVENS,              §
CHUNGWON SUK,YING SUN, KENG TAI,        §
KELLI MCDONALD SYDOW,                   §
JOHN SZALLAI , VERONICA SZALLAI,        §
DANIEL BENDER TALLANT,DAVID TANG,       §
KATHRYN TANG,DOUGLAS TASKER,            §
DIANE TATE,ABULFAZI TEHRANI,            §
JEAN-MARC PIETRZYK, FREDERIQUE          §
TERK,AMADOU THIAM, DENNIS               §
THOMPSON,GUANGYI TIAN, THOMAS           §
WILLIAM TOMMANEY, TUAN TRAN,            §
XIAOZHEN TU, SUSAN VAN-AVERBEKE,        §
PETER M. VILES, JACK WALKER,            §
FENG WAN, JIE WANG, KATHERINE           §
WENNER, SUSIE WHITE, PETER C. WHITE,    §
LIJUAN WU, HAN XIONG, NI YAN,           §

SAMUEL YANKLELOVE, DALE           §
GUNWOO YOOK, MARILYN YOUNG,       §
CHUNG YU AND JAMES ZAPATA,        §
HWAN BAE, MARIA-DOLORES           §
BARQUERO-PEREZ, BCR INTERESTS INC., §
LOREEN BILANSKY, BLAIR BUNDY,     §
WILLIAM CHU, CHRISTOPHER L. DOLAN, §
FARBOUD CHRIS EBRABIMY,           §
YONGGUI GUO, MARGARET M. HAUCK,   §
PRAVINDA JETHWA, INSUK KOO,       §
KATE KOO, MICHAEL P. LYNCH,       §
TORGEIR MANTOR, GRACE CARTER,     §
DAVID MILLER, CHARLES MURRAY,     §
GEORGE O'CONNOR, KAREN O'CONNOR,  §
GORDON B. REID, DEBORAH SALVO,    §
ROOZBEH SHARIF, LAWRENCE SMITH,   §
DAVID SPERRY, JOAN SPERRY,        §
JEFFREY STEVENSON, DARLENE        §
WALDEN, FENG WAN, GAIL WATTS AND  §
ANDREW WENGER                     §
     *Plaintiffs,*                    §
                                      §
v.                                §
                                      §
HARRIS COUNTY FLOOD CONTROL       §
DISTRICT                          §
     *Defendant.*                     §

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Brenson Abbott, Florence Abbott, Adam AB Assets LLC, Linda Ahn, Sam

Ahn, Erin Ammerman, Renda Aycock, Neil Badlani, Vaidhyanathan Balasubramanian, Scott

Biehz, Lawrence Biestek, Sally Biestek, William Blackmon, Cynthia Boase, Jacobus H. Botha,

A. Botha, Bowers Design Group LLC, Maria Ness Bradshaw, Anthony J. Brajenovich, William

Brenan, Raymond Brindley, Jimmy D. Broussard, Paul L. Broussard, Julia A. Brown,

Concepcion Bryan, Sinsa Budmir, David Buza, Michael Cagle, Joe D. Carrabba, Geoffrey A.

Castro, Alissa Castro, Susan G. Cervenka, Han K Choi, Christopher Dewitt Sim o/b/o George

Edgar Sim, Amber Chu, Arlene Coffman, Convergence Advisors International Inc., Albert

Barud, Veronica Corella-Barud, Michael G. Cowley, Kristopher Culpepper, Tammy Culpepper,

Marvin Culpepper, Charlene Culpepper, Robert M. Cummings, Rajdeep Dasgupta, Sushmita Dasgupta, Ross Davidson, Helena DeFerro, Edward Dofter, Siljegovic Dragan, Hannah Drew, Robert Drew, Douglas Dries, Richard Dunn, Robert Kent Dussair, John Eckerman, Andrea Eckerman, Christy R. Etheredge, Joanne M. Evans, Expro Auto Sales & Rental LLC, Sonya Felker, Joseph Ficklin, Blee Ficklin, Paula Fieser, Charles Fieser, John Filla, Tonya Filla, Robert Finkelstein, David Finkleaand, Harry Fleming, Deane Fraser, Michelle L. French, Richard Friedman, Nicholas Fryer, Christine Fryer, Karim Garabaghi, Hector Garcia, Lorani Garcia, Scott W. Gerow, Giti Ghaffari, Garrick Glascock, Pamela Glatman, Rafail Glatman, Leslie Golden, Cynthia Gorham, Mary Kathleen Grant, Alyson Griffin, Garry Guilloud, Nancy Guilloud, Kyle F. Haines, Seyed Kamal, Nasrin Hakim, Brian Haley, Melissa Haley, Frank Hamtak, Cindy Hamtak, Eugene Harlacher, Donald Hartgrove, Saundra Hartgrove, Mark Hartman, Phyllis Hartman, Ann E. Harvey, Peter David Healey, Todd M. Hendrick, Jose Hernandez, Alan Hewit, Joe H. Hicmand, Nancy A. Hickman, Cristina Himes, Monica Himes, Tran Hoang, Lin Frank, Eugene Holda, Gretchen P. Holtsinger, Laurent Houy, Maurine Howard, Shuo Huang, Mary Ann Hughes, Jeffery Hunter, Diana Hunter, Brian Iversen, James Jackson, Shafiq Jadallah, Kenneth Kainer, Oscar Karash, Rena Karash, Stephen G. Kastensmidt, Michelle Bowers, Holly Kendall, Brett Kennedy, Sonia Yi, Mohammad Khansa, James M. Killough, Gabrielle Killough, Gene Kim, Barbara Joan King, Davy Kong, Soonhyeok Kook, Jan Kramer, Janice S. Kruse, Marcia Mink, Andre Landon, John Latrobe, Jeff Lawley, Sue Lawley, Don Le, Cindy Le, Jonathan Joohgun Lee, Jeongkwan Lee, A. Ross LeFevre, Evan B. Leung, Andrew Levine, Corinna Levine, Jiamei Li, Wei Li, Frank Lin, Hoang Lin, Genaro Lopez, Paula Lowe, Lawrence Madigan, Elaina Marchani, Lorenzo Marquez, Selma J. Mathis, Brian McCulley, James Mclean, Jeanne Mclean, Michael Mcmanus, Pat McSpadden, Michelle Mechling, Melanie Mechura, Roger Mechura, Katie Mehnert, Mark Mehnert, Memorial Group

LLC, Michael Meraji, Anita Miller, Cheryl Miller, Anne Monty, Anjanelle Moore, Nader Moussa, Patricia Moussa, Bridgett Nabors, Mark Narro, Chris Nevling, Jessica Nevling, Dorothy Ng, Steve Nguyen, Chi Nguyen, Ross Nicholson, Margret Norton, Blanca Ortega, Karen Palfreyman, Thierry Pareja, Christopher Scott Parker, John D. Patton, Sum Pham, Phuong Pham, John F. Phillips, Celeste Phillips, George K. Ponnattu, Thomas Pope, Rahul Prakash, Li Qiang, Julie A. Rausch, Thomas Richardson, Ian Roberts, Cristina Roberts, Kenneth Robertson, Jose A. Rodriguez, Ryan Rush, Robert Ryan, Daniel Sack, Shirley Sanders, Steve Schares, Janet C. Schmidt, Robert Schmitt, Nancy Schmitt, Marian Schreiber, Colleen Scott, Bal Sharma, Kamna Sharma, Mohammad Ali Shenavari, Yu Shi, Yan Jun Shiu, Siberia Houston LNA LLC, Ann Sinclair, Elizabeth M. Skirving, James Skrapka, Andrea Skrapka, Kathleen Stevens, Chungwon Suk, Ying Sun, Keng Tai, Kelli Mcdonald Sydow, John Szallai, Veronica Szallai, Daniel Bender Tallant, David Tang, Kathryn Tang, Douglas Tasker, Diane Tate, Abulfazi Tehrani, Jean-Marc Pietrzyk, Frederique Terk, Amadou Thiam, Dennis Thompson, Guangyi Tian, Thomas William Tommaney, Tuan Tran, Xiaozhen Tu, Susan Van-Averbeke, Peter M. Viles, Jack Walker, Feng Wan, Jie Wang, Katherine Wenner, Susie White, Peter C. White, Lijuan Wu, Han Xiong, Ni Yan, Samuel Yanklelove, Dale Yankelove, Gunwoo Yook, Marilyn Young, Chung Yu, James Zapata, Hwan Bae, Maria-Dolores Barquero-Perez, BCR Interests, INC., Loreen Bilansky, Blair Bundy, William Chu, Christopher L. Dolan, Farboud Chris Ebrabimy, Yonggui Guo, Margaret M. Hauck, Pravinda Jethwa, Insuk Koo, Kate Koo, Michael P. Lynch, Torgeir Mantor, Grace Carter, David Miller, Charles Murray, George O'Connor, Karen O'Connor, Gordon B. Reid, Deborah Salvo, Roozbeh Sharif, Lawrence Smith, David Sperry, Joan Sperry, Jeffrey Stevenson, Darlene Walden, Feng Wan, Gail Watts and Andrew Wenger file this Original Petition against Defendant Harris County Flood Control District, to seek just compensation under the Texas Constitution for taking of their private

property for public use when the Flood Control District flooded their homes by releasing water from the Addicks and Barker Reservoirs in Houston, Texas.   In support, Plaintiffs would respectfully show the following:

## I.   **PARTIES**

Plaintiffs are citizens of the Harris County who own private property, both real and personal, in Harris County, Texas.

Plaintiffs Brenson Abbott and Florence Abbott are individuals and residents of Harris County, Texas, who own real and personal property located at 743 Langwood Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Adam AB Assets LLC is a limited liability company, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the  decision to appropriate their property as a flooding easement.

Plaintiffs Linda Ahn and Sam Ahn are individuals and residents of Harris County, Texas, who own real and personal property located at 12714 Huntingwick Drive, Houston, TX 77024 and 12633 Memorial #202, Houston, TX 770024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Erin Ammerman is an individual and resident of Harris County, Texas, who owns real and personal property located at 752 Memorial Mews St Unit C, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Renda Aycock is an individual and resident of Harris County, Texas, who owns real and personal property located at 12617 Huntingwick, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Neil Badlani is an individual and resident of Harris County, Texas, who owns real and personal property located at 407 Faust Ln., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Vaidhyanathan Balasubramanian is an individual and resident of Harris County, Texas, who owns real and personal property located at 1003 Cranberry Hill Dr, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Scott Biehz is an individual and resident of Harris County, Texas, who owns real and personal property located at 14502 Oak Bend Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Lawrence Biestekand Sally Biestek are individuals and residents of Harris County, Texas, who own real and personal property located at 410 River Forest Ct, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff William Blackmon is an individual and resident of Harris County, Texas, who owns real and personal property located at 777 S. Mayde Street, Apt 118, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Cynthia Boase is an individual and resident of Harris County, Texas, who owns real and personal property located at 12656 Rip Van Winkle, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Jacobus H. Botha and A. Botha are individuals and residents of Harris County, Texas, who own real and personal property located at 14906 Bramblewood Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Bowers Design Group PLLC. is a limited liability company, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Maria Ness Bradshaw is an individual and resident of Harris County, Texas, who owns real and personal property located at 819 Crossroads Dr, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Anthony J. Brajenovich is an individual and resident of Harris County, Texas, who owns real and personal property located at 14938 Bramblewood Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff William Brenan is an individual and resident of Harris County, Texas, who owns real and personal property located at 15455 Memorial Dr. suite 200, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Raymond Brindley is an individual and resident of Harris County, Texas, who owns real and personal property located at 12853 Kingsbridge Ln., Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jimmy D. Broussard is an individual and resident of Harris County, Texas, who owns real and personal property located at 423 Bendwood Dr., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Paul L. Broussard is an individual and resident of Harris County, Texas, who owns real and personal property located at 15706 Walkwood, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Julia A. Brown is an individual and resident of Harris County, Texas, who owns real and personal property located at 410 Bendwood Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Concepcion Bryan is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr. 410, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Sinsa Budmir is an individual and resident of Harris County, Texas, who owns real and personal property located at 12615 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff David Buza is an individual and resident of Harris County, Texas, who owns real and personal property located at 807 Elk Run Circle, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Michael Cagle is an individual and resident of Harris County, Texas, who owns real and personal property located at 12915 Figaro Dr., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Joe D. Carrabba is an individual and resident of Harris County, Texas, who owns real and personal property located at 600 Wilcrest #56, Houston, TX 77042. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Geoffrey A. Castro and Alissa Castro are individuals and residents of Harris County, Texas, who own real and personal property located at 711 Thistlewood Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Susan G. Cervenka is an individual and resident of Harris County, Texas, who owns real and personal property located at 4746 Post Oak Timber No. 30, Houston, TX 77056. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Han K. Choi is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr. Apt. 403, Houston, TX 77024-4494. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Amber Chu is an individual and resident of Harris County, Texas, who owns real and personal property located at 14102 BriarHills Pkwy., Houston, TX 77077. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Arlene Coffman is an individual and resident of Harris County, Texas, who owns real and personal property located at 12608 Huntingwick, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Convergence Advisors International LLC. is a limited liability company, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Albert Barud and Veronica Corella-Barud are individuals and residents of Harris County, Texas, who own real and personal property located at 1034 Ivy Wall Dr, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Michael G. Cowley is an individual and resident of Harris County, Texas, who own real and personal property located at 202 Mignon Ln, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements; and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Marvin Culpepper and Charlene Culpepper are individuals and residents of Harris County, Texas, who own real and personal property located at 706 Thistlewood Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Kristopher Culpepper and Tammy Culpepper are individuals and residents of Harris County, Texas, who own real and personal property located at 703 Thistlewood, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Robert M. Cummings is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. #209, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Rajdeep Dasgupta and Sushmita Dasgupta are individuals and residents of Harris County, Texas, who own real and personal property located at 655 Langwood Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Ross Davidson is an individual and resident of Harris County, Texas, who owns real and personal property located at 411 Mignon Ln, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Helena DeFerro is an individual and resident of Harris County, Texas, who owns real and personal property located at 604 N Eldrige Pkwy, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Hannah Drew and Robert Drew are individuals and residents of Harris County, Texas, who own real and personal property located at 12707 Boheme Drive #408, Houston, TX 77024. Plaintiffs have suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Edward Dofter is an individual and resident of Harris County, Texas, who owns real and personal property located at 15119 Camelback Ct., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the  decision to appropriate his property as a flooding easement.

Plaintiff Siljegovic Dragan is an individual and resident of Harris County, Texas, who owns real and personal property located at 404 Bendwood Dr., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Douglas Dries is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme #706, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Richard Dunn is an individual and resident of Harris County, Texas, who owns real and personal property located at 748 Memorial Mews Unit D, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Robert Kent Dussair is an individual and resident of Harris County, Texas, who owns real and personal property located at 706 Bison Street, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs John Eckerman and Andrea Eckerman are individuals and residents of Harris County, Texas, who own real and personal property located at 777 S. Mayde Street, Houston, TX 77006. Plaintiffs have suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Christy R. Etheredge is an individual and resident of Harris County, Texas, who owns real and personal property located at 12648 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Joanne M. Evans is an individual and resident of Harris County, Texas, who owns real and personal property located at 710 Thistlewood Drive, Houston, TX 77079. Plaintiff

has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Expro Auto Sales & Rental LLC. is a limited liability company, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Sonya Felker is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr Apt. 1210, Houston TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Joseph Ficklin and Blee Ficklin are individuals and residents of Harris County, Texas, who own real and personal property located at 12542 Westerley Ln., Houston, TX 77077. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Paula Fieser and Charles Fieser are individuals and residents of Harris County, Texas, who own real and personal property located at 12625 Briar Patch Rd, Houston, TX 77077. Plaintiffs have suffered damages to their real and personal property, including personal

Unofficial Copy Office of Marily Burgess District Clerk

vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs John Filla and Tonya Filla are individuals and residents of Harris County, Texas, who own real and personal property located at 14822 Bramblewood Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Robert Finkelstein is an individual and resident of Harris County, Texas, who owns real and personal property located at 406 River Forest Ct., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff David Finkleaand is an individual and resident of Harris County, Texas, who owns real and personal property located at 410 Faust Lane, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Harry Fleming is an individual and resident of Harris County, Texas, who owns real and personal property located at 507 Ramblewood, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal

effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Deane Fraser is an individual and resident of Harris County, Texas, who owns real and personal property located at 10910 Tupper Lake Dr., Houston, TX 77042. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Michelle L. French is an individual and resident of Harris County, Texas, who owns real and personal property located at 748 Memorial Mews Apt. C, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Richard Friedman is an individual and resident of Harris County, Texas, who owns real and personal property located at 1011 Fleetwood Place Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Nicholas Fryer and Christine Fryer are individuals and residents of Harris County, Texas, who own real and personal property located at 711 Bison Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the

structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Karim Garabaghi is an individual and resident of Harris County, Texas, who owns real and personal property located at 12672 Briar Patch Road, Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Hector Garcia and Lorani Garcia are individuals and residents of Harris County, Texas, who own real and personal property located at 12707 Boheme #1703, Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Scott W. Gerow is an individual and resident of Harris County, Texas, who owns real and personal property located at 1006 Fleetwood Place Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Giti Ghaffari is an individual and resident of Harris County, Texas, who owns real and personal property located at 11925 Memorial Dr., Houston, TX 77024. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and

damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Garrick Glascock is an individual and resident of Harris County, Texas, who owns real and personal property located at 12610 Boheme Drive, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Pamela Glatman and Rafail Glatman are individuals and residents of Harris County, Texas, who own real and personal property located at 12914 Figaro Drive, Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Leslie Golden is an individual and resident of Harris County, Texas, who owns real and personal property located at 7 Woodstone St., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Cynthia Gorham is an individual and resident of Harris County, Texas, who owns real and personal property located at 421 E. Fair Harbor Ln, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property;

and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Mary Kathleen Grant is an individual and resident of Harris County, Texas, who owns real and personal property located at 201 Vanderpool Ln. #140, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Alyson Griffin is an individual and resident of Harris County, Texas, who owns real and personal property located at 331 Electra Drive, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Garry Guilloud and Nancy Guilloud are individuals and residents of Harris County, Texas, who own real and personal property located at 1110 Tupperlake, Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Kyle F. Haines is an individual and resident of Harris County, Texas, who owns real and personal property located at 754 Langwood Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Seyed Kamal and Nasrin Hakim are individuals and residents of Harris County, Texas, who own real and personal property located at 106 Mignon Ln., Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Brian Haley and Melissa Haley are individuals and residents of Harris County, Texas, who own real and personal property located at 759 Langwood, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Frank Hamtak and Cindy Hamtak are individuals and residents of Harris County, Texas, who own real and personal property located at 10711 Shady River Dr., Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Eugene Harlacher is an individual and resident of Harris County, Texas, who owns real and personal property located at 600 Wilcrest Dr. #64, Houston, TX 77042. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Donald Hartgrove and Saundra Hartgrove are individuals and residents of Harris County, Texas, who own real and personal property located at 730 Bison Drive, Houston, TX 77079 and 607 White Wing Ln, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Mark Hartman and Phyllis Hartman are individuals and residents of Harris County, Texas, who own real and personal property located at 710 Bison Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Ann E. Harvey is an individual and resident of Harris County, Texas, who owns real and personal property located at 12703 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Peter David Healey is an individual and resident of Harris County, Texas, who owns real and personal property located at 777 South Mayde Creek Drive #26, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and

personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Todd M. Hendrick is an individual and resident of Harris County, Texas, who owns real and personal property located at 12674 Briar Patch Rd Apt 36, Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jose Hernandez is an individual and resident of Harris County, Texas, who owns real and personal property located at 738 Bison Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Alan Hewit is an individual and resident of Harris County, Texas, who owns real and personal property located at 456 E. Fair Harbor Lane, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Joe H. Hickman and Nancy A. Hickman are individuals and residents of Harris County, Texas, who own real and personal property located at 807 Peachwood Bend Dr., Houston, TX 77007. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home

improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Cristina Himes and Monica Himes are individuals and residents of Harris County, Texas, who own real and personal property located at 777 S. Mayde Creek Dr. Apt. 146, Houston, TX 77079. Plaintiffs have suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Tran Hoang and Lin Frank are individuals and residents of Harris County, Texas, who own real and personal property located at 12811 Traviata Drive, Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Eugene Holda is an individual and resident of Harris County, Texas, who owns real and personal property located at 703 Bison Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Gretchen P. Holtsinger is an individual and resident of Harris County, Texas, who owns real and personal property located at 12614 Rip Van Winkle, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the

property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Laurent Houy is an individual and resident of Harris County, Texas, who owns real and personal property located at 727 Thistlewood Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Maurine Howard is an individual and resident of Harris County, Texas, who owns real and personal property located at 454 E. Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Shuo Huang is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. #13, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Mary Ann Hughes is an individual and resident of Harris County, Texas, who owns real and personal property located at 426 Gretel Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property;

and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Jeffery Hunter and Diana Hunter are individuals and residents of Harris County, Texas, who own real and personal property located at 12963 Kingsbridge Lane, Houston, TX 77077. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Brian Iversen is an individual and resident of Harris County, Texas, who owns real and personal property located at 814 Ivy Wall Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff James Jackson is an individual and resident of Harris County, Texas, who owns real and personal property located at 13123 Indian Creek Rd., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Shafiq Jadallah is an individual and resident of Harris County, Texas, who owns real and personal property located at 1318 Ambergate, Houston TX, 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and

decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Kenneth Kainer is an individual and resident of Harris County, Texas, who owns real and personal property located at 707 Bison St., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Oscar Karash and Rena Karash are individuals and residents of Harris County, Texas, who own real and personal property located at 9151 Brair Forest Dr., Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Stephen G. Kastensmidt and Michelle Bowers are individuals and residents of Harris County, Texas, who own real and personal property located at 12710 Victor Ln., Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Holly Kendall is an individual and resident of Harris County, Texas, who owns real and personal property located at 746 Bison Drive, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and

decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Brett Kennedy and Sonia Yi are individuals and residents of Harris County, Texas, who own real and personal property located at 10815 Riverview Dr., Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Mohammad Khansa is an individual and resident of Harris County, Texas, who owns real and personal property located at 806 Daria Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs James M. Killough and Gabrielle Killough are individuals and residents of Harris County, Texas, who own real and personal property located at 14834 Oak Bend Drive, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Gene Kim is an individual and resident of Harris County, Texas, who owns real and personal property located at 6 Woodstone St., Houston, TX  77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and

decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Barbara Joan King is an individual and resident of Harris County, Texas, who owns real and personal property located at 12640 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Davy Kong is an individual and resident of Harris County, Texas, who owns real and personal property located at 13123 Indian Creek Rd., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Soonhyeok Kook is an individual and resident of Harris County, Texas, who owns real and personal property located at 9073 Brair Forest Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Jan Kramer is an individual and resident of Harris County, Texas, who owns real and personal property located at 1407 Chardonnay Dr., Houston, TX 77077. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property;

and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Janice S. Kruse is an individual and resident of Harris County, Texas, who owns real and personal property located at 12601 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Andrew Levine and Corinna Levine are individuals and residents of Harris County, Texas, who own real and personal property located at 777 S Mayde Creek Dr. #162, Houston, TX 77079. Plaintiffs have suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff John Latrobe is an individual and resident of Harris County, Texas, who owns real and personal property located at 311 Thicket Ln., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Jeff Lawleyand Sue Lawley are individuals and residents of Harris County, Texas, who own real and personal property located at 14846 Bramblewood, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on

the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Don Le and Cindy Le are individuals and residents of Harris County, Texas, who own real and personal property located at 611 Crestbend Dr., Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Jonathan Joohgun Lee is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. Apt. 10, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jeongkwan Lee is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #64, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff A. Ross LeFevre is an individual and resident of Harris County, Texas, who own real and personal property located at 12609 Boheme, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and

decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Evan B. Leung is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Drive Unit 806, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jiamei Li is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr #101, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Wei Li is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr. #414, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Frank Lin and Hoang Lin are individuals and residents of Harris County, Texas, who own real and personal property located at 734 Bison Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the

property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Genaro Lopez is an individual and resident of Harris County, Texas, who owns real and personal property located at 750 Langwood Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Paula Lowe is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr. #801, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Lawrence Madigan is an individual and resident of Harris County, Texas, who owns real and personal property located at 14710 Bramblewood Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Elaina Marchani is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr. Unit 704, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the

property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Lorenzo Marquez is an individual and resident of Harris County, Texas, who owns real and personal property located at 210 Mignon, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Selma J. Mathis is an individual and resident of Harris County, Texas, who owns real and personal property located at 12628 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to (his/her) real and personal property, including personal vehicles and personal effects; damage to (his/her) his physical home, home improvements, and the structures on the property; and decreased market value of (his/her) real property resulting from the decision to appropriate (his/her) property as a flooding easement.

Plaintiff Brian McCulley is an individual and resident of Harris County, Texas, who owns real and personal property located at 14838 Oak Bend Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs James Mcleanand and Jeanne Mclean are individuals and residents of Harris County, Texas, who own real and personal property located at 11003 Riverview Dr., Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and

the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Michael McManus is an individual and resident of Harris County, Texas, who owns real and personal property located at 12652 Briar Patch Rd., Houston, Tx 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Pat McSpadden is an individual and resident of Harris County, Texas, who owns real and personal property located at 702 Langwood, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Melanie Mechura and Roger Mechura are individuals and residents of Harris County, Texas, who own real and personal property located at 1006 Arrow Hill Road, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiffs Katie Mehnert and Mark Mehnert are individuals and residents of Harris County, Texas, who own real and personal property located at 14907 Oak Bend Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and

the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Michelle Mechling is an individual and resident of Harris County, Texas, who owns real and personal property located at 777 S. Mayde Creek Dr. Apt 36, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Memorial Dr. Townhouse Condominium Association is a homeowners association, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Memorial Group LLC. is a limited liability company, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Michael Meraji is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #94, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Marcia Mink and Andre Landon are individuals and residents of Harris County, Texas, who own real and personal property located at 14523 Bramblewood Dr., Houston, TX

77049. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Anita Miller is an individual and resident of Harris County, Texas, who owns real and personal property located at 15200 Memorial Drive #3115, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Cheryl Miller is an individual and resident of Harris County, Texas, who owns real and personal property located at 602 Thistlewood Dr., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Anne Monty is an individual and resident of Harris County, Texas, who owns real and personal property located at 409 E. Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Anjanelle Moore is an individual and resident of Harris County, Texas, who owns real and personal property located at 714 Thistlewood Drive, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal

effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Nader Moussaand and Patricia Moussa are individuals and residents of Harris County, Texas, who own real and personal property located at 310 W. Sam Houston Parkway N., Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Bridgett Nabors is an individual and resident of Harris County, Texas, who owns real and personal property located at 748 Memorial Mews Unit D, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Mark Narro is an individual and resident of Harris County, Texas, who owns real and personal property located at 15105 Kimberly Ct., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Chris Nevling and Jessica Nevling are individuals and residents of Harris County, Texas, who own real and personal property located at 11003 Tupper Lake Dr., Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and

the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Dorothy Ng is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #31, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Steve Nguyen and Chi Nguyen are individuals and residents of Harris County, Texas, who own real and personal property located at 330 Electra Drive, Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Ross Nicholson is an individual and resident of Harris County, Texas, who owns real and personal property located at 403 Lakeside Estates, Houston, TX 77042. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Margret Norton is an individual and resident of Harris County, Texas, who owns real and personal property located at 755 Bison Drive, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and

decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Blanca Ortega is an individual and resident of Harris County, Texas, who owns real and personal property located at 457 Bendwood Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Karen Palfreyman is an individual and resident of Harris County, Texas, who owns real and personal property located at 751 Bison, Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Thierry Pareja is an individual and resident of Harris County, Texas, who owns real and personal property located at 446 E Fairharbor Ln., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Christopher Scott Parker is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Drive Unit 416, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the

structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff John D. Patton is an individual and resident of Harris County, Texas, who owns real and personal property located at 15743 Foxgate Rd., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Sum Pham is an individual and resident of Harris County, Texas, who owns real and personal property located at 12718 Old Oaks Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Phuong Pham is an individual and resident of Harris County, Texas, who owns real and personal property located at 840 North Eldridge Parkway #140, Houston, TX 77064. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs John F. Phillips and Celeste Phillips are individuals and residents of Harris County, Texas, who own real and personal property located at 14124 Cardinal Ln, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the

structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff George K. Ponnattu is an individual and resident of Harris County, Texas, who owns real and personal property located at 448 E. Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Thomas Pope is an individual and resident of Harris County, Texas, who owns real and personal property located at 777 S. Mayde Creek Dr. Apt 36, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Rahul Prakash is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Drive #66, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Li Qiang is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. # 38, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Julie A. Rausch is an individual and resident of Harris County, Texas, who owns real and personal property located at 461 Bendwood Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Thomas Richardson is an individual and resident of Harris County, Texas, who owns real and personal property located at 15107 Camelback Court, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Ian Roberts and Cristina Roberts are individuals and residents of Harris County, Texas, who own real and personal property located at 1118 Fleetwood Place Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Kenneth Robertson is an individual and resident of Harris County, Texas, who owns real and personal property located at 12613 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jose A. Rodriguez is an individual and resident of Harris County, Texas, who owns real and personal property located at 15518 Old Store Trail, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Ryan Rush is an individual and resident of Harris County, Texas, who owns real and personal property located at 750 Bison St., Houston, TX 77079; 726 Thistlewood Dr., Houston, TX 77079; 702 Thistlewood Dr., Houston, TX 77079; and 722 Thistlewood Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Robert Ryan is an individual and resident of Harris County, Texas, who owns real and personal property located at 9757 Pine Lake Drive, Apt. 209, Houston, TX 77055. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Daniel Sack is an individual and resident of Harris County, Texas, who owns real and personal property located at 14306 Kellywood Lane, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Shirley Sanders is an individual and resident of Harris County, Texas, who owns real and personal property located at 12610 Rip Van Winkle Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Steve Schares is an individual and resident of Harris County, Texas, who owns real and personal property located at 12602 Rip Van Winkle, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Janet C. Schmidt is an individual and resident of Harris County, Texas, who owns real and personal property located at 777 S. Mayde Creek Dr. Apt 255, Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Robert Schmitt and Nancy Schmitt are individuals and residents of Harris County, Texas, who own real and personal property located at 15571 Memorial Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and

the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Marian Schreiber is an individual and resident of Harris County, Texas, who owns real and personal property located at 12704 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Colleen Scott is an individual and resident of Harris County, Texas, who owns real and personal property located at 612 N Eldridge Pkwy., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Bal Sharma and Kamna Sharma are individuals and residents of Harris County, Texas, who own real and personal property located at 719 Marywood Chase, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Mohammad Ali Shenavari is an individual and resident of Harris County, Texas, who owns real and personal property located at 331 Isolde, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Yu Shi is an individual and resident of Harris County, Texas, who owns real and personal property located at 1010 Crossroads Dr., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Yan Jun Shiu is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Drive Unit 806, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Siberia Houston LNA LLC. is a limited liability company, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Christopher Dewitt Sims o/b/o George Edgar Sims is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Drive, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Ann Sinclair is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #63, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Elizabeth M. Skirving is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #65, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff James Skrapka and Andrea Skrapka are individuals and residents of Harris County, Texas, who own real and personal property located at 11002 Lakeside Forest Ln., Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Kathleen Stevens is an individual and resident of Harris County, Texas, who owns real and personal property located at 10714 Cranbrook Rd., Houston, TX 77042. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Joan Sturrock and Clay Sturrock are individuals and residents of Harris County, Texas, who own real and personal property located at 600 Wilcrest DR. #69, Houston, TX 77042. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Chungwon Suk is an individual and resident of Harris County, Texas, who owns real and personal property located at 935 N. Wilcrest Apt. 1013, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements; and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Ying Sun and Keng Tai are individuals and residents of Harris County, Texas, who own real and personal property located at 201 Vanderpool Ln # 126, Houston, TX 77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Kelli Mcdonald Sydow is an individual and resident of Harris County, Texas, who owns real and personal property located at 201 Vanderpool Ln #43, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs John Szallai and Veronica Szallai are individuals and residents of Harris County, Texas, who own real and personal property located at 14835 Oak Bend Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Daniel Bender Tallant is an individual and resident of Harris County, Texas, who owns real and personal property located at 723 Thistlewood Dr, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs David Tang and Kathryn Tang are individuals and residents of Harris County, Texas, who own real and personal property located at 14818 Bramblewood, Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Douglas Tasker is an individual and resident of Harris County, Texas, who owns real and personal property located at 415 E. Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Diane Tate is an individual and resident of Harris County, Texas, who owns real and personal property located at 452 Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Abulfazi Tehrani is an individual and resident of Harris County, Texas, who owns real and personal property located at 15123 Memorial Dr., Houston, TX 77079. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Amadou Thiam is an individual and resident of Harris County, Texas, who owns real and personal property located at 301 Wilcrest Dr. #3001, Houston, TX 77042. Plaintiff has suffered damages to personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs Jean-Marc Pietrzyk and Frederique Terk are individuals and residents of Harris County, Texas, who own real and personal property located at 15815 River Roads Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Dennis Thompson is an individual and resident of Harris County, Texas, who owns real and personal property located at 12 Knipp Road, Houston, TX 77024. Plaintiff has

suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Guangyi Tian is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. #42, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Thomas William Tommaney is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Drive No. 5, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Tuan Tran is an individual and resident of Harris County, Texas, who owns real and personal property located at 12207 Drakemill Dr., Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Xiaozhen Tu is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. #74, Houston, TX 77024 and 12633

Memorial Dr. #180, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Susan Van-Averbeke is an individual and resident of Harris County, Texas, who owns real and personal property located at 12737 Huntingwick, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Peter M. Viles is an individual and resident of Harris County, Texas, who owns real and personal property located at 723 Last Arrow Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jack Walker is an individual and resident of Harris County, Texas, who owns real and personal property located at 12034 Riverview Dr., Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Feng Wan is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #4, Houston, TX 77024. Plaintiff has

suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Jie Wang is an individual and resident of Harris County, Texas, who owns real and personal property located at 120 Gessner Road, Houston, TX 77024 and 201 Vanderpool Ln.#3, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Katherine Wenner is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #52, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Peter C. White is an individual and resident of Harris County, Texas, who owns real and personal property located at 1014 Crossroads Drive, Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Susie White is an individual and resident of Harris County, Texas, who owns real and personal property located at 335 Electra Dr., Houston, TX 77024. Plaintiff has suffered

damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Lijuan Wu is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. #103, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Han Xiong is an individual and resident of Harris County, Texas, who owns real and personal property located at 124 Gessner Rd., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Ni Yan is an individual and resident of Harris County, Texas, who owns real and personal property located at 55 Litchfiled Ln., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiffs Samuel Yanklelove and Dale Yankelove are individuals and residents of Harris County, Texas, who own real and personal property located at 12600 Boheme Dr., Houston, TX

77024. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Gunwoo Yook is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr. #602, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Marilyn Young is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme #709, Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Chung L. Yu is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Drive No. 68, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff James Zapata is an individual and resident of Harris County, Texas, who owns real and personal property located at 15103 Camelback Ct., Houston, TX 77079. Plaintiff has

suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Hwan Bae is an individual and resident of Harris County, Texas, who owns real and personal property located at 201 Vanderpool Ln., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Maria-Dolores Barquero-Perez is an individual and resident of Harris County, Texas, who owns real and personal property located at 12707 Boheme Dr., #413 Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff BCR Interest Inc., is limited partnership, formed in Texas and with its principal place of business in Harris County, Texas. Plaintiff has suffered damages to its real property, including decreased market value of their real property, and damage to personal property, resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Loreen Bilansky is an individual and resident of Harris County, Texas, who owns real and personal property located 12645 Rip Van Winkle., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property;

and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Blair Bundy is an individual and resident of Harris County, Texas, who owns real and personal property located at 417 E Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff William Chu is an individual and resident of Harris County, Texas, who owns real and personal property located at 12806 Boheme Dr., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Christopher L. Dolan is an individual and resident of Harris County, Texas, who owns real and personal property located at 14934 Chadbourne Dr., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Farboud Chris Ebrabimy is an individual and resident of Harris County, Texas, who owns real and personal property located at 4726 Post Oak Timber Dr. #62, Houston, TX 77056. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the

structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Yonggui Guo is an individual and resident of Harris County, Texas, who owns real and personal property located at 12633 Memorial Dr. #27, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Margaret M. Hauck is an individual and resident of Harris County, Texas, who owns real and personal property located 12751 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the decision to appropriate her property as a flooding easement.

Plaintiff Pravinda Jethwa is an individual and resident of Harris County, Texas, who owns real and personal property located at 218 Faust Ln., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the  decision to appropriate her property as a flooding easement.

Plaintiff Insuk Koo is an individual and resident of Harris County, Texas, who owns real and personal property located 102 Willowend Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and

decreased market value of her real property resulting from the  decision to appropriate her property as a flooding easement.

Plaintiff Kate H. Koo is an individual and resident of Harris County, Texas, who owns real and personal property located 12910 Figaro Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the  decision to appropriate her property as a flooding easement.

Plaintiff Michael P. Lynch is an individual and resident of Harris County, Texas, who owns real and personal property located at 777 S. Mayde Creek Dr. , Houston, TX 77079. Plaintiff has suffered damages to his personal property, including personal vehicles and personal effects and damage to improvements made to real property, resulting from the  decision to appropriate his property as a flooding easement.

Plaintiffs Torgeir Mantor and Grace Carter are individuals and residents of Harris County, Texas, who own real and personal property located at 14971 Bramblewood Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the  decision to appropriate their property as a flooding easement.

Plaintiff David Miller is an individual and resident of Harris County, Texas, who owns real and personal property located 10618 Shady River Dr., Houston, TX 77042. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Charles Murray is an individual and resident of Harris County, Texas, who owns real and personal property located at 12716 Huntingwick Dr., Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiffs George O'Connor and Karen O'Connor are individuals and residents of Harris County, Texas, who own real and personal property located at 1217 Saint John Woods St., Houston, TX 77077. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the decision to appropriate their property as a flooding easement.

Plaintiff Gordon B. Reid is an individual and resident of Harris County, Texas, who owns real and personal property located at 14131 Bluebird Ln., Houston, TX 77079. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the decision to appropriate his property as a flooding easement.

Plaintiff Deborah Salvo is an individual and resident of Harris County, Texas, who owns real and personal property located 10707 Riverview Dr., Houston, TX 77024. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property;

and decreased market value of her real property resulting from the  decision to appropriate her property as a flooding easement.

Plaintiff Roozbeh Sharif is an individual and resident of Harris County, Texas, who owns real and personal property located at 10703 Russett Dr., Houston, TX 77042. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the  decision to appropriate his property as a flooding easement.

Plaintiff Lawrence Smith is an individual and resident of Harris County, Texas, who owns real and personal property located at 12535 Westerley Ln., Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the  decision to appropriate his property as a flooding easement.

Plaintiffs David Sperry and Joan Sperry are individuals and residents of Harris County, Texas, who own real and personal property located 547 Kickerillo Dr., Houston, TX 77079. Plaintiffs have suffered damages to their real and personal property, including personal vehicles and personal effects; damage to their physical home, home improvements, and the structures on the property; and decreased market value of their real property resulting from the  decision to appropriate their property as a flooding easement.

Plaintiff Jeffrey Stevenson is an individual and resident of Harris County, Texas, who owns real and personal property located 12707 Boheme Dr. #406, Houston, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the  decision to appropriate his property as a flooding easement.

Plaintiff Darlene Walden is an individual and resident of Harris County, Texas, who owns real and personal property located at 411 East Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the  decision to appropriate her property as a flooding easement.

Plaintiff Feng Wan is an individual and resident of Harris County, Texas, who owns real and personal property located at 12625 Memorial Dr. #14, TX 77024. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property; and decreased market value of his real property resulting from the  decision to appropriate his property as a flooding easement.

Plaintiff Gail Watts is an individual and resident of Harris County, Texas, who owns real and personal property located 438 E Fair Harbor Ln., Houston, TX 77079. Plaintiff has suffered damages to her real and personal property, including personal vehicles and personal effects; damage to her physical home, home improvements, and the structures on the property; and decreased market value of her real property resulting from the  decision to appropriate her property as a flooding easement.

Plaintiff Andrew Wenger is an individual and resident of Harris County, Texas, who owns real and personal property located at 11754 Riverview Dr., Houston, TX 77077. Plaintiff has suffered damages to his real and personal property, including personal vehicles and personal effects; damage to his physical home, home improvements, and the structures on the property;

and decreased market value of his real property resulting from the  decision to appropriate his property as a flooding easement.

Defendant is the Harris County Flood Control District, and any state or local agency working under the auspices of the county government, all of whom may be serviced through the Executive Director of the Flood Control District, Russell Poppe, at 9900 Northwest Freeway, Houston, Texas 77002.

## II.     STATEMENT OF JURISDICTION

This Court has jurisdiction over this action as all events regarding this incident occurred in this County.  Plaintiffs are seeking greater than $500,000,000.

## III.    FACTS COMMON TO ALL CLAIMS ASSERTED

### A.     Harvey Makes Landfall

On August 25, 2017, Hurricane Harvey ("Harvey"), made landfall on the Texas Gulf Coast, bringing torrential rain which resulted in extensive flooding to the Houston, Texas area.

Over a four-day period, parts of Southeast Texas (including Houston) received over forty inches of rain and experienced catastrophic flooding that submerged thousands of homes.

However, despite Harvey's magnitude, Plaintiffs' property did not experience flooding or experienced minimal flooding during this time.

### B.     The Addicks and Barker Reservoir Systems

The Addicks and Barker Reservoirs are part of a flood control system on the west side of Houston, Texas.

The reservoirs' dams are owned by the U.S. Army Corps of Engineers ("the Corps") and were designed specifically to protect downtown Houston from catastrophic flooding, after a major flood inundated the City of Houston in 1935.  Despite the ownership by the Corps, the operation of the reservoirs is done in conjunction with the Harris County Flood Control District.

The reservoirs' dams protect Houston from floods by controlling the flow of water in the Buffalo Bayou, which is the largest waterway running through the City of Houston.

The reservoirs function as "dry reservoirs," meaning the dams stay open and water is allowed to flow freely until the area receives heavy rainfall.  Once the dam systems' flood gauges reach certain levels, the dams' floodgates close and they begin to fill to prevent the flow of uncontrollable water into Buffalo Bayou.

When Harvey arrived into the Houston area, the Addicks and Barker reservoirs and dam systems were in the middle of a $75 million renovation.

**C.**      **The Decision to Release Water from Reservoirs and Cause Flooding**

On August 28, 2017, at some point between midnight and 2:00 a.m., a decision was made by the Harris County Flood Control District to begin releasing water from both the Addicks and Barker reservoir systems and announced that thousands of properties would certainly experience flooding as a result of the release, with thousand more possible.  The Flood Control District knew its decision would cause flooding to neighborhoods along and near the Buffalo Bayou, which included Plaintiffs' homes and property.  The Harris County Flood Control District made the joint decision to release the water from the reservoirs with the Corps after the storm had passed.  The Harris County Flood Control District used its own analysis, along with its own engineers and other professionals, to come to this joint decision with the Corps to release the water from the reservoirs.  And Harris County benefited from this decision by the Harris County Flood Control District.  The Flood Control District's actions were designed to protect the Port of Houston, downtown Houston, Harris County owned properties, and the tax payers of Harris County overall - in order to serve the greater good.  Harris County Flood Control District approved all decisions made to release water and benefited from each of those decisions.

As both reservoir gates opened and released storm water into Buffalo Bayou, neighborhoods, buildings, homes, offices, and roadways that were not otherwise flooded from Harvey—including Plaintiffs' properties—became inundated with water.  The incoming water continued to rise throughout the night and over the course of the next several days.  Because of the rapid progression of the rising water, many people did not have time to pack up or salvage any belongings.   Ultimately, many had to be rescued by boat, taking along nothing but the clothes on their backs.

The Federal Emergency Management Agency ("FEMA") recommended that property owners immediately document flood damage and then identify what can be saved and what cannot.  FEMA also recommended that homeowners immediately strip homes of all furnishings and other items impacted by water, to rip up carpet, to remove the first four feet of drywall and insulation on the ground level and, if the water rose above four feet, to rip entire walls out.

Importantly, the Center for Disease Control ("CDC"), together with FEMA, the Environmental Protection Agency, the U.S. Department of Housing and Urban Development, and the National Institutes of Health, specifically recommend that flooded homes be completely dried out within 24 to 48 hours of water exposure in an effort to prevent hazardous mold growth.

The CDC also reported that "buildings wet for more than 48 hours will generally support visible and extensive mold growth and should be remediated, and excessive exposure to mold contaminated materials can cause adverse health effects in susceptible persons regardless of the type of mold or the extent of contamination."

After August 28, 2017, water continued to be released from the dams over the next several days and the waters continued to rise. Mandatory evacuation orders were ultimately issued, and properties remained underwater for several weeks to come.

Because of how the Flood Control District released water from both Addicks and Barker during Harvey, Plaintiffs' properties, which otherwise would not have flooded, suffered catastrophic flooding and water damage. The Flood Control District knew that Plaintiffs' properties would be flooded, but opened the dams in order to protect the "public good."

D.     **Plaintiffs' Experiences**

When Harvey first hit the Houston area, Plaintiffs' properties did not experience any, or minimal, flooding from Harvey rainfall.

Unfortunately, on August 28, 2017, in the middle of the night, the Flood Control District decided to release massive amounts of water from Addicks and Barker reservoirs, causing massive flooding of Plaintiffs' homes and property.  The Flood Control District knew that the Plaintiffs' properties would flood, and even contacted Centerpoint Energy to cut off Plaintiffs' power prior to the flooding.  Because the releases in the dark of night, many of the property owners had no advance notice that water was going to be released from the reservoirs and were completely caught off guard when they awoke to water rising at a dangerous rate of speed inside their homes.

On August 28, 2017, water released from the reservoirs began entering the inside of Plaintiffs' homes properties and continued to rise.  Plaintiffs, their families, and neighbors were forced to evacuate as soon as possible or else stay and risk dangerous rising water levels with high amounts of sewage, bacteria, and contamination.

Ultimately, the water rose to several feet inside each of Plaintiffs' properties. After the initial flooding, the properties remained flooded because of the continued releases by the Flood Control District. The floodwaters sat idle and did not recede for over a week. In fact, the contaminated waters remained inside of Plaintiffs' homes and Plaintiffs were unable to access

their properties or retrieve any personal belongings—or what was left of them—until several days afterwards.

Plaintiffs' properties are in a demolished state and are uninhabitable. Many of Plaintiffs' personal effects were completely destroyed and can never be recovered.  With respect to the physical structures and land, Plaintiffs must endure the anguish and costs of demolition, remediation, and rebuilding before they can live or use their properties again. Even after Plaintiffs' real properties are restored or rebuilt, the continued and long-term effects of mold, deterioration, and rot due to the unprecedented amount of time that floodwaters sat inside Plaintiffs' properties remain unknown.

## V.    CAUSE OF ACTION 1: Violation of the Takings Clause

Plaintiffs repeat the allegations of the preceding paragraphs as if fully set forth herein.

The Section 17 of Article 1 of the Texas Constitution prohibits the Government from taking private property for public use without just compensation.

Plaintiffs have a legally-protectable private property interest in their real and/or personal property.

Plaintiffs had distinct, reasonable, and investment-backed expectations that their properties would only be subject to flooding in line with historical flooding patterns established over the decades.

Plaintiffs' private properties would not have otherwise flooded but for the decision to discharge water from the Addicks and Barker reservoirs.

The decision to discharge water from the Addicks and Barker reservoirs was for public use. The Flood Control District, a governmental entity, knew or was substantially certain when it opened the flood gates that the Plaintiffs' properties would flood, and that, but for such action, Plaintiffs' properties would not have flooded.

This conduct constitutes a taking of Plaintiffs' properties because, from August 28, 2017, and continuing for days or weeks, water continued to be released from the reservoirs and Plaintiffs were unable to return to their homes, experienced substantial damage to their personal and real property, and Plaintiffs were and will be deprived of the use, occupancy, and enjoyment of their property.

As a direct result of the decision to discharge water from the Addicks and Barker reservoirs on August 28, 2017, Plaintiffs' private properties were flooded on and after August 28, 2017, which caused substantial damage to Plaintiffs' properties, including, but not limited to the following which must be justly compensated:

1. Physical damage and cost to repair or replace real property, home improvements, fixtures, structures, vehicles, personal effects, and more;

2. Diminution in the fair market value of the underlying land of Plaintiffs' properties, including the decreased market value to the real estate;

3. Compensation for the deprivation of the use, occupancy, and enjoyment of their private properties, both real and personal, as deemed just and fair by the Court;

4. Compensation for specific and extensive mold remediation, as appropriate under the circumstances, to prevent additional structural damage to the properties and/or resulting health hazards to those who live at the properties; and

5. Interest from August 28, 2017, through the time of payment.

Plaintiffs have not been compensated for temporary or permanent taking of their homes and other private property by the Flood Control District.

The Texas Constitution is intended to prevent the government from burdening individuals, such as Plaintiffs, with the costs of furthering public interest.

All losses sustained by Plaintiffs were reasonably foreseeable by the Government.

All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

Therefore, on Plaintiffs seek just compensation for the temporary and permanent takings of their real and personal property in an amount to be determined at trial.

**PRAYER**

Wherefore, Plaintiffs respectfully request that this Court enter an order:

1.   Declaring that Defendant's actions, as set out above, constitute a taking under the Texas Constitution;

2.   Awarding just compensation in an amount as outlined above or to be determined at trial, but no less than $500,000,000.00;

3.   Awarding Plaintiffs their reasonable litigation expenses and attorneys' fees;

4.   Awarding Plaintiffs pre- and post-judgment interest, to the extent allowable; and

5.   Awarding such other and further relief as justice and equity requires.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Peter K. Taaffe
Texas Bar No. 24003029
ptaaffe@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, TX 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

**ATTORNEYS FOR PLAINTIFFS**

Unofficial Copy Office of Marilyn Burgess District Clerk

5/15/2020 8:04 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 43000195
By: F Abdul-Bari
Filed: 5/15/2020 8:04 AM

## CAUSE NO. 2019-71232

| | | |
|---|---|---|
| MOHAMMAD SHENAVARI | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| V. | § | 269TH JUDICIAL DISTRICT |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |
| AND IDOLINA STOCKERT, | § | |
| *Defendants*. | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL APPRAISAL

**TO THE HONORABLE JUDGE OF SAID COURT**:

COMES NOW, MOHAMMAD SHENAVARI (herein after referred to as "Plaintiff" or "Mr. Shenavari"), by and through the undersigned counsel and files this PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL APPRAISAL. In support thereof, Plaintiff would respectfully show unto this Court as follows:

### INTRODUCTION AND PROCEDURAL HISTORY

1.      Plaintiff, Mr. Mohammad Shenavari, is an individual and owner of real property located at 331 Isolde Drive, Houston, Texas 77024, which is situated in Harris County, Texas (the "Property"). Plaintiff's Property sustained catastrophic damages as a result of Hurricane Harvey in August 2017.

2.      Shortly after Plaintiff discovered the damages to his Property, he reported the same to Defendant Allstate Vehicle and Property Insurance Company ("Allstate"). Thereafter, Defendant Allstate assigned the adjustment of the claim to Pilot Catastrophe Services, which then assigned the claim to insurance claims adjuster Idolina Stockert ("Stockert").

3.     On September 16, 2019, Plaintiff sent a demand letter to Defendants named herein in compliance with Texas Insurance Code §§541.154 and 542A.003.  These defendants include the insurance carrier with which Plaintiff had a policy (Defendant Allstate Vehicle and Property Insurance Company), and the individual adjuster who worked on the claim (Defendant Idolina Stockert).

4.     On September 30, 2019, Plaintiff filed the instant lawsuit in 269th Judicial District Court of Harris County, Texas.

5.     On October 22, 2019, Defendants Allstate and Stockert filed their *Original Answer and Requests for Disclosure*, within the 269th Judicial District Court of Harris County, Texas.

6.     Also, on October 22, 2019, Defendant Allstate filed a document with the 269th Judicial District Court of Harris County, Texas, wherein Defendant Allstate purported to elect liability for Defendant Stockert, pursuant to Texas Insurance Code §542.006(a).

7.     On October 24, 2019, Defendants filed their *Notice of Removal*, with this honorable Court, wherein Defendant admits and acknowledges that Defendant Stockert is a resident of Texas.

8.     On October 28, 2019, Plaintiff filed his Motion to Remand and requested that the United States District Court for the Southern District of Texas remand this matter back to Harris County.

9.     On February 4, 2020, the United States District Court for the Southern District of Texas held a hearing on Plaintiff's Motion to Remand.

10.    On March 23, 2020, the United States District Court for the Southern District of Texas Ordered that this matter be remanded back to this honorable Court

11.    On May 6, 2020, Plaintiff filed his Motion to Compel Appraisal with this honorable Court.

12.    On May 14, 2020, at 5:06 p.m., Defendant filed its Response to Plaintiff's Motion to Compel Appraisal, along with various non-relevant documents and argument.

## SUMMARY OF THE ARGUMENT

13.     This honorable Court should grant Plaintiff's Motion to Comply Appraisal without restriction.

14.     On December 16, 2019, Plaintiff invoked the appraisal process to resolve the disagreement as to the amount of loss, pursuant to his insurance policy with Defendant.

15.     Under the terms of the insurance policy, Defendant was **required** to respond and designate an appraiser within 20 days (emphasis added).

16.     Defendant failed to respond to Plaintiff's invocation of appraisal within 20 days.

17.     On January 14, 2020, pursuant to local professional standards, Plaintiff counsel contacted Defendant's counsel to see if Defendant objected to Plaintiff's invocation of appraisal.  Plaintiff's counsel was told that Defendant refused to participate in the appraisal process, despite the contractual requirement.

18.     On May 6, 2020, Plaintiff filed his Motion to Compel Appraisal before this honorable Court.[1]

19.     On May 14, 2020, at 5:06 p.m., Defendant filed its response to Plaintiff's Motion to Compel Appraisal.

20.     This honorable Court may safely rely upon the substantive reasons for granting Plaintiff's Motion to Compel Appraisal.

### B.     APPRAISAL IS REQUIRED

21.     Appraisal clauses, commonly found in homeowners, automobile owners, and property policies in Texas, provide a means to resolve disputes amount the amount of loss for a covered

---

[1] On January 15, 2020, Plaintiff filed his Motion to Compel Appraisal with the United States District Court for the Southern District of Texas, however before ruling on the Motion, The United States District Court granted Plaintiff's Motion to Remand.

claim.[2] Appraisals can provide a less expensive, more efficient alternative to litigation, and it was previously held that they "should generally go forward without preemptive intervention by the Courts."[3]

22.     "The Texas Supreme Court [has] enunciated a strong policy in favor of enforcing appraisal clauses in insurance contracts . . . ."[4] As recognized by the Texas Supreme Court, "appraisals can provide a less expensive, more efficient alternative to litigation."[5]  "An appraisal clause 'binds the parties to have the extend or amount of the loss determined in a particular way."[6]

23.     The purpose of appraisal is to "decide the 'amount of loss.' Not to construe the policy or decide whether the insurer should pay."[7]  "Unless the amount of loss will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts."[8]

24.     Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision.[9]  "While trial courts have some discretion as to the timing of an appraisal, they have no discretion to ignore a valid appraisal clause entirely".[10]  Parties have the right to mandamus relief to enforce the

---

[2] *State Farm Lloyds v. Johnson*, 290 S.W. 3d, 886, 888 (Tex. 2009).

[3] *Id*. at 895.

[4] *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*, No. H-09-1736, 2010 U.S. Dist. LEXIS 6295, at *9 (S.D. Tex. Jan. 27, 2010) (citing *State Farm Lloyds v. Johnson*, 290, S.W.3d 886, 888-89, 895 (Tex. 2009)).

[5] *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011).

[6] *Johnson*, 290 S.W.3d at 888-89 (quoting *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)); *see also Lundstrum v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.-Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."

[7] *State Farm Lloyds v. Johnson*, 290 S.W.3d at 890.

[8] *Id.* at 895; *see also Dike v. Valley Forge Ins. Co.*, 797 F. Supp 2d 777 (S.D. Tex. 2011); *In re Public Service Mutual Ins. Co.*, No. 03-13-00003-CV, 2013 Tex. App. LEXIS 1757, * 7 (Tex. App. – Austin Feb. 21, 2013, no pet.); *Boone v. Safeco Ins. Co.*, No. H-09-1613, 2010 U.S. Dist. LEXIS 55281, *20-21 (S.D. Tex. June 7, 2010).

[9] *Scottish Union & Nat'l Ins. Co. v Clancy*, 18 S.W. 439, 440 (Tex. 1892).

[10] *Johnson*, 290 S.W.3d at 888.

appraisal clause because denying the appraisal would vitiate a parties right under the contract.[11] Courts in Texas have routinely held that a trial court's refusal to compel appraisal is reversible error upon mandamus review.[12]

1.    PLAINTIFF DID NOT WAIVE THE RIGHT TO INVOKE APPRAISAL

25.    In response to Plaintiff's proper written demand for appraisal, dated December 9, 2019, Defendant attempts to argue that Plaintiff waived the right to invoke appraisal, however, Defendant cannot point to a deadline for waiving appraisal, as set forth within the four corners of the insurance policy, because the appraisal clause, does not put forth a required timeframe for demanding appraisal, nor does it put any restriction on invoking appraisal after a suit has been filed[13].

26.    Instead of focusing on the contract itself, Defendant attempts to argue that Plaintiff waived its right to invoke appraisal through his actions.  To show waiver, a party must first show that that the requesting party "intentionally relinquished a known right" or conduct "inconsistent with the claiming the right of appraisal."[14]  The Court noted that the party reserved rights under the policy, and that the policy required any waiver or change of any policy provision to be in writing.  At no time did Plaintiff waive its right to appraisal in writing or take any action inconsistent with claiming the right of appraisal. In that Plaintiff secured an independent property damage estimate

---

[11] *In re Universal Underwriters*, 345 S.W.3d at 412 (citing *In re Allstate Cty., Mut. Co.*, 85 S.W. 3d at 196).

[12] *See, e.g., In re Universal Underwriters*, 345 S.W.3d at 412) ("We conditionally grant the writ of mandamus and direct the trial court to grant [the] motion to compel appraisal"); *In re Allstate Cty. Mut. Ins. Co.*, No. 03-13-00003-CV, 2013 Tex. App. LEXIS 1757, at *7 (Tex. App. – Austin 2013, no pet.) ("Having concluded that the trial court's denial of Relator's motion to compel appraisal was an abuse of its discretion . . . we conditionally grant the petition for writ of mandamus as to the appraisal"); *In re GuideOne Mut. Ins. Co.*, No. 09-12-00581-CV, 2013 Tex. App. LEXIS 599, at *3 (Tex. App. – Beaumont Jan. 24, 2013) (orig. proceeding) ("Because the appraisal is related to GuideOne's defense, the trial court abused its discretion in denying its motion to compel.") (citations omitted); *In re Ranchers & Farmers' Mut. Ins. Co.*, No. 09-11-00054-CV, 2011 Tex. App. LEXIS 3146, at *3 (Tex. App. Beaumont April 28, 2011) (orig. proceeding) ("We hold that the trial court abused its discretion by denying the motion to compel an appraisal.").

[13] *See* Plaintiff's Motion to Compel Appraisal, dated January 15, 2020, Exhibit 3 – Insurance policy.

[14] *In re Liberty Ins. Corp.*, No. 01-15-00956-CV, 2016 Tex. App. LEXIS 6161, at *14 (Tex. App. – Houston [1st Dist.] June 9, 2016, orig. proceeding) (citing *In re Universal Underwriters*, 345 S.W.3d at 407).

and submitted it to Defendant for consideration.  However, Defendant completely ignored the submission of the independent property damage assessment.  Plaintiff submitted a Notice letter to Defendant, pursuant to the Texas Insurance Code, however, Defendant ignored the Notice letter. Plaintiff submitted his written demand for appraisal and designation of appraiser; however, Defendant is refusing to participate in appraisal.

27.     Any argument of waiver by delay is not measured from the point in time it appears that there is a disagreement from the amount of loss, but from the point of impasse:

> Once the parties have reached an impasse – that is, a mutual understanding that neither will negotiate further – appraisal must be invoked within a reasonable amount of time.[15]

28.     In the case of *In re Universal Underwriters of Texas Insurance Company,* Realtor is instructive.[16]  In that case, the Court noted that "in deciding whether a demand was appraisal was made within a reasonable amount of time, and consequently has not waived even if suit was filed before the demand was made, Courts have considered the timeliness of the demand in light of the circumstances as they existed at the time the demand was made. Pertinent circumstances include (1) the time between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand; and (2) whether there would be any prejudice to the other party resulting from the delay in demanding appraisal.[17] In order to show that an impasse was reached, and that any failure to demand appraisal within a reasonable time prejudice the opposing party.[18]  The Texas Supreme Court held that demanding appraisal approximately one month after the filing of suit was not unreasonable even though the parties disagreed on the

---

[15] *In re Universal Underwriters*, 345 S.W. 3d at 410 (Tex. 2011)
[16] *Id.*
[17] *Id*. at 409.
[18] *Id*. at 412.

amount of loss for a much longer period.[19] Merely filing suit does not inherently signal that the parties have mutually concluded that all settlement negotiations would be futile.[20]

2.    DEFENDANT ALLSTATE OFTEN INVOKES APPRAISAL DURING LITIGATION

29.    Parties frequently invoke appraisal after litigation has commenced, and courts enforce the appraisal clauses in those situations.[21] Indeed, Defendant Allstate often invokes appraisal during litigation as a means of resolving and/or halting ongoing litigation and discovery.

30.    For instance, in *Maria Serrano et al. v. Allstate Vehicle and Property Insurance Company et al.*, Defendant Allstate invoked appraisal on May 15, 2018, which was almost nineteen (19) months after the cause of action was filed in the Bexar County Court.[22]  During such time, the parties had engaged in written discovery and provided depositions of the parties.  Defendant compelled appraisal over Plaintiff's objections, but ultimately the Court granted Allstate's Motion and compelled Plaintiff to participate in the appraisal process, which ultimately led to the resolution of the amount of loss, and subsequently the entire cause of action.[23]

---

[19] *Id.* at *410-11.
[20] *In re Ooida Risk Retention Group, Inc.*, 475 S.W.3d 905, 911 (Tex. App. – Fort Worth 2015, orig. proceeding).
[21] *See* e.g., *Marchbanks v. Liberty Ins. Corp.*, No. 14-17-00004-CV, 2018 Tex. App. LEXIS 6692, *2 (Tex. App.—Houston [14th Dist.] August 23, 2018, pet. filed) (appraisal invoked five months after suit filed); *In re GuideOne Nat'l Ins. Co.*, No. 07-15-00281-CV, 2015 Tex. App. LEXIS 10138 *2-3 (Tex. App.—Amarillo September 29, 2015, orig. proceeding) (mem. op.) (appraisal invoked eight months after suit filed); *In re Century Sur. Co.*, No. 07-15-00386-CV, 2015 Tex. App. LEXIS 11272 *1-5 (Tex. App.—Amarillo November 2, 2015, orig. proceeding) (mem. op.) (appraisal invoked 15 months after suit filed); *Natl' Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 842 (Tex. App.—Houston [14th Dist.], pet. filed) (appraisal invoked forty-one months after suit filed); *In re GuideOne Mut. Ins. Co.*, No. 09-12-00581-CV, 2013 WL 257371, at *1 (Tex. App. – Beaumont Jan. 24, 2013) (orig. proceeding) (concluding no waiver where insurer waited for four years after the commencement of the suit to invoke appraisal).
[22] *Maria Serrano et al v. Allstate Vehicle and Property Insurance Company et al.*; Cause No. 2016CI18353; In the 57th Judicial District Court of Bexar County, Texas.
[23] *See* Plaintiff's Exhibit 1 – Order, dated June 29, 2018.

31.     In the case of *Terry Murphy v. Allstate Vehicle and Property Insurance Company et al.*, Allstate invoked the appraisal process, and again, the Court granted Allstate's Motion to Compel Appraisal over the insured's objection.[24]

32.     Even if Defendant could show an unreasonable delay after an impasse (which it cannot), Defendant must also prove that any delay was prejudicial. The Texas Supreme Court has explained that "it is difficult to see how prejudice could ever be shown then the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can not avoid prejudice by demanding an appraisal itself.[25]  Like the policy at issue in *Universal Underwriters*, the Policy provided both parties the opportunity to request appraisal, and there is no evidence that Plaintiff ever resisted or opposed a request for appraisal from Defendant. Accordingly, Defendant can not prove prejudice by an alleged undue delay since the Policy provided it an opportunity to invoke appraisal clause at an earlier stage.

33.     The Texas Supreme Court placed a very high burden on the party seeking to establish prejudice, noting the difficulty of ever establishing it in a situation such as the current one when both sides can invoke appraisal under the terms of the policy. [26]

34.     Indeed, Defendant could have invoked appraisal itself after a failure of the parties to agree on the amount of loss, instead of ignoring Plaintiff's Notice letter and incurring the expenses associated with litigation.  However, Defendant's litigation costs do not give rise to prejudice.[27]

---

[24] *See Terry Murphy v. Allstate Vehicle and Property Insurance Company et al.*; Cause No. 2015-19233; In the 295th Judicial District Court of Harris County, Texas. *See* Plaintiff's Exhibit 2 – Order, dated September 14, 2015.
[25] *Id.* at 412.
[26] *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 412 (Tex. 2011) ("[I]t is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself.")
[27] *In re Cypress Texas Lloyds*, 419 S.W.3d 443, 445 (Tex. App. – Amarillo 2015, orig. proceeding) (holding litigation expenses were not prejudicial as the insured "initiated litigation rather than first pursuing appraisal, participated in discovery, and otherwise prepared for trial.")

Further, if litigation costs or the right to mediation could establish prejudice, appraisal would be automatically foreclosed on the filing of every suit, a result that would be plainly contravene Texas Supreme Court precedent and the strong public policy it has maintained in enforcing appraisal clauses.[28]

### 3.    The Appraisal Panel Has Ample Evidence to Consider

35.    Defendant has alleged that it is impossible to determine the segregate the damages caused by flood from those damages caused by wind.  However, this argument fails as well.  There is absolutely no doubt that the appraisal panel could determine which damages were caused by flood and which damages were caused by the winds associated with Hurricane Harvey.

36.    Plaintiff photographed the water damage to the ceilings in his home and provided Defendant Allstate with the same.[29]  Plaintiff's photographs demonstrate that the flood water did not touch and/or damage the ceilings in his Property.[30]

37.    On September 21, 2017, Defendant Stockert inspected Plaintiff's Property and photographed much of the damages thereto, including many photographs of Plaintiff's composition shingle roofs and the temporary tarpaulins installed thereon.[31]   Additionally, Defendant Stockert noted that the water line was five (5) feet up the wall, as noted in her photograph number thirty-one (31). Defendant Stockert even photographed the wind-blown turbine vent and the wind damaged ridge cap, in photographs thirty-nine (39) and forty (40). However, despite these photographs, Defendant Allstate failed to tender any insurance benefits for

---

[28] *Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 412; *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888-89 (Tex. 2009).
[29] *See* Plaintiff's Exhibit No. 3 - Plaintiff's photographs.
[30] *Id.*
[31] *See* Plaintiff's Exhibit No. 4 - Stockert's photographs, dated September 21, 2017.

wind damage to Plaintiff's roof or roofing components, or the interior water damages to Plaintiff's ceilings.

38.     Indeed, Defendant Stockert's property damage estimate noted that the flood damages only extended two (2) feet up Plaintiff's wall, as evidenced by her estimate, dated January 1, 2018.[32]

39.     As the parties have ample photographic evidence of the damage to Plaintiff's Property, there absolutely no reason that the parties could not submit this disagreement as to the amount of loss, caused by winds related to Hurricane Harvey to an appraisal panel for determination.

4.     DEFENDANT'S ARGUMENT OF FLOODING AND SBA LOANS ARE IRRELEVANT

40.     Defendant Allstate brings forth these irrelevant issues in an attempt to create confusion and obfuscate the facts regarding appraisal.

41.     Had Defendant Allstate not attempted to turn a windstorm claim (i.e. Hurricane or Tropical Cyclone claim) into a simple "sewer back-up" claim, in an attempt to shield itself from full liability, this case would not have been filed.   However, despite Stockert's documentation and photographs, Defendant Allstate inappropriately classified Plaintiff's loss and inappropriately classified Plaintiff's loss.

42.     Had Defendant Allstate accepted the rightful and full liability for the Policy, Plaintiff would not have needed to beg the United States Government for a SBA loan.

C.     CONCLUSION

43.     As set forth above, Plaintiff submitted his property damage claim to Defendant Allstate related to the damages he sustained as a result of Hurricane Harvey.

44.     Defendant acknowledged receipt of the property damage claim and photographed the wind and water damages to Plaintiff's Property.

---

[32] *See* Plaintiff's Exhibit No. 5 - Stockert's estimate, dated January 1, 2018.

45.     Plaintiff invoked the appraisal process to resolve the dispute as to the amount of loss, pursuant to the insurance contract/policy.

46.     Appraisal is mandatory once invoked, as set forth in the contract/policy and applicable case law.

### D.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Mohammad Shenavari respectfully prays that this Court grant PLAINTIFF'S MOTION TO COMPEL APPRAISAL, award Plaintiff attorney's fees incurred for this Motion and Reply, and order all further relief, either at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

CHRISTOFFEL LAW GROUP, PLLC

By:     /s/ David A. Christoffel
        David A. Christoffel
        Texas State Bar No.: 24065044
        Christoffellawgroup@gmail.com
        3027 Marina Bay Drive, Suite 230
        League City, Texas 77573
        Telephone: (281) 429-8402
        Facsimile: (281) 429-8403

        *ATTORNEY FOR PLAINTIFF*
        *MOHAMMAD SHENAVARI*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the below counsel of record via the Ee-filing system on this 15th day of May 2020 and in accordance with the Texas Rules of Civil Procedure.

SUSAN L. FLORENCE & ASSOCIATES
Attn.: Ms. Kimberly N. Blum, Esq.
811 Louisiana, Suite 2400
Houston, Texas 77002

***ATTORNEY FOR DEFENDANT***
***ALLSTATE VEHICLE AND PROPERTY***
***INSURANCE COMPANY***

/s/ David A. Christoffel
David A. Christoffel

# PLAINTIFF'S EXHIBIT NO. 1

Unofficial Copy Office of Marilyn Burgess District Clerk

JUDGE'S NOTES

2016CI18353 -P00018

Cause Number: 2016CI18353          Court: 057          Date/Time: 06/29/2018 08:30AM
                                   Setting Court: 109

Style: MARIA SERRANO ET AL VS. ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ET

**Attorney(s) For Case**

ANDRES ARGUELLO
PHILIP BRODERICK
MICAL WHITEMAN — Plnt.
281-402-3534

NISHI KOTHARI
ROGER HIGGINS
Ashley Stainton Dft.
214-871-8509

Type of Motion or Application: NON-JURY SETTING ON M/T COMPEL & TO ABATE

AGREED ORDER _____ RECORD TAKEN _____                    RH

INTERPRETER _____ RESET DATE_____

                                                    MARY HELEN VARGAS
                                                    224TH OFFICIAL COURT REPORTER

DATE OF NOTES _____     JUDGE INITIALS _____
                                                    mvargas@bexar.org

Unofficial Copy Office of Marilyn Burgess District Clerk

Allstate's motion to Compel appraisal
is granted. Case is abated until
20 days after completion of appraisal.

Pl. to comply w/ appraisal provision w/in 10
days. Order. Allstate to draft
+ circulate order for appraisal as to
form.

# PLAINTIFF'S EXHIBIT NO. 2

Unofficial Copy Office of Marilyn Burgess District Clerk



P-1
CPROK

**FILED**
Chris Daniel
District Clerk

SEP 1 4 2015

CAUSE NO. 2015-19233

| | | |
|---|---|---|
| TERRY MURPHY, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |
| AND ANDREW SINGELTARY, | § | |
| *Defendants* | § | 295th **JUDICIAL DISTRICT** |

## ORDER

Came on to be heard Defendants' Motion to Compel Appraisal.   Upon

consideration, the Court GRANTS Defendants' Motion to Compel Appraisal.

Signed this 14th day of September, 2015.

SEP 1 4 2015

*Caroline Baker*

Judge Presiding

Unofficial Copy Office of Marilyn Burgess District Clerk

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

# PLAINTIFF'S EXHIBIT NO. 3

Unofficial Copy Office of Marilyn Burgess District Clerk



Unofficial Copy Office of Marilyn Burgess District C...



Unofficial Copy Office of Marilyn Burgess District Clerk

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0851



Unofficial Copy Office of Marilyn Burgess District Clerk

Unofficial Copy Office of Marilyn Burgess District Clerk

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0853

# PLAINTIFF'S EXHIBIT NO. 4

Unofficial Copy Office of Marilyn Burgess District Clerk

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292



**29-993027_28F5A**

Date Taken: 9/21/2017

Taken By:     Idolina Stockert

tarps on roof



**30-993094_59EE5**

Date Taken: 9/21/2017

Taken By:     Idolina Stockert

tarp

# Photo Sheet

Insured:      MOHAMMAD SHENAVARI

Claim #:      0472496529

Policy #:     000829582292



**31-993162_7D50E**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

5 ft of water in entire home



**32-993278_96C77**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:     000829582292



**33-993283_B70B3**

Date Taken: 9/21/2017

Taken By:     Idolina Stockert



**34-993298_15B58**

Date Taken: 9/21/2017

Taken By:     Idolina Stockert

# Photo Sheet

Insured:      MOHAMMAD SHENAVARI

Claim #:      0472496529

Policy #:     000829582292



**35-993327_E4BF7**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert



**36-993336_A44D0**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

| | |
|---|---|
| Insured: | MOHAMMAD SHENAVARI |
| Claim #: | 0472496529 |
| Policy #: | 000829582292 |



**37-993342_20353**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert



**38-993358_20378**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured:    MOHAMMAD SHENAVARI

Claim #:    0472496529

Policy #:    000829582292



**39-993417_8D494**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert



**40-993427_7DF55**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured: MOHAMMAD SHENAVARI

Claim #: 0472496529

Policy #: 000829582292



**41-993435_1DAEF**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert



**42-993455_B12A2**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:     000829582292



**43-993733_06065**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert



**44-993815_3C4B6**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured:    MOHAMMAD SHENAVARI

Claim #:    0472496529

Policy #:    000829582292



**45-993830_315FD**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert



**46-993838_AF038**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured:      MOHAMMAD SHENAVARI

Claim #:      0472496529

Policy #:     000829582292



**47-993859_686DA**

Date Taken: 9/21/2017

Taken By:     Idolina Stockert



**48-993978_0680F**

Date Taken: 9/21/2017

Taken By:     Idolina Stockert

# Photo Sheet

Insured:        MOHAMMAD SHENAVARI

Claim #:        0472496529

Policy #:       000829582292



**49-994188_9E4DC**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

roof on garage drooping



**50-994200_87847**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

# Photo Sheet

Insured: MOHAMMAD SHENAVARI

Claim #: 0472496529

Policy #: 000829582292



**51-994227_67FD0**

Date Taken: 9/21/2017

Taken By: Idolina Stockert

well is moving away and separating in garage



**52-994238_5BE96**

Date Taken: 9/21/2017

Taken By: Idolina Stockert

# Photo Sheet

| | |
|---|---|
| Insured: | MOHAMMAD SHENAVARI |
| Claim #: | 0472496529 |
| Policy #: | 000829582292 |



**53-994252_5A144**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

all plants on the side of the house my garage right side



**54-994269_AC4EC**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

right side of house from the front

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:     000829582292



**55-995926_176E8**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

roof side view and window from front
left side missing shingles broken window



**56-995929_69F35**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

hole in roof from missing shingles

# Photo Sheet

| | |
|---|---|
| Insured: | MOHAMMAD SHENAVARI |
| Claim #: | 0472496529 |
| Policy #: | 000829582292 |



**25-992926_CD635**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

plants and small trees



**26-992943_D785A**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

hole in roof

# Photo Sheet

Insured:    MOHAMMAD SHENAVARI

Claim #:    0472496529

Policy #:    000829582292



**27-993003_C2A4A**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

vent blown off hole in ceiling



**28-993005_DF975**

Date Taken: 9/21/2017

Taken By:    Idolina Stockert

vent in  living room

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292



**91-IMG_2868**

Date Taken: 9/29/2017



**92-IMG_2869**

Date Taken: 9/29/2017

# Photo Sheet

Insured:      MOHAMMAD SHENAVARI

Claim #:      0472496529

Policy #:     000829582292



**93-IMG_2870**

Date Taken: 9/29/2017



**94-IMG_2871**

Date Taken: 9/29/2017

# Photo Sheet

| | |
|---|---|
| Insured: | MOHAMMAD SHENAVARI |
| Claim #: | 0472496529 |
| Policy #: | 000829582292 |



**96-IMG_2873**

Date Taken: 9/29/2017



**97-IMG_2874**

Date Taken: 9/29/2017

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292



**98-IMG_2875**

Date Taken: 9/29/2017



**99-IMG_2876**

Date Taken: 9/29/2017

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292



**100-IMG_2877**

Date Taken: 9/29/2017



**101-IMG_2878**

Date Taken: 9/29/2017

# Photo Sheet

| | |
|---|---|
| Insured: | MOHAMMAD SHENAVARI |
| Claim #: | 0472496529 |
| Policy #: | 000829582292 |



**102-IMG_2879**

Date Taken: 9/29/2017



**103-IMG_2880**

Date Taken: 9/29/2017

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292




**104-IMG_2881**

Date Taken: 9/29/2017




**105-IMG_2882**

Date Taken: 9/29/2017



# Photo Sheet

| | |
|---|---|
| Insured: | MOHAMMAD SHENAVARI |
| Claim #: | 0472496529 |
| Policy #: | 000829582292 |



**107-IMG_2884**

Date Taken: 9/29/2017



**108-IMG_2885**

Date Taken: 9/29/2017

# Photo Sheet



Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292



**109-IMG_2886**

Date Taken: 9/29/2017



**110-IMG_2887**

Date Taken: 9/29/2017

# Photo Sheet

Insured:      MOHAMMAD SHENAVARI

Claim #:      0472496529

Policy #:     000829582292



**111-IMG_2888**

Date Taken: 9/29/2017

**71-IMG_2848**

Date Taken:

# Photo Sheet

Insured:     MOHAMMAD SHENAVARI

Claim #:     0472496529

Policy #:    000829582292



**112-IMG_2889**

Date Taken: 9/29/2017

**81-IMG_2858**

Date Taken:

5/15/2020 8:04:23 AM
Marilyn Burgess District Clerk
Harris County
Envelope No: 43000195
By: ABDUL-BARI, FATIMAH
Filed: 5/15/2020 8:04:23 AM

# PLAINTIFF'S EXHIBIT NO. 5

Unofficial Copy Office of Marilyn Burgess District Clerk

| | | | | |
|---|---|---|---|---|
| Insured: | MOHAMMAD SHENAVARI | | Cell: | (713) 820-3305 |
| Property: | 331 ISOLDE DR | | Cellular: | (713) 820-3305 |
| | HOUSTON, TX 77024-4722 | | E-mail: | MSHENAVARI@YAHOO.COM |
| Home: | 331 ISOLDE DR | | | |
| | HOUSTON, TX 77024-4722 | | | |

| | | | | |
|---|---|---|---|---|
| Claim Rep.: | Idolina Stockert | | Business: | (800) 000-0000 |
| Estimator: | Idolina Stockert | | Business: | (800) 000-0000 |

**Claim Number:** 0472496529       **Policy Number:** 000829582292       **Type of Loss:** ALL OTHER PERIL NOT ENUMERATED

| | | | |
|---|---|---|---|
| Date Contacted: | 9/20/2017 10:10 AM | | |
| Date of Loss: | 8/27/2017 12:00 PM | Date Received: | 8/29/2017 3:31 PM |
| Date Inspected: | 9/21/2017 11:00 AM | Date Entered: | 9/14/2017 11:06 PM |
| Date Est. Completed: | 1/1/2018 3:46 PM | | |

| | |
|---|---|
| Price List: | TXHO8X_SEP17 |
| | Restoration/Service/Remodel |
| Estimate: | MOHAMMAD_SHENAVARI |

Allstate is dedicated to providing you with outstanding service throughout the claim-handling process.  If you have any questions regarding this estimate, or if there are differences with the estimate provided by your repair person of choice, or if additional damage is found during the repair process, please contact us at (800) 000-0000.
Thank you,
Idolina Stockert

MOHAMMAD_SHENAVARI                                          1/1/2018          Page: 1

**MOHAMMAD_SHENAVARI**

**SKETCH1**

**Main Level**



**Guest Room**                                                                                                                    **Height: 8'**

409.59 SF Walls                                            163.74 SF Ceiling
573.32 SF Walls & Ceiling                          163.74 SF Floor
18.19 SY Flooring                                        51.20 LF Floor Perimeter
51.20 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 1. Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |
| 2. Water extraction from carpeted floor - Category 3 water | 163.74 SF | 1.27 | 207.95 | 0/NA | Avg. | 0% | (0.00) | 207.95 |
| 3. Tear out wet non-salvageable carpet, cut & bag for disp. | 163.74 SF | 0.48 | 78.60 | 0/NA | Avg. | NA | (0.00) | 78.60 |
| 4. Tear out wet carpet pad and bag for disposal | 163.74 SF | 0.45 | 73.68 | 0/NA | Avg. | NA | (0.00) | 73.68 |
| 5. Tear out baseboard | 51.20 LF | 0.39 | 19.97 | 0/NA | Avg. | NA | (0.00) | 19.97 |
| 6. Apply anti-microbial agent to the floor | 163.74 SF | 0.21 | 34.39 | 0/NA | Avg. | 0% | (0.00) | 34.39 |
| 7. R&R 1/2" - drywall per LF - up to 2' tall | 51.20 LF | 9.58 | 490.50 | 0/150 yrs | Avg. | 0% | (0.00) | 490.50 |
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install. Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 8. R&R Batt insulation - 6" - R19 - unfaced batt | 102.40 SF | 1.16 | 118.78 | 0/150 yrs | Avg. | 0% | (0.00) | 118.78 |
| 9. Seal/prime then paint the walls twice (3 coats) | 409.59 SF | 1.03 | 421.88 | 0/15 yrs | Avg. | 0% | (0.00) | 421.88 |
| 10. Baseboard - 2 1/4" | 51.20 LF | 2.31 | 118.27 | 0/150 yrs | Avg. | 0% | (0.00) | 118.27 |
| 11. Paint baseboard - two coats | 51.20 LF | 1.13 | 57.86 | 0/15 yrs | Avg. | 0% | (0.00) | 57.86 |
| 12. R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs | Avg. | 0% | (0.00) | 170.25 |
| Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor. Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle. | | | | | | | | |
| 13. Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA | Avg. | 0% | (0.00) | 18.77 |
| 14. Carpet pad | 163.74 SF | 0.54 | 88.42 | 0/10 yrs | Avg. | 0% | (0.00) | 88.42 |
| 15. Carpet | 188.30 SF | 3.03 | 570.55 | 0/10 yrs | Avg. | 0% | (0.00) | 570.55 |
| 15 % waste added for Carpet. | | | | | | | | |
| 16. Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |

| **Totals: Guest Room** | | | **2,719.68** | | | | **0.00** | **2,719.68** |



**Living Room**                                                                                                                  **Height: 8'**

672.00 SF Walls                                            430.10 SF Ceiling
1102.10 SF Walls & Ceiling                        430.10 SF Floor
47.79 SY Flooring                                        84.00 LF Floor Perimeter
84.00 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 17. Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |

MOHAMMAD_SHENAVARI                                                       1/1/2018                    Page: 2

Unofficial Copy of the Office of Will County Burgess District Clerk

**CONTINUED - Living Room**

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 18. Water extraction from carpeted floor - Category 3 water | 430.10 SF | 1.27 | 546.23 | 0/NA | Avg. | 0% | (0.00) | 546.23 |
| 19. Tear out wet non-salvageable carpet, cut & bag for disp. | 430.10 SF | 0.48 | 206.45 | 0/NA | Avg. | NA | (0.00) | 206.45 |
| 20. Tear out wet carpet pad and bag for disposal | 430.10 SF | 0.45 | 193.55 | 0/NA | Avg. | NA | (0.00) | 193.55 |
| 21. Tear out baseboard | 84.00 LF | 0.39 | 32.76 | 0/NA | Avg. | NA | (0.00) | 32.76 |
| 22. Apply anti-microbial agent to the floor | 430.10 SF | 0.21 | 90.32 | 0/NA | Avg. | 0% | (0.00) | 90.32 |
| 23. R&R 1/2" - drywall per LF - up to 2' tall | 84.00 LF | 9.58 | 804.72 | 0/150 yrs | Avg. | 0% | (0.00) | 804.72 |
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install. Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 24. R&R Batt insulation - 6" - R19 - unfaced batt | 168.00 SF | 1.16 | 194.88 | 0/150 yrs | Avg. | 0% | (0.00) | 194.88 |
| 25. Seal/prime then paint the walls twice (3 coats) | 672.00 SF | 1.03 | 692.16 | 0/15 yrs | Avg. | 0% | (0.00) | 692.16 |
| 26. Baseboard - 2 1/4" | 84.00 LF | 2.31 | 194.04 | 0/150 yrs | Avg. | 0% | (0.00) | 194.04 |
| 27. Paint baseboard - two coats | 84.00 LF | 1.13 | 94.92 | 0/15 yrs | Avg. | 0% | (0.00) | 94.92 |
| 28. Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |

| **Totals: Living Room** | | | **3,299.84** | | | | **0.00** | **3,299.84** |
|---|---|---|---|---|---|---|---|---|



## Bathroom        Height: 8'

| 256.00 SF Walls | 64.00 SF Ceiling |
|---|---|
| 320.00 SF Walls & Ceiling | 64.00 SF Floor |
| 7.11 SY Flooring | 32.00 LF Floor Perimeter |
| 32.00 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 29. Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |
| 30. Water extraction from carpeted floor - Category 3 water | 64.00 SF | 1.27 | 81.28 | 0/NA | Avg. | 0% | (0.00) | 81.28 |
| 31. Tear out wet non-salvageable carpet, cut & bag for disp. | 64.00 SF | 0.48 | 30.72 | 0/NA | Avg. | NA | (0.00) | 30.72 |
| 32. Tear out wet carpet pad and bag for disposal | 64.00 SF | 0.45 | 28.80 | 0/NA | Avg. | NA | (0.00) | 28.80 |
| 33. Tear out baseboard | 32.00 LF | 0.39 | 12.48 | 0/NA | Avg. | NA | (0.00) | 12.48 |
| 34. Apply anti-microbial agent to the floor | 64.00 SF | 0.21 | 13.44 | 0/NA | Avg. | 0% | (0.00) | 13.44 |
| 35. R&R 1/2" - drywall per LF - up to 2' tall | 32.00 LF | 9.58 | 306.56 | 0/150 yrs | Avg. | 0% | (0.00) | 306.56 |
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install. Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 36. R&R Batt insulation - 6" - R19 - unfaced batt | 64.00 SF | 1.16 | 74.24 | 0/150 yrs | Avg. | 0% | (0.00) | 74.24 |
| 37. Seal/prime then paint the walls twice (3 coats) | 256.00 SF | 1.03 | 263.68 | 0/15 yrs | Avg. | 0% | (0.00) | 263.68 |
| 38. Baseboard - 2 1/4" | 32.00 LF | 2.31 | 73.92 | 0/150 yrs | Avg. | 0% | (0.00) | 73.92 |
| 39. Paint baseboard - two coats | 32.00 LF | 1.13 | 36.16 | 0/15 yrs | Avg. | 0% | (0.00) | 36.16 |
| 40. R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs | Avg. | 0% | (0.00) | 170.25 |

**CONTINUED - Bathroom**

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor.  Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle. | | | | | | | | |
| 41.  Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA | Avg. | 0% | (0.00) | 18.77 |
| 42.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |

| **Totals:  Bathroom** | | | **1,360.11** | | | | **0.00** | **1,360.11** |

---

**Master Bedroom**                                                       **Height: 8'**

480.00  SF Walls                                   222.75  SF Ceiling
702.75  SF Walls & Ceiling                222.75  SF Floor
24.75  SY Flooring                        60.00  LF Floor Perimeter
60.00  LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 43.  Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |
| 44.  Water extraction from carpeted floor - Category 3 water | 222.75 SF | 1.27 | 282.89 | 0/NA | Avg. | 0% | (0.00) | 282.89 |
| 45.  Tear out wet non-salvageable carpet, cut & bag for disp. | 222.75 SF | 0.48 | 106.92 | 0/NA | Avg. | NA | (0.00) | 106.92 |
| 46.  Tear out wet carpet pad and bag for disposal | 222.75 SF | 0.45 | 100.24 | 0/NA | Avg. | NA | (0.00) | 100.24 |
| 47.  Tear out baseboard | 60.00 LF | 0.39 | 23.40 | 0/NA | Avg. | NA | (0.00) | 23.40 |
| 48.  Apply anti-microbial agent to the floor | 222.75 SF | 0.21 | 46.78 | 0/NA | Avg. | 0% | (0.00) | 46.78 |
| 49.  R&R 1/2" - drywall per LF - up to 2' tall | 60.00 LF | 9.58 | 574.80 | 0/150 yrs | Avg. | 0% | (0.00) | 574.80 |
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install.  Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 50.  R&R Batt insulation - 6" - R19 - unfaced batt | 120.00 SF | 1.16 | 139.20 | 0/150 yrs | Avg. | 0% | (0.00) | 139.20 |
| 51.  Seal/prime then paint the walls twice (3 coats) | 480.00 SF | 1.03 | 494.40 | 0/15 yrs | Avg. | 0% | (0.00) | 494.40 |
| 52.  Baseboard - 2 1/4" | 60.00 LF | 2.31 | 138.60 | 0/150 yrs | Avg. | 0% | (0.00) | 138.60 |
| 53.  Paint baseboard - two coats | 60.00 LF | 1.13 | 67.80 | 0/15 yrs | Avg. | 0% | (0.00) | 67.80 |
| 54.  R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs | Avg. | 0% | (0.00) | 170.25 |
| Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor.  Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle. | | | | | | | | |
| 55.  Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA | Avg. | 0% | (0.00) | 18.77 |
| 56.  Carpet pad | 222.75 SF | 0.54 | 120.29 | 0/10 yrs | Avg. | 0% | (0.00) | 120.29 |
| 57.  Carpet | 256.16 SF | 3.03 | 776.16 | 0/10 yrs | Avg. | 0% | (0.00) | 776.16 |
| 15 % waste added for Carpet. | | | | | | | | |
| 58.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |

| **Totals:  Master Bedroom** | | | **3,310.31** | | | | **0.00** | **3,310.31** |

---

MOHAMMAD_SHENAVARI                                               1/1/2018           Page: 4



**Master Bath**                                   **Height: 8'**

220.83 SF Walls                      47.26 SF Ceiling
268.09 SF Walls & Ceiling         47.26 SF Floor
5.25 SY Flooring               27.60 LF Floor Perimeter
27.60 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 59. Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA Avg. | | 0% | (0.00) | 129.00 |
| 60. Water extraction from carpeted floor - Category 3 water | 47.26 SF | 1.27 | 60.02 | 0/NA Avg. | | 0% | (0.00) | 60.02 |
| 61. Tear out went non-salvageable carpet, cut & bag for disp. | 47.26 SF | 0.48 | 22.68 | 0/NA Avg. | | NA | (0.00) | 22.68 |
| 62. Tear out wet carpet pad and bag for disposal | 47.26 SF | 0.45 | 21.27 | 0/NA Avg. | | NA | (0.00) | 21.27 |
| 63. Tear out baseboard | 27.60 LF | 0.39 | 10.76 | 0/NA Avg. | | NA | (0.00) | 10.76 |
| 64. Apply anti-microbial agent to the floor | 47.26 SF | 0.21 | 9.92 | 0/NA Avg. | | 0% | (0.00) | 9.92 |
| 65. R&R 1/2" - drywall per LF - up to 2' tall | 27.60 LF | 9.58 | 264.41 | 0/150 yrs Avg. | | 0% | (0.00) | 264.41 |

Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install. Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 66. R&R Batt insulation - 6" - R19 - unfaced batt | 55.21 SF | 1.16 | 64.04 | 0/150 yrs Avg. | | 0% | (0.00) | 64.04 |
| 67. Seal/prime then paint the walls twice (3 coats) | 220.83 SF | 1.03 | 227.45 | 0/15 yrs Avg. | | 0% | (0.00) | 227.45 |
| 68. Baseboard - 2 1/4" | 27.60 LF | 2.31 | 63.76 | 0/150 yrs Avg. | | 0% | (0.00) | 63.76 |
| 69. Paint baseboard - two coats | 27.60 LF | 1.13 | 31.19 | 0/15 yrs Avg. | | 0% | (0.00) | 31.19 |
| 70. R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs Avg. | | 0% | (0.00) | 170.25 |

Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor. Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 71. Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA Avg. | | 0% | (0.00) | 18.77 |
| 72. Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA Avg. | | NA | (0.00) | 120.81 |

**Totals: Master Bath**                             **1,214.33**                        **0.00**    **1,214.33**



**master bedroom closet**                           **Height: 8'**

184.00 SF Walls                      32.72 SF Ceiling
216.72 SF Walls & Ceiling         32.72 SF Floor
3.64 SY Flooring               23.00 LF Floor Perimeter
23.00 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 73. Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA Avg. | | 0% | (0.00) | 129.00 |
| 74. Water extraction from carpeted floor - Category 3 water | 32.72 SF | 1.27 | 41.55 | 0/NA Avg. | | 0% | (0.00) | 41.55 |
| 75. Tear out wet non-salvageable carpet, cut & bag for disp. | 32.72 SF | 0.48 | 15.71 | 0/NA Avg. | | NA | (0.00) | 15.71 |
| 76. Tear out wet carpet pad and bag for disposal | 32.72 SF | 0.45 | 14.72 | 0/NA Avg. | | NA | (0.00) | 14.72 |
| 77. Tear out baseboard | 23.00 LF | 0.39 | 8.97 | 0/NA Avg. | | NA | (0.00) | 8.97 |
| 78. Apply anti-microbial agent to the floor | 32.72 SF | 0.21 | 6.87 | 0/NA Avg. | | 0% | (0.00) | 6.87 |
| 79. R&R 1/2" - drywall per LF - up to 2' tall | 23.00 LF | 9.58 | 220.34 | 0/150 yrs Avg. | | 0% | (0.00) | 220.34 |

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0149

**CONTINUED - master bedroom closet**

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install.  Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 80.  R&R Batt insulation - 6" - R19 - unfaced batt | 46.00 SF | 1.16 | 53.36 | 0/150 yrs | Avg. | 0% | (0.00) | 53.36 |
| 81.  Seal/prime then paint the walls twice (3 coats) | 184.00 SF | 1.03 | 189.52 | 0/15 yrs | Avg. | 0% | (0.00) | 189.52 |
| 82.  Baseboard - 2 1/4" | 23.00 LF | 2.31 | 53.13 | 0/150 yrs | Avg. | 0% | (0.00) | 53.13 |
| 83.  Paint baseboard - two coats | 23.00 LF | 1.13 | 25.99 | 0/15 yrs | Avg. | 0% | (0.00) | 25.99 |
| 84.  R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs | Avg. | 0% | (0.00) | 170.25 |
| Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor.  Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle. | | | | | | | | |
| 85.  Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA | Avg. | 0% | (0.00) | 18.77 |
| 86.  Carpet pad | 32.72 SF | 0.54 | 17.67 | 0/10 yrs | Avg. | 0% | (0.00) | 17.67 |
| 87.  Carpet | 37.63 SF | 3.03 | 114.02 | 0/10 yrs | Avg. | 0% | (0.00) | 114.02 |
| 15 % waste added for Carpet. | | | | | | | | |
| 88.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |
| **Totals:  master bedroom closet** | | | **1,200.68** | | | | **0.00** | **1,200.68** |



**Son's Room**              **Height: 8'**

| | | |
|---|---|---|
| 345.59 SF Walls | | 116.54 SF Ceiling |
| 462.13 SF Walls & Ceiling | | 116.54 SF Floor |
| 12.95 SY Flooring | | 43.20 LF Floor Perimeter |
| 43.20 LF Ceil. Perimeter | | |

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 89.  Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |
| 90.  Water extraction from carpeted floor - Category 3 water | 116.54 SF | 1.27 | 148.01 | 0/NA | Avg. | 0% | (0.00) | 148.01 |
| 91.  Tear out wet non-salvageable carpet, cut & bag for disp. | 116.54 SF | 0.48 | 55.94 | 0/NA | Avg. | NA | (0.00) | 55.94 |
| 92.  Tear out wet carpet pad and bag for disposal | 116.54 SF | 0.45 | 52.44 | 0/NA | Avg. | NA | (0.00) | 52.44 |
| 93.  Tear out baseboard | 43.20 LF | 0.39 | 16.85 | 0/NA | Avg. | NA | (0.00) | 16.85 |
| 94.  Apply anti-microbial agent to the floor | 116.54 SF | 0.21 | 24.47 | 0/NA | Avg. | 0% | (0.00) | 24.47 |
| 95.  R&R 1/2" - drywall per LF - up to 2' tall | 43.20 LF | 9.58 | 413.86 | 0/150 yrs | Avg. | 0% | (0.00) | 413.86 |
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install.  Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 96.  R&R Batt insulation - 6" - R19 - unfaced batt | 86.40 SF | 1.16 | 100.22 | 0/150 yrs | Avg. | 0% | (0.00) | 100.22 |
| 97.  Seal/prime then paint the walls twice (3 coats) | 345.59 SF | 1.03 | 355.96 | 0/15 yrs | Avg. | 0% | (0.00) | 355.96 |
| 98.  Baseboard - 2 1/4" | 43.20 LF | 2.31 | 99.79 | 0/150 yrs | Avg. | 0% | (0.00) | 99.79 |
| 99.  Paint baseboard - two coats | 43.20 LF | 1.13 | 48.82 | 0/15 yrs | Avg. | 0% | (0.00) | 48.82 |
| 100.  R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs | Avg. | 0% | (0.00) | 170.25 |

MOHAMMAD_SHENAVARI

**CONTINUED - Son's Room**

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor.  Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle. | | | | | | | | |
| 101.  Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA | Avg. | 0% | (0.00) | 18.77 |
| 102.  Carpet pad | 116.54 SF | 0.54 | 62.93 | 0/10 yrs | Avg. | 0% | (0.00) | 62.93 |
| 103.  Carpet | 134.02 SF | 3.03 | 406.08 | 0/10 yrs | Avg. | 0% | (0.00) | 406.08 |
| 15 % waste added for Carpet. | | | | | | | | |
| 104.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |
| **Totals:  Son's Room** | | | **2,224.20** | | | | **0.00** | **2,224.20** |

## Hallway                                                               Height: 8'



| 523.17 SF Walls | 119.65 SF Ceiling |
|---|---|
| 642.82 SF Walls & Ceiling | 119.65 SF Floor |
| 13.29 SY Flooring | 65.40 LF Floor Perimeter |
| 65.40 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 105.  Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |
| 106.  Tear out baseboard | 65.40 LF | 0.39 | 25.51 | 0/NA | Avg. | NA | (0.00) | 25.51 |
| 107.  Apply anti-microbial agent to the floor | 119.65 SF | 0.21 | 25.13 | 0/NA | Avg. | 0% | (0.00) | 25.13 |
| 108.  R&R 1/2" - drywall per LF - up to 2' tall | 65.40 LF | 9.58 | 626.53 | 0/150 yrs | Avg. | 0% | (0.00) | 626.53 |
| Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install.  Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle. | | | | | | | | |
| 109.  R&R Batt insulation - 6" - R19 - unfaced batt | 130.79 SF | 1.16 | 151.72 | 0/150 yrs | Avg. | 0% | (0.00) | 151.72 |
| 110.  Seal/prime then paint the walls twice (3 coats) | 523.17 SF | 1.03 | 538.87 | 0/15 yrs | Avg. | 0% | (0.00) | 538.87 |
| 111.  Baseboard - 2 1/4" | 65.40 LF | 2.31 | 151.07 | 0/150 yrs | Avg. | 0% | (0.00) | 151.07 |
| 112.  Paint baseboard - two coats | 65.40 LF | 1.13 | 73.90 | 0/15 yrs | Avg. | 0% | (0.00) | 73.90 |
| 113.  Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |
| 114.  R&R Ceramic/porcelain tile | 119.65 SF | 9.55 | 1,142.66 | 0/150 yrs | Avg. | 0% | (0.00) | 1,142.66 |
| **Totals:  Hallway** | | | **2,985.20** | | | | **0.00** | **2,985.20** |

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0151



**Daughter Room**                                                  **Height: 8'**

| | |
|---|---|
| 352.00 SF Walls | 120.00 SF Ceiling |
| 472.00 SF Walls & Ceiling | 120.00 SF Floor |
| 13.33 SY Flooring | 44.00 LF Floor Perimeter |
| 44.00 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 115. Content Manipulation charge - per hour | 4.00 HR | 32.25 | 129.00 | 0/NA | Avg. | 0% | (0.00) | 129.00 |
| 116. Water extraction from carpeted floor - Category 3 water | 120.00 SF | 1.27 | 152.40 | 0/NA | Avg. | 0% | (0.00) | 152.40 |
| 117. Tear out wet non-salvageable carpet, cut & bag for disp. | 120.00 SF | 0.48 | 57.60 | 0/NA | Avg. | NA | (0.00) | 57.60 |
| 118. Tear out wet carpet pad and bag for disposal | 120.00 SF | 0.45 | 54.00 | 0/NA | Avg. | NA | (0.00) | 54.00 |
| 119. Tear out baseboard | 44.00 LF | 0.39 | 17.16 | 0/NA | Avg. | NA | (0.00) | 17.16 |
| 120. Apply anti-microbial agent to the floor | 120.00 SF | 0.21 | 25.20 | 0/NA | Avg. | 0% | (0.00) | 25.20 |
| 121. R&R 1/2" - drywall per LF - up to 2' tall | 44.00 LF | 9.58 | 421.52 | 0/150 yrs | Avg. | 0% | (0.00) | 421.52 |

Includes: Drywall, metal corner bead, joint/texture compound (mud), joint tape, drywall screws, and labor to install. Labor cost to cut and remove drywall, including screws and/or nails, in a strip up to 2' tall and to discard in a job-site waste receptacle.

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 122. R&R Batt insulation - 6" - R19 - unfaced batt | 88.00 SF | 1.16 | 102.08 | 0/150 yrs | Avg. | 0% | (0.00) | 102.08 |
| 123. Seal/prime then paint the walls twice (3 coats) | 352.00 SF | 1.03 | 362.56 | 0/15 yrs | Avg. | 0% | (0.00) | 362.56 |
| 124. Baseboard - 2 1/4" | 44.00 LF | 2.31 | 101.64 | 0/150 yrs | Avg. | 0% | (0.00) | 101.64 |
| 125. Paint baseboard - two coats | 44.00 LF | 1.13 | 49.72 | 0/15 yrs | Avg. | 0% | (0.00) | 49.72 |
| 126. R&R Interior door unit | 1.00 EA | 170.25 | 170.25 | 0/100 yrs | Avg. | 0% | (0.00) | 170.25 |

Includes: Pre-hung interior door, hinges, jamb, stop, casing (both sides), finish nails, wood shims, and installation labor. Labor cost to remove a pre-hung interior door unit and to discard in a job-site waste receptacle.

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 127. Door lockset - Detach & reset | 1.00 EA | 18.77 | 18.77 | 0/NA | Avg. | 0% | (0.00) | 18.77 |
| 128. Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.81 | 120.81 | 0/NA | Avg. | NA | (0.00) | 120.81 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Totals:  Daughter Room** | | | **1,782.71** | | | | **0.00** | **1,782.71** |

[%] - Indicates that depreciate by percent was used for this item

[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 3,955.17 SF Walls | 1,436.76 SF Ceiling | 5,391.93 SF Walls and Ceiling |
| 1,436.76 SF Floor | 159.64 SY Flooring | 494.40 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 494.40 LF Ceil. Perimeter |
| | | |
| 1,436.76 Floor Area | 1,606.45 Total Area | 3,955.17 Interior Wall Area |
| 5,183.06 Exterior Wall Area | 523.73 Exterior Perimeter of Walls | |
| | | |
| 3,226.97 Surface Area | 32.27 Number of Squares | 251.85 Total Perimeter Length |
| 86.32 Total Ridge Length | 0.00 Total Hip Length | |

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0152

**Summary for**
**WB-Water Backup**
**Summary for All Items**

| | |
|---|---:|
| Line Item Total | 20,097.06 |
| Material Sales Tax | 418.78 |
| Cleaning Mtl Tax | 3.27 |
| Cleaning Sales Tax | 23.07 |
| **Replacement Cost Value** | **$20,542.18** |
| Less Non-recoverable Depreciation | <0.00> |
| **Actual Cash Value** | **$20,542.18** |
| Less Deductible | (500.00) |
| Less Amount Over Limit(s) | (15,042.18) |
| **Net Claim** | **$5,000.00** |

_____

Idolina Stockert

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0153

## Recap of Taxes

| | Material Sales Tax (8.25%) | Cleaning Mtl Tax (8.25%) | Cleaning Sales Tax (8.25%) | Manuf. Home Tax (5%) | Storage Rental Tax (8.25%) |
|---|---|---|---|---|---|
| Line Items | 418.78 | 3.27 | 23.07 | 0.00 | 0.00 |
| **Total** | **418.78** | **3.27** | **23.07** | **0.00** | **0.00** |

MOHAMMAD_SHENAVARI

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0154

## Recap by Room

**Estimate: MOHAMMAD_SHENAVARI**

**Area: SKETCH1**

**Area: Main Level**

| | | |
|---|---:|---:|
| Guest Room | 2,719.68 | 13.53% |
| Living Room | 3,299.84 | 16.42% |
| Bathroom | 1,360.11 | 6.77% |
| Master Bedroom | 3,310.31 | 16.47% |
| Master Bath | 1,214.33 | 6.04% |
| master bedroom closet | 1,200.68 | 5.97% |
| Son's Room | 2,224.20 | 11.07% |
| Hallway | 2,985.20 | 14.85% |
| Daughter Room | 1,782.71 | 8.87% |
| **Area Subtotal:  Main Level** | **20,097.06** | **100.00%** |
| **Area Subtotal:  SKETCH1** | **20,097.06** | **100.00%** |
| **Subtotal of Areas** | **20,097.06** | **100.00%** |
| **Total** | **20,097.06** | **100.00%** |

Allstate.Resp to Initial Disaster Discovery Protocol.02/21/2020.0155

## Recap by Category

| Items | Total | % |
|---|---:|---:|
| CONTENT MANIPULATION | 1,161.00 | 5.65% |
| GENERAL DEMOLITION | 3,713.00 | 18.08% |
| DOORS | 1,078.56 | 5.25% |
| DRYWALL | 3,292.56 | 16.03% |
| FLOOR COVERING - CARPET | 2,156.12 | 10.50% |
| FINISH CARPENTRY / TRIMWORK | 994.22 | 4.84% |
| FINISH HARDWARE | 131.39 | 0.64% |
| INSULATION | 783.32 | 3.81% |
| PAINTING | 4,032.84 | 19.63% |
| TILE | 957.20 | 4.66% |
| WATER EXTRACTION & REMEDIATION | 1,796.85 | 8.75% |
| Subtotal | 20,097.06 | 97.83% |
| Material Sales Tax | 418.78 | 2.04% |
| Cleaning Mtl Tax | 3.27 | 0.02% |
| Cleaning Sales Tax | 23.07 | 0.11% |
| Total | 20,542.18 | 100.00% |

Depending upon the circumstances of your loss, our estimate may or may not include an amount for general contractor's overhead and profit.  If you have questions regarding general contractor's overhead and profit and whether the services of a general contractor are appropriate for your loss, please contact your claim representative before proceeding with repairs.

Specialized skill, licensing or certification may be needed of any contractor(s) that you retain, for instance, to identify the presence and nature of any potential contaminants, toxins, pollutants, or other hazards that may be encountered during the course of the work, or to utilize appropriate work practices and procedures during the course of the work. Check with your local or State public health or environmental agency regarding potential hazards, including contractor qualifications and other requirements. For your safety, it is prudent to avoid areas where damaged structures, materials or unknown substances may be present, and to not disturb such structures, material, or unknown substances until your contractors have inspected the work site.
The suggestions above are provided only for your consideration. They in no way supplement, alter or modify your existing coverage.  Your insurance policy is the legal contract that contains the terms and limitations of your coverage.
If you have any concerns about the grade of flooring on your estimate, you may take advantage of a free service that will provide you with a more specific analysis. To use this option, please keep a 12" x 12" sample of your damaged flooring, and notify your Allstate adjuster that you would like the additional analysis.



Main Level



Roof1

Roof2 (1)

Roof3 (2)

F1 (A)

F2 (B)

F6 (B)

F5 (A)

44' 4"

22' 9"

8"

7' 4"

44'

63'

16' 5"

9' 6"

9' 6"

10' 3"

19'

10' 3"

9' 6"

23'
21' 3"

25'
23' 1"



N

Roof

Unofficial Copy Office of Marilyn Burgess District Clerk

| TEXAS HOME INSPECTION CHECKLIST | | RESET FORM |
|---|---|---|

Type of inspection:  ○ Initial   ● Subsequent

| Insured Name:<br>Mohammad Shenavari | Claim #:<br>0472496529 | Date of Loss:<br>8/27/2017 | Date of Inspection:<br>1/1/2018 |
|---|---|---|---|

| Loss Location: 331 Isolde dr | City: Houston | State: Tx | ZIP Code: 77024 |
|---|---|---|---|

| Email Address: mshenavari@yahoo.com | Insured on premises for inspection:<br>● Yes   ○ No |
|---|---|

Any others present? (If yes list name and role, e.g., "John Smith, Contractor"):

Please complete the interior and exterior checklists, indicating "**Yes**" if the item/area has damage then use the "Notes" section to describe any pre-existing or non-related damage. Indicate "**No**" if there is no damage to the item/area. Mark "**N/A**" if the area does not exist.

| EXTERIOR | | | | |
|---|---|---|---|---|
| **Area/Item** | **Inspection Damage** | | | **Notes (Include date and whether repairs were completed; please be concise)** |
| | **Yes** | **No** | **N/A** | |
| Roof | ● | ○ | ○ | |
| Siding (if "Yes" indicate elevation) | ○ | ● | ○ | |
| Gutters/ Downspouts | ○ | ○ | ● | |
| Windows | ● | ○ | ○ | |
| Screens | ○ | ○ | ● | |
| Doors | ○ | ● | ○ | |
| Patio | ○ | ● | ○ | |
| Patio Covering | ○ | ○ | ● | |
| Garage | ○ | ● | ○ | |
| Carport | ○ | ○ | ● | |
| Pool Enclosure | ○ | ○ | ● | |
| A/C Unit | ○ | ● | ○ | |
| Deck | ○ | ○ | ● | |
| Shed/Outbuilding | ○ | ○ | ● | |
| Fence | ○ | ● | ○ | |
| Mailbox | ○ | ● | ○ | |

☐ Check here if the inspection area/item list is continued below in "Additional Entries" section.

| INTERIOR | |
|---|---|
| *The customer/representative Declined inspection of all or part of the interior property at this time, confirming that there is no interior damage due to the reported loss except as specified below (Sign below, page 3).* | ☐ *The customer/representative Declined inspection of all or part of the interior property at this time, confirming that there is no new or additional interior damage due to the reported loss since the last inspection except as specified below (Sign below, page 3).* |

| **Area/Item** | **Inspection Damage** | | | **Notes (Include date and whether repairs were completed; please be concise)** |
|---|---|---|---|---|
| | **Yes** | **No** | **N/A** | |
| Living Room | ● | ☐ | ☐ | |
| Family Room | ☐ | ☐ | ☐ | |
| Dining Room | ☐ | ☐ | ☐ | |
| Kitchen | ● | ☐ | ☐ | |
| Breakfast Area | ☐ | ☐ | ☐ | |
| Pantry | ☐ | ☐ | ☐ | |
| Foyer | ● | ☐ | ☐ | |
| Game Room | ☐ | ☐ | ☐ | |
| Office/Study | ☐ | ☐ | ☐ | |
| Hall | ● | ☐ | ☐ | |

| Insured's/Rep's Initials: | ☐ Claim #: 0472496529 | Page 1 of 3 |
|---|---|---|

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is subject to criminal and civil penalties including confinement in state prison. Home Inspection Checklist 071116. © Allstate Insurance Company

Allstate Reps of Initial Disaster Discovery Process and 02/27/2020 0169

| INTERIOR (CONTINUED) | | | | |
|---|---|---|---|---|
| | **Inspection Damage** | | | **Notes (Include date and whether repairs were completed; please be concise)** |
| **Area/Item** | **Yes** | **No** | **N/A** | |
| Hall Closet | ● | ☐ | ☐ | |
| Utility Room | ● | ☐ | ☐ | |
| Garage | ● | ☐ | ☐ | |
| Attic | ● | ☐ | ☐ | |
| Crawlspace | ☐ | ☐ | ☐ | |
| Basement | ☐ | ☐ | ☐ | |
| Master Bedrm | ● | ☐ | ☐ | |
| MBR Closet | ● | ☐ | ☐ | |
| Bedroom 2 | ● | ☐ | ☐ | |
| BR2 Closet | ● | ☐ | ☐ | |
| Bedroom 3 | ● | ☐ | ☐ | |
| BR3 Closet | ● | ☐ | ☐ | |
| Bedroom 4 | ☐ | ☐ | ☐ | |
| BR4 Closet | ☐ | ☐ | ☐ | |
| Master Bath | ● | ☐ | ☐ | |
| Bathroom 2 | ● | ☐ | ☐ | |
| Bathroom 3 | ● | ☐ | ☐ | |
| Contents | ● | ☐ | ☐ | |
| | ☐ | *Check here if the inspection area/item list is continued below in "Additional Entries" section.* | | |

| ADDITIONAL ENTRIES | | | | | | |
|---|---|---|---|---|---|---|
| | **Inspection Damage** | | | **Location** | | **Notes (Include date and whether repairs were completed; please be concise)** |
| **Area/Item** | **Yes** | **No** | **N/A** | **INT** | **EXT** | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |

| Insured/Representative Initials: | ☐ Claim #:  0472496529 | **Page 2 of 3** |
|---|---|---|

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. Home Inspection Checklist 071116. © Allstate Insurance Company

| | | **ADDITIONAL ENTRIES (CONTINUED)** | | | | |
|---|---|---|---|---|---|---|
| | **Inspection Damage** | | | **Location** | | **Notes (Include date and whether repairs were completed; please be concise)** |
| **Area/Item** | **Yes** | **No** | **N/A** | **INT** | **EXT** | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | |

| **SIGNATURES** |
|---|

An indication on this form that an item is or is not damaged, is not an indication or representation as to whether there is insurance coverage for that damage.  All claims are subject to the terms and conditions of the insurance policy.

Interior Inspected:  ◉ Yes  ○ No  ○ Declined          Exterior Inspected:  ◉ Yes  ○ No  ○ Declined

| Insured/Representative Name (Print): Mohammad Shenavari | Date: |
|---|---|
| Insured/Representative Signature: | |
| Adjuster Name (Print): Darrel Johnson | Date: |
| Adjuster Signature: *[signature]* | 1/1/2018 2:08 pm |

| **COPY PROVIDED TO CUSTOMER** |
|---|

A completed copy of this document was provided to the customer via:     ◉ email   ○ print   ○ both

**Claim #:** 0472496529                                                                                    **Page 3 of 3**

**SUBMIT**

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. Home Inspection Checklist 071116. © Allstate Insurance Company

5/19/2020 7:00 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 43100891
By: F Abdul-Bari
Filed: 5/19/2020 7:00 PM

No.  **2019-71232**

| | | |
|---|---|---|
| **MOHAMMAD SHENAVARI** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE AND PROPERTY INSURANCE** | § | |
| **COMPANY AND IDOLINA STOCKERT** | § | **IN THE 269TH JUDICIAL DISTRICT** |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff(s) by and through their attorney(s) of record: **DAVID A. CHRISTOFFELL**
To other party/parties by and through their attorney(s) of record:

     You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for: **WRIGHT FLOOD INSURANCE COMPANY** before a Notary Public for **Compex Legal Services, Inc.  3201 Cherry Ridge Drive, Suite B207, San Antonio, TX 78230-4825** or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court.

     Notice is further given that request is hereby made as authorized under Rules 176 and 200, Texas Rules of Civil Procedure, to the officer taking the deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce **any and all records, claim numbers, policy numbers, claim documents, policy documents, estimates, evaluations, first notice of loss, claim file notes, claim history reports, emails, photographs (in color) and correspondence pertaining to any claims in the insured, Mohammad Shenavari and/or Mandana Samizadeh, filed for losses arising from Hurricane Harvey from 07/01/2017 to 01/01/2019 for the address at 331 Isolde Drive, Houston, Texas 77024**  And to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

                                   **KIMBERLY BLUM**
                                   **SUSAN L. FLORENCE & ASSOCIATES**
                                   **TWO SHELL PLAZA, 811 LOUISIANA, 24TH FLOOR**
                                   **HOUSTON, TX 77002**
                                   **713-336-2800  FAX 713-336-2836**
                                   **ATTORNEY FOR DEFENDANT**
                                   **STATE BAR#: 24092148**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated:   5/19/20

Compex Order No. **TX0028632-001**
EMAIL:  TEXASCS@COMPEXLEGAL.COM

No. **2019-71232**

| | | |
|---|---|---|
| **MOHAMMAD SHENAVARI** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE AND PROPERTY INSURANCE** | § | |
| **COMPANY AND IDOLINA STOCKERT** | § | **IN THE 269TH JUDICIAL DISTRICT** |

## DIRECT QUESTIONS TO BE PROPOUNDED TO
## THE CUSTODIAN OF RECORDS FOR:

### WRIGHT FLOOD INSURANCE COMPANY
### From 07/01/2017 to 01/01/2019

1. Please state your full name, occupation and official title.

    Answer: _____

2. Please state by whom you are employed and the business address.

    Answer: _____

3. Did you receive a subpoena for the production of records pertaining to **address at 331 Isolde Drive, Houston, Texas 77024** ?

    Answer: _____

4. Are the documents and or things pertaining to **address at 331 Isolde Drive, Houston, Texas 77024** , as outlined in the subpoena duces tecum, in your custody or subject to your control, supervision or direction?

    Answer: _____

5. Have you provided copies of the documents and or things as listed in the subpoena, to be attached to this deposition?  If not, why not?

    Answer: _____

6. If you answered "yes" to question no. 5, are the documents and or things which you have provided true and correct copies of the originals?

    Answer: _____

7. Were such documents and or things kept in the regular course of business of this facility?

    Answer: _____

8. Was it regular course of business of this facility for a person with knowledge of the acts, events, conditions, or opinion recorded to make record or to transmit information thereof to be included in such record?

    Answer: _____

Compex Order No. TX0028632-001

9. Were the entries on these records made at or shortly after the time of the transaction recorded?

   Answer: _____

10. Was the method of preparation of these records trustworthy?

    Answer: _____


    _____
    WITNESS (Custodian of Records)

    Before me, the undersigned authority, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.  I further certify that the records attached hereto are exact duplicates of the original records.

    SWORN TO AND SUBSCRIBED before me this _____ day of _____, 20_____


    _____
    NOTARY PUBLIC

Compex Order No. TX0028632-001

# COMPEX LEGAL SERVICES

5481 W. WATERS AVE. SUITE 108, TAMPA, FLORIDA, 33634

800-969-6424

## RECORD REQUEST FORM

Compex Order: TX0028632

DAVID A. CHRISTOFFELL
CHRISTOFFEL LAW GROUP, PLLC
3027 MARINA BAY DRIVE, SUITE 230
LEAGUE CITY, TX 77573                                                  5/19/2020

RE:         MOHAMMAD SHENAVARI V. ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY AND
            IDOLINA STOCKERT
Case No.:       2019-71232
Record Subject:  ADDRESS AT 331 ISOLDE DRIVE, HOUSTON, TEXAS 77024
Records requested by:  SUSAN L. FLORENCE & ASSOCIATES

DEAR DAVID A. CHRISTOFFELL:

Compex Legal Services has been requested by the firm named above to obtain records from the locations listed below.

If you require copies of any of these records, please indicate by checking the box next to the appropriate location(s) and sign and return the form(s) to Compex Legal Services. If no boxes are checked, we will assume you are requesting records from all locations.

**Please note:**

By placing a check mark in the box next to a location, you have indicated your desire to receive a copy of the records received by Compex Legal Services from that location. Should you desire a copy of any original item(s) listed below the location, please indicate by checking the box before the item description. If you check "Films" and/or "Other" which may include copies of original items such as photos, blueprints, video or audio tapes, you must place your order within (2) business days of receipt of this notice to assure proper delivery.

☐     **If a location provides a Certificate of No Records, you will receive a copy UNLESS this box is checked.**

**Please select preferred mode of delivery**

☐ **Electronic** ☐ **CD** ☐ **Paper**     *If nothing is checked, you will receive a **CD**

**Records**   **Films**     **Other**
            (If requested)

☐           ☐             ☐           TX0028632-001 WRIGHT FLOOD INSURANCE COMPANY

☐     Furthermore, on behalf of the consumer, and in accordance with CCP 2020(d)(4), I stipulate to an early release of all documents and items listed above, from all locations listed herein, waiving all time for statutory holds. The documents and other items may be copied and released prior to the deposition date listed on the subpoena(s).

If your firm has an account with Compex Legal Services, normal billing will apply. <u>If you represent an insurance carrier and prefer that we bill them directly</u>, please provide the following information:

Carrier _____       Adjuster _____

Address _____       Phone _____

City, St _____       Zip _____

Claim _____         Insured _____

Your signature below confirms that you are ordering these records and agree to the terms and conditions (attached)

Authorized Signature _____       Date _____
                        (Required)

Print Name _____                 Title _____

E-mail _____                      Phone _____ Fax _____
        (Mandatory field if Electronic records are being requested)

10/22/2019 8:59:01 AM
Marilyn Burgess District Clerk
Harris County
Envelope No: 37842040
By: COLLINS, IRIS T
Filed: 10/22/2019 8:59:01 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
|   Plaintiff, | |
| | |
| V. | |
| | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND | |
| PROPERTY INSURANCE COMPANY | |
| AND IDOLINA STOCKERT, | |
| Defendants. | HARRIS COUNTY, TEXAS |

## ORDER ON DEFENDANTS' NOTICE OF ELECTION OF RESPONSIBILITY FOR IDOLINA STOCKERT

Be it remembered that on this day, **DEFENDANTS' NOTICE OF ELECTION OF RESPONSIBILITY FOR IDOLINA STOCKERT** was considered.  Upon consideration of the motion, the Court is of the opinion that Defendants' request should be granted.

It is, therefore, ORDERED, ADJUDGED and DECREED that **IDOLINA STOCKERT** is dismissed from this lawsuit with prejudice to refiling of same.

Signed the _____ day of _____, 2019.

Signed:
5/28/2020
5:57 PM

_____
**JUDGE PRESIDING**

Unofficial Copy Office of Marilyn Burgess District Clerk

9/30/2019 11:48 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37232541
By: Joshua Hall
Filed: 9/30/2019 12:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| MOHAMMAD SHENAVARI | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY | § | |
| AND IDOLINA STOCKERT, | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

COMES NOW **Plaintiff Mohammad Shenavari** (hereinafter referred to as "Plaintiff")

and files this his *Original Petition and Request for Disclosures*, complaining of **Defendant**

**Allstate Vehicle and Property Insurance Company** ("Allstate") and **Defendant Idolina**

**Stockert** ("Adjuster") and for such cause would show unto this Honorable Court as follows:

**I.**

### DISCOVERY CONTROL PLAN

1.      Plaintiff intends to conduct Discovery under Level 3 of the Texas Rules of Civil Procedure,

and requests that the Court enter a Level 3 Discovery Plan.

**II.**

### PARTIES AND SERVICE

2.      Plaintiff Mohammad Shenavari is an individual residing in Harris County, Texas.  Further,

Mohammad Shenavari owns the real property located at 331 Isolde Drive, Houston, Texas 77024,

which is situated in Harris County, Texas.

3.      Defendant Allstate is a foreign insurance company engaged in the business of insurance in

Texas, with its principal office located at 2775 Sanders Road, Northbrook, Illinois.  The Defendant

may be served by and through its designated agent in Texas, C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.      Upon information and belief, Defendant Idolina Stockert is an insurance claims adjuster employed by Defendant Allstate, whom resides at 1824 Arundel Drive, Carrollton, Texas 75007-3012.  Defendant Stockert will be served with legal service of process, through certified mail, return receipt requested, addressed to the location described above.

### III.
### JURISDICTION AND VENUE

5.      This Court has jurisdiction in this cause as the damages to Plaintiff are within the jurisdictional limits of this Honorable Court.    Pursuant to Tex. R. Civ. P. 47(c)(3), Plaintiff is seeking monetary relief of over $100,000 but less than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.  Plaintiff reserves the right to amend this petition during and/or after the discovery process.

6.      The court has jurisdiction over Defendant because the Defendant is an insurance company that engages in the business of insurance in the State of Texas and the Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas.  Venue is proper in Harris County, Texas pursuant to Tex. Ins. Code §2210.552(c) as the insured property at issue in this suit is located in Harris County, Texas.

### IV.
### FACTS

7.      The claims in this lawsuit arise out of the property damage caused by Hurricane Harvey to the Plaintiff's real property, located at 331 Isolde Drive, Houston, Texas 77024 (the "Property"), on approximately August 25, 2017.

8.      On August 25, 2017, the property at issue was covered by a policy of insurance issued by the Defendant Allstate (hereinafter referred to as "the Policy"), which was numbered 000829582292.

9.      On or about August 25, 2017, a hurricane designated as "Hurricane Harvey", struck Harris County, Texas ("the Hurricane") with substantial winds and rain.   This Hurricane caused substantial damage to buildings in the area, including Plaintiff's Property.

10.     Specifically, Hurricane Harvey damaged Plaintiff's composition shingle roof, garage roof, and roofing components.  The severe wind that struck Plaintiff's composition shingle roof, caused the shingles to lift, and otherwise, break free and allow substantial amounts of water to enter Plaintiff's home and cause interior water damage to the entry/foyer, formal living room, dining room, kitchen, ;laundry room, living room, hallway, office, master bedroom, master bathroom, master closet, hallway2, bedroom, bedroom closet, bedroom2, bedroom2 closet, bathroom, closet, closet2, closet3 and HVAC unit..  Additionally, Hurricane Harvey caused extensive damage to Plaintiff's personal property located at the Property.

11.     Plaintiff submitted a claim to Allstate against the Policy for the damage to the Property sustained as a result of Hurricane Harvey.

12.     Defendant Allstate acknowledged receipt of Plaintiffs' claim and designated Plaintiffs' claim as claim number 0472496529 ("the Claim"). Plaintiff asked that Allstate cover all costs of repairs to the Property, as shown *supra*, pursuant to the Policy, and pay for the damage to the personal property.

13.     Additionally, Plaintiff provided Defendant with access to the insured property for multiple inspections and provided all information requested and necessary to pay the amount due and owing under the Policy.

Plaintiff's Original Petition and Request for Disclosure

14.     On September 21, 2017, Defendant's agent and adjuster, Idolina Stockert, inspected Plaintiff's Property and confirmed that Plaintiff had indeed sustained extensive interior water damage as a result of the Hurricane.  However, despite this acknowledgment Stockert had only recommended payment of $5,000.00.

15.     On January 14, 2018, Defendant Allstate, by and through its agent Kristen Janes(Coor), sent Plaintiff a letter partially accepting coverage of Plaintiff's claim, and partially denied portions of Plaintiff's Claim.  Therein, Defendant Allstate notified Plaintiff that it unequivocally accepted insurance coverage for the mold damage to interior of Plaintiff's home and unequivocally denied coverage composition shingle roof.  Further, the letter of January 14, 2018, contained no further reservation of rights.

16.     Despite receiving proper notice and despite every attempt by the Plaintiff to comply with the requirements of the Policy, Defendant Allstate has failed to pay Plaintiff all of the benefits owed under the terms of the Policy, even though the Policy provided coverage for losses such as those suffered by the Plaintiff.

17.     To date, Defendant Allstate has failed to perform its contractual duties to adequately compensate the Plaintiff under the terms of the Policy.  Allstate's conduct constitutes a breach of the insurance contract between Allstate and Plaintiff as more specifically set forth below.

18.     From and after the time Plaintiff' claims were presented to Defendant Allstate, the liability of Allstate to pay the full claim in accordance with the terms of the Policy at issue was reasonably clear.  However, Allstate continues to refuse to fully pay Plaintiff in full, despite there being no basis on which a reasonable insurance company would rely to deny the full payment.

19.     During the handling of the Plaintiff's claim for damages from Hurricane Harvey, Defendant Allstate committed several acts which constitute unfair settlement practices.

4

Furthermore, Defendant Allstate failed to timely acknowledge, investigate, request information, fully accept or deny, and fully pay Plaintiff's claims for damage from Hurricane Harvey.

20.     Defendant Allstate's acts and omissions in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Allstate with regard to handling of these types of claims for damage.  Defendant Allstate treats all claims for damages caused by Hurricane Harvey exactly the same; that is, each claim for damage, no matter the location of the insured property, value of the damage, or value of the insured property, is paid the same percentage of the value of the insured property as determined by Defendant Allstate. Defendant Allstate's entire process for handling claims, such as those of the Plaintiff, is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

**V.**

**CAUSES OF ACTIONS**:
**CAUSES OF ACTIONS AGAINST DEFENDANTS ALLSTATE AND IDOLINA STOCKERT**

**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES**

21.     Plaintiff realleges and restates the above-referenced paragraphs, as if fully set forth herein.

22.     Defendant Allstate hired and/or assigned Defendant Idolina Stockert as the individual claims adjuster to investigate and adjust the claim on Defendant Allstate's behalf.

23.     During her investigation, Defendant Idolina Stockert failed to properly assess Plaintiff's property damage.  Specifically, during her investigation, Defendant Idolina Stockert spent an inadequate time investigating whether Plaintiff's damages were covered under the Policy.  As a result of the inadequate and substandard investigation, Defendant Idolina Stockert failed to fully account for all of the covered damage to the Property, such as the composition shingle roof, garage roof, roofing components, and HVAC.  Furthermore, even though Idolina Stockert acknowledged

the interior water damage to Plaintiff's property, she wrongfully opined that it should be covered under the "mold" provision and not the property damage provisions. Defendant's conduct constituted multiple violations of the Texas insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.151.

24. Defendant Idolina Stockert is individually liable for her unfair and deceptive acts, irrespective of the fact that she was acting on behalf of Defendant Allstate, because Defendant Idolina Stockert is a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any *individual*, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

25. Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendant Stockert's misrepresentations by means of deceptive conducts include, but are not limited to, (1) failing to conduct a reasonable inspection and investigation of Plaintiff's damages; (2) stating that Plaintiff had no covered damage to his roof, when in-fact there was extensive wind damage; (3) using her own statements about the non-severity of the damages as a basis for denying properly covered damages; (4) failing to provide an adequate explanation for giving so little compensation for Plaintiff's claims; and (5) seeking out alternative means of coverage to reduce the payment of Plaintiff's claim. Defendant Stockert's unfair settlement practice, as described above and the

example given herein, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

26.     Defendants' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

27.     The unfair settlement practices of Defendants' as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

28.     Defendants did not adequately explain why damages were not being covered under the Policy, despite the extensive damage to the Property as a result of the Storm. Defendants' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constituted an unfair method of competition and an unfair and deceptive act of practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

29.     Defendants' deceptive acts and omissions of misrepresenting an insurance policy by making false and misleading statements of material fact, and making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.061(1)-(3), (5).

<u>CAUSES OF ACTION AGAINST DEFENDANT ALLSTATE</u>

30.     Defendant Allstate is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

### COUNT ONE: BREACH OF CONTRACT

31.     Defendant Allstate's conduct constituted a breach of the insurance contract made between Defendant Allstate and Plaintiff.

32.     Defendant Allstate's failure and/or refusal, as described above, to pay adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, which constituted a breach of Defendant Allstate's insurance contract with Plaintiff.

### COUNT TWO:  NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

33.     Defendant Allstate's conduct constituted multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

34.     Defendant Allstate's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(1).

35.     Defendant Allstate's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability

under the Policy was reasonably clear, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

36.     Defendant Allstate's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of Plaintiff's claim, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

37.     Defendant Allstate's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

38.     Defendant Allstate's unfair settlement practice, as described above, of refusal to pay Plaintiff's claim without conducting a reasonable investigation, constituted an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

### COUNT THREE: NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### THE PROMPT PAYMENT OF CLAIMS

39.     Defendant Allstate's conduct constituted multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made actionable by TEX. INS. CODE §542.060.

40.     Defendant Allstate's failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above,

constituted a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

41.    Defendant Allstate's failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constituted a non-prompt payment of the claim. TEX. INS. CODE §542.056.

42.    Defendant Allstate's delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constituted a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

### COUNT FOUR: ACTS CONSTITUTING ACTING AS AGENT

43.    As referenced and described above, and further conduct throughout this litigation and lawsuit, Defendant Idolina Stockert is and was an agent of Defendant Allstate based on Defendant Allstate's acts, ratification, negligent hiring and training, supervision and/or omissions during the handling of this claim, including but not limited to, selling insurance, inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer. TEX. INS. CODE §4001.051.

44.    Separately, and/or in the alternative, as referenced and described above, Defendant Allstate ratified the acts, negligent hiring and training, supervision and/or omissions of Defendant Idolina Stockert, including the completion of his duties under the common law and statutory law.

### DTPA VIOLATIONS

45.    Defendants' conducts constituted multiple violations of the Texas Deceptive Trade Practice Act ("DTPA"), TEX. BUS. & COM. CODE 17.41-63. Plaintiff is a consumer of goods and services provided by Defendants pursuant to the DTPA. TEX. BUS. & COM. CODE 17.50(a). In the alternative, Plaintiff is a claimant for Defendants' violations of the Texas Insurance Code pursuant to the DTPA. TEX. BUS. & COM. CODE 17.50(h). Plaintiff has met all conditions precedent to

bringing this cause of action against Defendants. Specifically, Defendants' violations of the DTPA include, but are not limited to the following:

A.  By Defendants' acts, omissions, failures and conduct that are described in the above, Defendants have violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Accordingly, Defendants' violations include, but are not limited to, (a) unreasonably delays in the investigation, adjustment, and resolution of Plaintiff's claim, (b) failure to give Plaintiff the benefit of the doubt, and (c) failure to pay for the proper repair of the Property on which liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2);

B.  Defendant Allstate represented to Plaintiff that the insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA;

C.  Defendant Allstate represented to Plaintiff that Defendant Allstate' insurance policy and adjusting services were of a particular standard, quality, or grade when they were of another in violation of section 17.46(b)(7) of the DTPA;

D.  Defendant Allstate advertised the insurance policy and adjusting services with intent not to sell them as advertised in violation of section 17.46(b)(9) of the DTPA;

E.  Defendant Allstate breached an express warranty made by Defendant Allstate that the damages caused by the wind and/or hailstorm would be covered under the Policy. This breach entitles Plaintiff to recover under sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

F.  Defendants' actions are unconscionable in that Defendants' actions took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants' unconscionable conduct give Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and,

G.  Defendants' conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

## FRAUD

46.  Defendants are each individually liable to Plaintiff for common law fraud.

47.  Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiff would not have acted as they did, and Defendants knew the representations were false or made recklessly without any knowledge of the truth as a positive assertion.

48.  Defendants made their statements intending that Plaintiff should act upon them. Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury and constituting common law fraud.

## VI.   KNOWLEDGE

49.  Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## VII.   DAMAGES

50.  Plaintiff would show that all of the aforementioned acts, taken together or singularly, constituted the producing causes of the damages sustained by Plaintiff.

51.     As previously mentioned, the damages caused by Hurricane Harvey on or about August 25, 2017, have not been properly addressed nor repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to the Plaintiff.  These damages are a direct result of all of the Defendants' mishandling of Plaintiff's claim in violation of the laws set forth herein.

52.     For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claim, together with attorney's fees.

53.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs, and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times his actual damages.  TEX. INS. CODE §541.152.

54.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of his claim, as well as eighteen (15) percent interest per annum on the amount of such claim as damages, together with attorney's fees.  TEX. INS. CODE §542.060.

55.     For violations of the DTPA, Plaintiff is entitled to actual damages, which include the loss of the benefits owed pursuant to the Policy, mental anguish, court costs and attorney's fees. For knowing and intentional conduct of the acts described above, Plaintiff asks for three times his actual damages.

56.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading.  Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation

and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## VIII.   REQUEST FOR DISCLOSURE

57.     Under Texas Rules of Civil Procedure 194, Plaintiff hereby requests Defendants Allstate and Idolina Stockert each disclose, within fifty (50) days of service of this request, the information or material described in Texas Rule of Civil Procedure 194.2 (a) through (l).

## IX.     CONDITIONS PRECEDENT

58.     Upon information and belief, Plaintiff has complied with all conditions set forth in his insurance policy and by applicable statute prior to the filing of this *Plaintiff's Original Petition and Requests for Disclosure*, including the submission of a *Notice* letter, pursuant to Texas Insurance Code 542A.003, on September 16, 2019.

59.     However, a full sixty days (60) Notice was impracticable, under 542A.003(d)(1), as the date the cause of action accrued on or about September 30, 2017.

## X.      PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, said Plaintiff have and recover such sums as would reasonably and justly compensate  him in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on his behalf expended, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which he may show himself justly entitled.

Respectfully submitted,

Plaintiff's Original Petition and Request for Disclosure

**CHRISTOFFEL LAW GROUP, P.L.L.C.**

**By** __/s/ David A. Christoffel_____
    David A. Christoffel
    christoffellawgroup@gmail.com
    State Bar of Texas Number: 24065044
    3027 Marina Bay Drive, Suite 230
    League City, Texas 77573
    Telephone: (281) 429-8402
    Facsimile: (281) 429-8403

**ATTORNEY FOR PLAINTIFF**
**MOHAMMAD SHENAVARI**

Plaintiff's Original Petition and Request for Disclosure

CAUSE NO. 201971232

| RECEIPT NO. | 75.00 | CTM |
| | | |

**\*\*\*\*\*\*\*\*\*\***      TR # 73679616

PLAINTIFF: SHENAVARI, MOHAMMAD
             vs.
DEFENDANT: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY

In The 269th
Judicial District Court
of Harris County, Texas
269TH DISTRICT COURT,
Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: STOCKERT, IDOLINA

    1824 ARUNDEL DRIVE    CARROLLTON TX 75007 - 3012

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

This instrument was filed on the 30th day of September, 2019, in the above cited cause number and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

TO OFFICER SERVING:

    This citation was issued on 2nd day of October, 2019, under my hand and seal of said Court.

Issued at request of:
CHRISTOFFEL, DAVID ANDREW
3027 MARINA BAY DRIVE, SUITE 310
LEAGUE CITY, TX 77573
Tel: (281) 429-8402
Bar No.: 24065044

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: HALL, JOSHUA EVERETT GLH//11342437

---

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by mailing to Defendant certified mail, return receipt requested, restricted delivery, a true copy of this citation together with an attached copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES to the following addressee at address:

_____

_____

_____
(a) ADDRESSEE

ADDRESS

Service was executed in accordance with Rule 106
   (2) TRCP, upon the Defendant as evidenced by the
       return receipt incorporated herein and attached
       hereto at

on _____ day of _____, _____
by U.S. Postal delivery to _____
_____

This citation was not executed for the following reason: _____
_____

MARILYN BURGESS, District Clerk
Harris County, TEXAS

By _____, Deputy

N.INT.CITM.P

**\*73679616\***

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

CAUSE NO. 201971232

| RECEIPT NO. | 75.00 CTM |
|---|---|
| ********** | TR # 73679616 |

PLAINTIFF: SHENAVARI, MOHAMMAD
          vs.
DEFENDANT: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY

In The  269th
Judicial District Court
of Harris County, Texas
269TH DISTRICT COURT
Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: STOCKERT, IDOLINA

   1824  ARUNDEL DRIVE   CARROLLTON  TX  75007 - 3012

   Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

This instrument was filed on the 30th day of September, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:
     This citation was issued on 2nd day of October, 2019, under my hand and
seal of said Court.

Issued at request of:
CHRISTOFFEL, DAVID ANDREW
3027  MARINA BAY DRIVE, SUITE 310
LEAGUE CITY, TX  77573
Tel: (281) 429-8402
Bar No.: 24065044

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: HALL, JOSHUA EVERETT  GLH//11342437

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES
to the following addressee at address:

_____

_____
(a) ADDRESSEE

_____

ADDRESS

Service was executed in accordance with Rule 106
     (2) TRCP, upon the Defendant as evidenced by the
         return receipt incorporated herein and attached
         hereto at

on _____ day of _____, _____
by U.S. Postal delivery to _____
_____

This citation was not executed for the following
reason: _____
_____
_____

MARILYN BURGESS, District Clerk
Harris County, TEXAS

By _____, Deputy

N.INT.CITM.P                    *73679616*

7019-01-90 0000 3911 0037

CAUSE NO. 201971232

RECEIPT NO.                                    75.00      CTM
            **********                  TR # 73679610

PLAINTIFF: SHENAVARI, MOHAMMAD                    In The  269th
                    vs.                           Judicial District Court
DEFENDANT: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY   of Harris County, Texas
                                                  269TH DISTRICT COURT
                                                  Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY (A FOREIGN
    INSURANCE COMPANY) MAY BE SERVED BY AND THROUGH ITS DESIGNATED
    AGENT C T CORPORATION SYSTEM

    1999  BRYAN STREET SUITE 900    DALLAS  TX  75201

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

This instrument was filed on the 30th day of September, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:

    This citation was issued on 2nd day of October, 2019, under my hand and
seal of said Court.

Issued at request of:                            MARILYN BURGESS, District Clerk
CHRISTOFFEL, DAVID ANDREW                         Harris County, Texas
3027  MARINA BAY DRIVE, SUITE 310                 201 Caroline, Houston, Texas 77002
LEAGUE CITY, TX  77573                            (P.O. Box 4651, Houston, Texas 77210)
Tel: (281) 429-8402
Bar No.:  24065044                                Generated By: HALL, JOSHUA EVERETT  GLH//11342437

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy of this citation together with an attached copy of
PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES
to the following addressee at address:

_____          ADDRESS

_____          Service was executed in accordance with Rule 106
_____              (2) TRCP, upon the Defendant as evidenced by the
(A) ADDRESSEE                                    return receipt incorporated herein and attached
_____                  hereto at
_____
                                         on _____ day of _____, _____
                                         by U.S. Postal delivery to _____
                                         _____

                                         This citation was not executed for the following
                                         reason: _____
                                         _____

                                         MARILYN BURGESS, District Clerk
                                         Harris County, TEXAS

                                         By _____, Deputy

N.INT.CITM.P                        *73679610*

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

7019 0140 0000 5911 0037

CAUSE NO.  201971232

RECEIPT NO.                              75.00        CTM
          **********                    TR # 73679610

PLAINTIFF: SHENAVARI, MOHAMMAD                | In The   269th
              vs.                             | Judicial District Court
DEFENDANT: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY | of Harris County, Texas
                                              | 269TH DISTRICT COURT
                                              | Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY (A FOREIGN
    INSURANCE COMPANY) MAY BE SERVED BY AND THROUGH ITS DESIGNATED
    AGENT C T CORPORATION SYSTEM

    1999  BRYAN STREET SUITE 900    DALLAS  TX  75201

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

This instrument was filed on the 30th day of September, 2019, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:

    This citation was issued on 2nd day of October, 2019, under my hand and
seal of said Court.

Issued at request of:
CHRISTOFFEL, DAVID ANDREW                    MARILYN BURGESS, District Clerk
3027  MARINA BAY DRIVE, SUITE 310            Harris County, Texas
LEAGUE CITY, TX  77573                       201 Caroline, Houston, Texas 77002
Tel: (281) 429-8402                          (P.O. Box 4651, Houston, Texas 77210)
Bar No.: 24065044
                                             Generated By: HALL, JOSHUA EVERETT  GLH//11342437

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
 PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES
to the following addressee at address:

_____              ADDRESS

_____              Service was executed in accordance with Rule 106
(a) ADDRESSEE                                     (2) TRCP, upon the Defendant as evidenced by the
                                                  return receipt incorporated herein and attached
_____                   hereto at

                                             on _____ day of _____, _____
                                             by U.S. Postal delivery to _____
                                             _____

                                             This citation was not executed for the following
                                             reason: _____

                                             MARILYN BURGESS, District Clerk
                                             Harris County, TEXAS

                                             By _____, Deputy

N.INT.CITM.P                    *73679610*



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 2.56    OCT 02 2019

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted Delivery
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery

Postmark
Here

Postage
$ .30

Total Postage and
$ 7.00

Sent To

Street and Apt. No.

City, State, ZIP+4

PS Form 3800, April 2015   PSN 7530-02-000-9047   See Reverse for Instructions

IDOLINA STOCKERT
1824 ARUNDEL DRIVE
CARROLLTON, TX 75007-3012
2019-71232 269TH

10-02-19

Unofficial Copy Official Copy of Marilyn Burgess District Clerk

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee   $2.56

OCT 0 2 2019

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$ 1.30

Total Postage and Fees
$ 7.50

Sent To  ALLSTATE VEHICLE AND PROPERTY INSURANCE
COMPANY
C/O
C T CORPORATION SYSTEM
1999 BRYAN STREET SUITE 900
DALLAS, TX 75201
2019-71232 269TH

Street and Apt. No.

City, State, ZIP+4

7019 0140 0000 5911 0037

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

10-02-19

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

10/22/2019 8:59 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37842040
By: Iris Collins
Filed: 10/22/2019 8:59 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI<br>   Plaintiff, | IN THE DISTRICT COURT |
| V. | |
| ALLSTATE VEHICLE AND<br>PROPERTY INSURANCE COMPANY<br>AND IDOLINA STOCKERT,<br>Defendants. | 269TH JUDICIAL DISTRICT<br><br>HARRIS COUNTY, TEXAS |

## DEFENDANTS' ORIGINAL ANSWER AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY AND IDOLINA STOCKERT, Defendants in the above styled and numbered cause of action, and in response to the complaints filed against them, would respectfully show unto this Honorable Court and Jury as follows:

### I.

### GENERAL DENIAL

At this time, Defendants assert a general denial to Plaintiff's Original Petition and all amended and/or supplemental petitions, as authorized by Rule 92, Texas Rules of Civil Procedure, and respectfully requests the Court and jury to require Plaintiff to prove the claims, charges and allegations, by a preponderance of the evidence, as required by the Constitution and the laws of the State of Texas.

### II.

### SPECIFIC DENIALS

Plaintiff's claims are barred or limited, in whole or in part, by policy exclusions and/or limitations which are listed in the policy made the basis of this suit.

---

Shenavari vs. Allstate, et al.
Defendants' Original Answer and Request for Disclosure
0472496529.1

Page 1 of 4

Plaintiff failed to comply with certain conditions precedent to the policy prior to filing this lawsuit.

Plaintiff failed to allege conduct warranting imposition of exemplary or punitive damages under applicable state law.

Plaintiff's claims are barred, in whole or in part, because the losses alleged by Plaintiff was proximately caused in whole or in part by the fault, negligence, knowing or reckless acts, or failure to mitigate damages by Plaintiff.

Defendants hereby give notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserve the right to amend this answer.

### III.

Pursuant to Texas Rules of Civil Procedure, Defendants request that Plaintiff disclose within thirty days of service of this request, the information and material described in Rule 194.2(a) through (l).

If this case was filed as an Expedited Action under TRCP 47(c)(1) and/or TRCP 190.2, Defendants further request disclosure of any and all documents, electronic information, and tangible items that you have in your possession, custody or control and which may be used to support your claims or defenses.

### IV.

Defendants formally request a jury trial pursuant to Rule 216 of the Texas Rules of Civil Procedure and tenders the jury fee.

Shenavari vs. Allstate, et al.
Defendants' Original Answer and Request for Disclosure
0472496529.1

Page **2** of **4**

## V.

## DESIGNATED E-SERVICE EMAIL ADDRESS

The following is the undersigned attorney's designation of electronic service email address for all electronically served documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21(a). (HoustonLegal@allstate.com). This is the undersigned's ONLY electronic service email address, and service through any other email address will be considered invalid.

WHEREFORE, PREMISES CONSIDERED,  Defendants pray that the Plaintiff recover nothing of and from Defendants by reason of this suit, that Defendants be discharged without delay, with costs of court, and for such other and further relief, both general and special, at law and in equity, to which Defendants may be justly entitled, and for which Defendants will in duty bound, forever pray.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY BLUM**
TBN:  24092148

811 Louisiana St Ste 2400
Houston, TX  77002-1401
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rules 21. and 21a. of the Texas Rules of Civil Procedure, I hereby certify that the original of Defendants' Original Answer has been filed with the clerk of the court in writing, and a true and correct copy of Defendants' Original Answer has been delivered to all interested parties on the 22nd day of October, 2019, to:

David A. Christoffel
State Bar of Texas Number: 24065044
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF                    *VIA E-SERVE*

**KIMBERLY BLUM**

Shenavari vs. Allstate, et al.                                                                Page **4** of **4**
Defendants' Original Answer and Request for Disclosure
0472496529.1

10/22/2019 8:59 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37842040
By: Iris Collins
Filed: 10/22/2019 8:59 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
| Plaintiff, | |
| | |
| V. | |
| | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND | |
| PROPERTY INSURANCE COMPANY | |
| AND IDOLINA STOCKERT, | |
| Defendants. | HARRIS COUNTY, TEXAS |

## NOTICE OF ELECTION OF LEGAL RESPONSIBILITY
## FOR IDOLINA STOCKERT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ("Allstate") and files its Election of Legal Responsibility for IDOLINA STOCKERT under Section 542A.006 of the Texas Insurance Code ("Election") as follows:

### I.    BACKGROUND

Plaintiff filed a claim with Allstate. The claim was adjusted by one or more individuals at Allstate's request, including Defendant, IDOLINA STOCKERT. Plaintiff subsequently filed this action naming as defendants Allstate and IDOLINA STOCKERT.

For purposes of this Election, IDOLINA STOCKERT was an Allstate "agent" under Texas Insurance Code section 542.A.001, which defines the term "agent" as an employee, agent, representative, or adjuster who performs any act of Allstate's behalf.  *See* TEX. INS. CODE 542A.001.

### II.    ELECTION

Under section 542A.006(a) of the Texas Insurance Code, Allstate hereby elects to accept legal responsibility for whatever liability IDOLINA STOCKERT might have to Plaintiff for

IDOLINA STOCKERT's acts or omissions related to Plaintiff's claims subject of this suit.

By this pleading, Plaintiff has provided written notice of Allstate's election of IDOLINA STOCKERT.

### III.   DISMISSAL WITH PREJUDICE

As statutorily mandated, under section 542A.006(c) of the Texas Insurance Code and based on Allstate's election, this Court "shall dismiss" this action against IDOLINA STOCKERT with prejudice. *See* TEX. INS. CODE 542A.006(c).

Allstate hereby requests the Court enter all such documents necessary to effectuate this dismissal with prejudice.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY BLUM**
TBN:  24092148

811 Louisiana St Ste 2400
Houston, TX  77002-1401
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served in compliance

with Rules 21 and 21a of the Texas Rules of Civil Procedure on the 22nd day of October, 2019, to:

David A. Christoffel
State Bar of Texas Number: 24065044
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

**KIMBERLY BLUM**

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
|    Plaintiff, | |
| | |
| V. | |
| | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND | |
| PROPERTY INSURANCE COMPANY | |
| AND IDOLINA STOCKERT, | |
| Defendants. | HARRIS COUNTY, TEXAS |

## ORDER ON DEFENDANTS' NOTICE OF ELECTION OF RESPONSIBILITY FOR IDOLINA STOCKERT

Be it remembered that on this day, **DEFENDANTS' NOTICE OF ELECTION OF RESPONSIBILITY FOR IDOLINA STOCKERT** was considered.  Upon consideration of the motion, the Court is of the opinion that Defendants' request should be granted.

It is, therefore, ORDERED, ADJUDGED and DECREED that **IDOLINA STOCKERT** is dismissed from this lawsuit with prejudice to refiling of same.

Signed the _____ day of _____, 2019.

_____
**JUDGE PRESIDING**

10/22/2019 8:59:01 AM
Marilyn Burgess District Clerk
Harris County
Envelope No: 37842040
By: COLLINS, IRIS T
Filed: 10/22/2019 8:59:01 AM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI<br>    Plaintiff, | IN THE DISTRICT COURT |
| V. | |
| ALLSTATE VEHICLE AND<br>PROPERTY INSURANCE COMPANY<br>AND IDOLINA STOCKERT,<br>Defendants. | 269TH JUDICIAL DISTRICT<br><br>HARRIS COUNTY, TEXAS |

## ORDER ON DEFENDANTS' NOTICE OF ELECTION OF RESPONSIBILITY FOR IDOLINA STOCKERT

Be it remembered that on this day, **DEFENDANTS' NOTICE OF ELECTION OF RESPONSIBILITY FOR IDOLINA STOCKERT** was considered.  Upon consideration of the motion, the Court is of the opinion that Defendants' request should be granted.

It is, therefore, ORDERED, ADJUDGED and DECREED that **IDOLINA STOCKERT** is dismissed from this lawsuit with prejudice to refiling of same.

Signed the _____ day of _____, 2019.

_____
**JUDGE PRESIDING**

10/24/2019 6:23 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37949727
By: PAM ROBICHEAUX
Filed: 10/24/2019 6:23 PM

CAUSE NO. 2019-71232

| | |
|---|---|
| MOHAMMAD SHENAVARI | IN THE DISTRICT COURT |
| Plaintiff, | |
| V. | 269TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY AND IDOLINA STOCKERT, | |
| Defendants. | HARRIS COUNTY, TEXAS |

## NOTICE TO STATE COURT OF REMOVAL

PLEASE TAKE NOTICE that Defendants in the above-styled action, have on this date filed in the United States District Court for the Southern District of Texas, Houston Division, a Notice of Removal, a copy of which is attached hereto as Exhibit 1 (without exhibits), thereby effecting removal of this case.  Accordingly, this court may proceed no further unless and until this case is remanded.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY N. BLUM**
TBN:  24092148
Southern District Bar No. 2601470
811 Louisiana, Suite 2400
Houston, TX  77002
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served in compliance

with Rules 21 and 21a of the Texas Rules of Civil Procedure on this day of October 24, 2019.

David A. Christoffel
State Bar of Texas Number: 24065044
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

**KIMBERLY BLUM**

# EXHIBIT 1

Unofficial Copy Office of Marilyn Burgess District Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MOHAMMAD SHENAVARI,

Plaintiff,

vs.

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY AND IDOLINA
STOCKERT,

Defendants

CIVIL ACTION NO.
4:19-CV-04159

**DEFENDANTS' NOTICE OF REMOVAL**

TO THE HONORABLE COURT:

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 Defendants, IDOLINA STOCKERT (hereinafter referred to as "Stockert") and ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY (hereinafter referred to as "Allstate") give notice and hereby remove this action from the 269th District Court, Harris County, Texas, to the United States District Court for the Southern District of Texas, Houston Division, and in support thereof would show unto the Court the following:

**I. BACKGROUND**

1.      On September 30, 2019, Plaintiff, Mohammad Shenavari (hereinafter referred to as "Plaintiff") filed Plaintiff's Original Petition (hereinafter referred to as "Petition") in Harris County, Texas, under *Cause No. 2019-71232; Mohammad Shenavari v. Allstate Vehicle and Property Insurance Company and Idolina Stockert; in the 269th District Court, Harris County, Texas* (hereinafter referred to as the "State Court Action").

2.      Plaintiff's claims relate to real property located at 331 Isolde Drive, Houston, Texas 77024, and homeowners' insurance policy no. 829 582 292, issued by Allstate.

3.      In Plaintiff's original petition, Plaintiff asserts claims for DTPA violations, fraud, breach of contract and violations of the Texas Insurance Code against both Defendants.

4.      Defendants timely file this notice of removal within the 30-day timeframe dictated by 28 U.S.C. §1446(b).  This Notice of Removal is being filed within one year of the commencement of this action.

## II. PROCEDURAL REQUIREMENTS

5.      Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, because the State Court Action is pending within this district and division. *See* 28 U.S.C. §1441(a); *see also* 28 USC §124(b)(2).

6.      Pursuant to LR 81, attached hereto as **Exhibit A** is an Index of Matters.  Pursuant to 28 U.S.C. §1446(a), attached hereto as **Exhibits B, and C**, and incorporated by reference is a true and correct copy of the docket sheet and all documents filed of record with the Court in the State Court Action including all process, pleadings, and orders served, along with the documents that have recently been filed with the Court, but not yet reflected on the Court's online docket sheet.

7.      Simultaneously with the filing of this Notice of Removal, Defendants are filing notice of the removal in the State Court Action pursuant to 28 U.S.C. §1446(a), which is attached hereto as **Exhibit D**, and will provide written notice of the filing of this Notice of Removal to all parties as required by 28 U.S.C. §1446(a).

8.      Included in this filing are Defendants' Disclosure Statement and Certificate of Interested Parties pursuant to Rule 7.1 of the Federal Rules of Civil Procedure (**Exhibit E**) and a List of All Counsel of Record (**Exhibit F**).

### III. BASIS FOR REMOVAL

9.      Removal is proper in this case due to complete diversity. This Court has diversity jurisdiction under 28 U.S.C. §§1332(a).  Where there is complete diversity among parties and the amount in controversy exceeds $75,000.00, an action may be removed to federal court.

### A.      <u>Diversity and Motion to Dismiss Adjuster Defendant with Prejudice</u>

10.      Plaintiff is and was at the time the lawsuit was filed, a natural person and resident of Harris County in the State of Texas and thus, a citizen of the State of Texas. *See* Plaintiff's Original Petition, ¶ 2.  Upon information and belief, Plaintiff intends to continue residing in Texas. *See Hollinger v. Home State Mut. Ins. Co*., 654 F.3d 564, 571 (5th Cir. 2011) (evidence of a person's place of residence is prima facie proof of his state of domicile, which presumptively continues unless rebutted with sufficient evidence of change).

11.      Defendant, Allstate Vehicle and Property Insurance Company, is an Illinois corporation with its principal place of business in Illinois and is a citizen of the State of Illinois for diversity purposes.

12.      Defendant, Idolina Stockert, is an individual residing in Texas.  However, counsel for Defendants has given Plaintiff's counsel written notice of Allstate Vehicle and Property Insurance Company's election of legal responsibility on behalf of Stockert pursuant to Section 542A.006 of the Texas Insurance Code.

13.      Pursuant to this section, upon election of responsibility, the Court must dismiss Stockert with prejudice to refiling of the same (**Exhibit H**).  Tex. Ins. Code § 542A.006(a) (". . . [I]n an action to which this chapter applies, an insurer that is a party to the action may elect to accept whatever liability an agent might have to the claimant for the agent's acts or omissions related to the claim by providing written notice to the claimant.")  Tex. Ins. Code § 542A.006(c) ("If a claimant files an action to which this chapter applies against an agent and the insurer thereafter

3

makes an election under Subsection (a) with respect to the agent, the court shall dismiss the action against the agent with prejudice.").

14.     Therefore, since Allstate has elected responsibility for Stockert, necessitating Stockert's dismissal from this lawsuit with prejudice, complete diversity exists between the Parties.

**B.     In the alternative, Stockert was improperly joined as a Defendant and should be disregarded for diversity purposes.**

15.     Although Defendant Stockert is a citizen and resident of the State of Texas, she has been improperly joined in this lawsuit and was sued for the sole purpose of defeating diversity jurisdiction.  *See Smallwood v. Illinois Cen. Rail Co*., 385 F 568, 571 (5th Cir. 2004) (A court may disregard a party for diversity purposes if the court finds that joinder was improper and effectuated to defeat diversity).

16.     To determine whether a non-diverse Defendant has been improperly joined, the removing party must show that either there is actual fraud in the pleading itself, or that there is no reasonable possibility that a plaintiff will be able to establish a cause of action against the non-diverse defendant under state law.  *See Smallwood v. Illinois Cen. Rail Co*., 385 F. 3d 568, 573 (5th Cir. 2004); *see also Melder v. Allstate Corp*., 404 F.3d 328, 330 (5th Cir. 2005).  The second applies in this case.

17.     The court may conduct a rule 12(b)(6) analysis looking at the allegations in the petition and whether there are valid claims against the non-diverse Defendant under state law.  *Smallwood,* 385 F. 3d at 573.  *See also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 2016 WL 1274030, at *8 (5th Cir. Mar. 31, 2016) (the Court must apply a federal pleading standard to conduct this analysis).  To pass this test, a complaint must have "enough facts to state a claim of relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (U.S. 2007) (citing *Reece v. U.S. Bank Nat'l Ass'n*, 762 F. 3d 422, 424 (5th Cir. 2014)).

18.     In other words, Texas Federal courts have historically required a plaintiff to allege *specific conduct* by an adjuster, not just mere conclusory legal or statutory statements masked as allegations.  *See Okenpu v. Allstate Texas Lloyd's*, No. H-11-2376, 2012 WL 1038678 (S.D. Tex. Mar. 27, 2012) (Harmon, J.).  *See also Hornbuckle v. State Farm Lloyd's*, 385 F.3d 538, 542 (5th Cir. 2004) ("merely pleading a valid state law claim . . . against the resident defendant does not mean that the joinder of the resident defendant is not fraudulent . . . .")

19.     In Plaintiff's Original Petition, the allegations against Stockert are mere, boilerplate recitations of the Texas Insurance Code and Deceptive Trade Practices Act and are completely void of any *specific facts* about Stockert's actions or omissions with respect to her handling of Plaintiff's claim that would warrant legal recovery by Plaintiff.

20.     Furthermore, the allegations against Stockert are not distinguishable from the allegations against the carrier Allstate, particularly in light of the fact that Allstate has decided to elect legal responsibility for Stockert per the Texas Insurance Code.  Tex. Ins. Code § 542A.006(a).  All of the allegations against Stockert are essentially the same as those lodged against Allstate—that Allstate did not pay Plaintiff's claim to his satisfaction.  *See Keen v. Wausau Business Inc. Co*., 875 F. Supp. 2d 682, 686 (S.D. Tex. Mar. 20, 2012) (Harmon, J.) (citing *Centro Crisitano Cosecha Final, Inc. v. Ohio Cas. Ins. Co*., 2011 WL 240335 *14 * (S.D. Tex. Jan. 20, 2011) (". . . when claims against the adjuster are identical to those against the insurer, the adjuster's actions are 'indistinguishable from [the insurer's] actions and hence are insufficient to support a claim against the adjuster.'").

21.     On the basis of the allegations against Stockert in Plaintiff's Original Petition, there is no reasonable basis to predict that any liability would be imposed on Stockert separate and apart from any liability potentially imposed on Allstate.  As such, Stockert should be disregarded for diversity purposes.

### C.    <u>Amount in Controversy</u>

22.    In determining the amount in controversy, the court may consider "policy limits . . . penalties, statutory damages, and punitive damages." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); see *Ray v. State Farm Lloyds*, No. CIV.A.3:98-CV-1288-G, 1999 WL 151667, at * 2-3 (N.D. Tex. Mar. 10, 1999) (finding a sufficient amount in controversy in plaintiff's case against their insurance company for breach of contract, fraud, negligence, gross negligence, bad faith, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and mental anguish); *Fairmont Travel, Inc. v. George S. May Int'l Co.*, 75 F. Supp.2d 666, 668 (S.D. Tex. 1999) (considering DTPA claims and the potential for recovery of punitive damages for the amount in controversy determination); *Chittick v. Farmers Ins. Exch.*, 844 F. Supp. 1153, 1155 (S.D. Tex. 1994) (finding a sufficient amount in controversy after considering the nature of the claims, the types of damages sought and the presumed net worth of the defendant in a claim brought by the insureds against their insurance company for actual and punitive damages arising from a claim they made for roof damages).

23.    The Court may also consider correspondence between the Parties, including responses to disclosure and pre-suit settlement demands to determine the amount in controversy. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998) (examining the plaintiffs' pre-complaint demand letters to determine whether a claim for declaratory relief satisfied the requisite amount in controversy); *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994) (considering letter from plaintiff's counsel to defendants wherein the stated amount in controversy exceeded the jurisdictional amount); see also *King v. Ameriprise Fin. Servs., Inc.*, No. C-09-112, 2009 WL 1767641 at *4 (S.D. Tex. 2009) (calling a pre-suit settlement letter relevant evidence of the amount in controversy if it reflects a reasonable estimate of the plaintiff's claim).

24.     The amount in controversy in this case exceeds $75,000.00. The suit arises out of the processing of Plaintiff's insurance claim under a home insurance policy issued by Defendant Allstate. In Plaintiff's 542A demand, Plaintiffs demanded $148,129.08 in damages, penalties, and attorney's fees (**Exhibit H**).   Accordingly, the actual amount in controversy meets and exceeds the federal jurisdictional minimum of $75,000.00.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants remove the State Court Action from the 269th District Court, Harris County, Texas to the United States District Court for the Southern District of Texas, Houston Division, so that this Court may assume jurisdiction over the cause as provided by law, and upon dismissal of Defendant Idolina Stockert by this Court with prejudice.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY N. BLUM**
TBN:  24092148
Southern District Bar No. 2601470
811 Louisiana, Suite 2400
Houston, TX  77002
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served in compliance

with the Federal Rules of Civil Procedure on this day of October 24, 2019.

David A. Christoffel
State Bar of Texas Number: 24065044
CHRISTOFFEL LAW GROUP, P.L.L.C.
3027 Marina Bay Drive, Suite 230
League City, Texas 77573
Telephone: (281)429-8402
Facsimile: (281)429-8403
christoffellawgroup@gmail.com

ATTORNEY FOR PLAINTIFF

**KIMBERLY BLUM**

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   ALLSTATE VEHICLE AND PROPERTY INSURANCE
   COMPANY
   C/O
   C T CORPORATION SYSTEM
   1999 BRYAN STREET SUITE 900
   DALLAS, TX 75201
   2019-71232 269TH

   ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

   9590 9402 4840 9032 4209 43

2. Article Number *(Transfer from service label)*

   7019 0140 0000 5911 0037

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  ☐ Agent
   ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
   Terri Thongsavat                OCT 0 4 2019

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☐ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Restricted Delivery

   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☐ Return Receipt for Merchandise
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     2019-71232     Domestic Return Receipt



USPS TRACKING #

9590 9402 4840 9032 4209 43

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

2019 NOV 15 AM 8: 29

11-15-19

BY _____
MAIL

• Sender: Please print your name, address, and ZIP+4® in this box•

**MARILYN BURGESS**
**HARRIS COUNTY DISTRICT CLERK**
**P.O. BOX 4651**
**HOUSTON, TEXAS 77210-4651**